E-FILED
Friday, 21 October, 2016  01:24:59 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, DELAWARE, ILLINOIS, INDIANA, MASSACHUSETTS, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NORTH CAROLINA, RHODE ISLAND, VIRGINIA, ex rel. TRACY SCHUTTE and MICHAEL YARBERRY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs and Relators, | ) ) ) | |
| v. | ) ) | NO. 11-3290 |
| SUPERVALU, INC., SUPERVALU HOLDINGS, INC., FF ACQUISITIONS, LLC, FOODARAMA, LLC, SHOPPERS FOOD WAREHOUSE CORP., SUPERVALU PHARMACIES, INC., ALBERTSON'S LLC, JEWEL OSCO SOUTHWEST LLC, NEW ALBERTSON'S INC., AMERICAN DRUG STORES, LLC, ACME MARKETS, INC., SHAW'S SUPERMARKET, INC., STAR MARKET COMPANY. INC., JEWEL FOOD STORES, INC., and AB ACQUISITION LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

This is a qui tam action.

The Plaintiffs and Relators assert violations of the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., and related acts under the applicable state laws.

Pending before the Court is the Defendants' Motion to Dismiss.

It is denied.

## I. BACKGROUND

Relators Tracy Schutte and Michael Yarberry filed this action alleging that Defendants did not include price-match discounts when calculating "usual and customary prices" submitted to government payors. Relator Schutte has worked as a pharmacist since 1992 and briefly worked as a pharmacist in Missouri at Defendant Supervalu, Inc. in 2011. Relator Yarberry has worked as a pharmacist since 1992. He has never been employed by the Defendant or its pharmacies.

Defendant SuperValu, Inc. operates or controls or has operated and

2

has controlled at relevant time periods many different branded pharmacies, both individually and through its subsidiaries, affiliated and related organizations, including but not limited to: SuperValu, SuperValu Pharmacies, Albertsons, Acme Sav-On Pharmacy, Albertsons Osco Pharmacy, Albertsons Sav-On Pharmacy, Bigg's Pharmacy, Cub Pharmacy, Farm Fresh Pharmacy, Jewel Pharmacy, Jewel-Osco Pharmacy, Lucky Pharmacy, Mays Pharmacy, Sav-A-Lot, Shaw's Osco Pharmacy, Shop N' Save Pharmacy, Shop N' Save Osco Pharmacy, Shoppers Pharmacy, Scott's Pharmacies, Star Osco Pharmacy and Osco Drug.

SuperValu operates and controls or has operated and controlled approximately 2,500 retail grocery locations and over 800 pharmacies in 25 states within the United States, including: California, Delaware, Idaho, Illinois, Indiana, Iowa, Maine, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, Washington, Wisconsin and Wyoming.

The Amended Complaint provides that all of the Defendants'

pharmacies are integrated into a shared centralized ARx pharmacy transaction software information system, which enables their customers to fill or refill prescriptions in any of their stores throughout the country under common SuperValu billing policies and procedures. Moreover, the Defendants' pharmacies are managed and controlled by Supervalu, which directs all billing policies and practices, marketing and price matching as illustrated by corporate instructions disseminated to "All Supervalu Pharmacists" regarding price matching procedures.

The Relators allege that starting in late 2006 to 2007, the Defendants implemented a "Price Matching" program to match certain competitors' prices for generic drugs. The Relators claim that the matched competitor prices–rather than the cash prices–became the usual and customary prices that should have been passed on to government payers. The Relators assert that by not including price-match discounts in their usual and customary calculations, the Defendants knowingly submitted false claims for reimbursement to federal healthcare programs. The Relators contend this practice was company policy. They allege these allegations are bolstered by

computer printouts of customer transactions from the Defendants' centralized claims processing system which show the low prices charged the general public and the inflated prices charged the government health programs for the same drugs.

The Defendants contend that the Relators have not presented sufficient evidence to assert claims under the FCA.  They contend the Plaintiffs have (1) insufficiently alleged claims made to federal and state programs; (2) insufficiently alleged facts supporting the elements of "falsity," "knowledge," and "materiality;" and (3) insufficiently alleged certifications that would trigger any liability.  Accordingly, the Defendants ask the Court to dismiss the Amended Complaint.

## II. LEGAL DISCUSSION

After a lengthy investigation, over three and one-half years after the initial Complaint was filed, the federal government declined to intervene in this case.  When the United States declines to intervene in a qui tam FCA suit, the relator may pursue the case on his own, though the action is still technically on behalf of the United States.  See Thulin v. Shopko Stores

Operating Co., 771 F.3d 994, 998 (7th Cir. 2014) (citing 31 U.S.C. § 37330(c)(3)).

The FCA provides, in part, that "any person who . . . (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable to the federal government.  31 U.S.C. § 3729(a)(1).

A. Legal standard

In reviewing a motion to dismiss, the Court generally accepts the truth of the factual allegations of the complaint.  Vinson v. Vermilion County, Illinois, 776 F.3d 924, 925 (7th Cir. 2015).  In order to avoid dismissal under Rule 12(b)(6), "the complaint must state a claim that is plausible on its face."  Id. at 928.

Because the FCA is an anti-fraud statute, however, the "claims under it are subject to the heightened pleading requirements of Rule 9(b)." United States ex rel. v. AIDS Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir. 2005).  Therefore, "a party must state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "The requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible."  United States ex rel. Grenadyor v. Ukranian Village Pharmacy, Inc., 772 F.3d 1102, 1106 (7th Cir. 2014).  "The complaint must state the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  Id. (internal quotation marks and citations omitted).

### B. Sufficiency of allegations

#### (1) Fair notice and clustering

The Defendants contend that the Relators do not sufficiently allege claims for payment.  The Relators do not allege any claims for payment on behalf of 11 of the 12 named States, or any claims at all relating to TRICARE, the managed health care program established by the Department of Defense ("DoD") for service members and other eligible beneficiaries, or the Federal Employees Health Benefit Program ("FEHBP"), which offers group health insurance to federal employees and other eligible

individuals through a wide variety of carriers and plan approved by the U.S. Office of Personnel Management ("OPM").

Additionally, the Defendants assert the Relators have improperly clustered the Defendants in that they fail to allege specific claims against the multiple named Defendants.   However, the Relators note that Defendants in this case all flow from two corporate parents, SuperValu, Inc. and AB Acquisition LLC.   The Relators contend they have sufficiently alleged claims against those Defendants and their centrally-controlled wholly-owned subsidiaries and pharmacies.   The Defendants committed fraud by routinely charging the government more than the general public for the drugs.   The Relators allege this occurred between at least 2007 and the present–as alleged in the Amended Complaint, specifically, on April 4, 2011; on June 14, 2011; on May 16, 2011; on July 15, 2011; and on April 26, 2011.

The Relators allege this practice has occurred nationwide at the Defendants' pharmacies through their shared centralized ARx pharmacy transaction software information system, their common billing policies and

their common control including, but not limited to: at the Shop N' Save pharmacy in Arnold, Missouri; at the Osco Pharmacy in Springfield, Illinois; and at the Shop N' Save pharmacy in Kirkwood, Missouri. The Relators allege in paragraph 25 of the Amended Complaint: "All of Defendants' pharmacies" share a "centralized ARx pharmacy transaction software information system which enables their customers to fill or refill prescriptions in any of their stores throughout the country under common SuperValu billing policies and procedures."

Paragraph 26 states, "Defendants' pharmacies are managed and controlled by Supervalu, which directs all billing policies and practices, marketing, and price matching as illustrated by corporate instructions disseminated to 'All Supervalu Pharmacists' regarding price matching procedures." Additionally, paragraph 114 provides that Relator Schutte had completed a training session regarding company policy on discount prices. The SuperValu Pharmacy Operations representative informed Schutte that SuperValu has established contracts with pharmacy benefit managers and, in order to change the usual and customary price, it would

have to make an official price change.  Paragraph 117 provides that a SuperValu Regional Manager told Relator Schutte that "SuperValu does not submit to third-party insurance carriers the discounted prices it charges to customers, and indicated that SuperValu's ARx pharmacy software actually prevents pharmacy staff members from overriding the [usual and customary] price submitted to third-party insurance carriers."

Based on the Relators' allegations of a uniform, nationwide and fraudulent scheme facilitated through a shared centralized ARx pharmacy transaction system, the Court concludes that Plaintiffs' allegations provide the Defendants with fair notice of the claims to the extent required by Rule 9(b).

(2) Falsity

The Defendants further allege the Plaintiffs have insufficiently pled falsity for Illinois Medicaid or Medicare Part D.  Medicare Part D is a government program that provides public benefits through private prescription drug plans.  The Defendants contend that no law requires them to report price matches as the usual and customary price.  "A claim

may be false for purposes of the FCA if it is made in contravention of a statute, regulation, or contract." Thulin, 994 F.3d at 998.

The Relators assert that the Defendants' motion recognizes the gist of the claim–that by not including price match discounts in their usual and customary prices, the Defendants knowingly submitted false claims for reimbursement to federal healthcare programs. Accordingly, the Relators claim the Defendants acknowledge having received fair notice.

The Relators further allege that Defendants' standing offer to match their competitors' discount prices was a knowing profit-motivated effort by the Defendants to evade the reporting of their discount prices as their usual and customary prices. The Defendants' offer to price match was an offer to the "general public" requiring that the Defendants report and charge government health programs the same low cash prize. The Relators allege the Defendants had a legal duty to report accurate pricing information on claims submitted to government health programs because truthful determination and reporting of the usual and customary price is a material component of all government health program payment calculations.

11

The Relators contend that the submission of claims to Medicaid, TRICARE and the FEHBP with false usual and customary prices violates the FCA.  Federal Medicaid regulations limit pharmacy reimbursement to the "lower of the following: (1) AAC [Actual Acquisition Cost] plus a professional dispensing fee established by the agency; or (2) Providers' usual and customary charges to the general public."  42 C.F.R. 447.512(b).  The State Medicaid usual and customary regulations are based on this requirement and all State plans must periodically determine that they "are in accordance with § 447.512."  42 C.F.R. § 447.518(B)(1)(ii).  The Relators allege that TRICARE and FEHBP employ similar "lower of" usual and customary formulas.

The Relators contend that Defendants' low price matches were available to the general public and represented the usual and customary prices that Defendants were required to report under all government health plan usual and customary definitions.  Moreover, the Defendants purposely and uniformly failed to report these discounted cash prices as their usual and customary prices, making the related claims for payment false in

12

violation of the Federal and State False Claims Acts.

The Relators allege that the Medicare Part D program was materially affected and the Defendants unjustly profited from their knowing failure to offer Part D beneficiaries the discount price matching prices. They claim the Defendants overcharged Part D beneficiaries by failing to give them access to discounted "Negotiated Prices" and falsely reporting inflated charges on the Part D claims. The fact that the prescription drug plan sponsors–and not the Defendants–submitted inaccurate pricing information on claims to CMS is irrelevant since liability attaches to any person who "causes to be presented" a false claim.

The Relators further contend that, as downstream entities of prescription drug plans, the Defendants are liable for presenting false claims, making material false statements in support of false claims and falsely certifying inaccurate claims data. Both prescription drug plan sponsors and their downstream entities such as the Defendants are obligated by federal regulation to certify "the accuracy, completeness and truthfulness of all data related to payment," including data elements

13

submitted by plan sponsors.  42 C.F.R. § 423.505(k)(1).

The Court concludes that, by alleging that Defendants violated federal regulations, the Relators have provided fair notice of falsity under the FCA.

### (3) Knowledge and materiality

The Defendants also contend that the Relators have failed to allege "knowledge" and "materiality."  However, the Relators allege in the Amended Complaint that "Defendants have knowingly submitted fraudulent, inflated pricing information to government health care programs on tens of thousands of prescription drug reimbursement claims, for the purpose of unlawfully obtaining reimbursement payments higher than those authorized by law" from federal and state health care programs including, but not limited to: Medicare Part D, Illinois Medicaid, Missouri Medicaid and 23 other State Medicaid programs where the Defendants operated.

Additionally, Rule 9(b) provides that state of mind may be pled "generally."  Because "much knowledge is inferential," the proposed

inference can be enough to satisfy the pleading standard if it is "plausible." See United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009).

Accordingly, the Relators claim that allegations of the Amended Complaint allow for a plausible inference that Defendants "knowingly" avoided their obligations to comply with usual and customary pricing requirements.  Based on the allegation that Defendants knowingly concealed and failed to report their true discount usual and customary prices on government health programs in order to obtain excessive payments, moreover, intent can be inferred from financial motive.  The Relators contend this is sufficient to adequately plead knowledge.

The Relators also allege that reporting an inflated usual and customary price is a materially false statement which results in overpayment by the government health program.  Additionally, materiality is evidenced by the legal requirement that Defendants annually certify the accuracy and truthfulness of data that determines payment "and acknowledge that the claims data will be used for the purposes of obtaining Federal

reimbursement." 42 C.F.R. § 423.505(k)(3).

Upon reviewing the allegations, the Court concludes that Relators' allegations meet the "knowledge" and "materiality" components of the FCA.

C. Certification as a prerequisite to obtaining government funds

The Defendants also assert the Relators have failed to sufficiently allege any certification that was a prerequisite to obtaining government funds. The Relators have not alleged that Defendants expressly certified compliance with any relevant law that is a condition of government payment for receiving government funds.

The Relators note they are required to plead only facts and not legal theories. Moreover, any potential certification requirement could apply only to Relators' claims under § 3729(a)(1)(B), as certification is not an element of claims under § 3729(a)(1)(A). Specifically, false information submitted by a pharmacy results in a false claim upon the government health program.

Because a number of the allegations in the Amended Complaint relate

to alleged false information submitted by the Defendants, the Court concludes that Relators have met any certification requirements.

D. Specificity and particularity

To the extent that Defendants allege the Relators' allegations are not sufficiently specific, the Relators contend that Rule 9(b) does not demand specificity for every instance of fraud.  The Relators alleged with particularity the Defendants' uniform, nationwide fraudulent scheme, alleged claims for payment on an individualized transaction level and provided specific examples of the Defendants' fraudulent conduct.  They need not plead redundant examples for every State or Federal program that the Defendants defrauded.  The Relators simply need "some firsthand information to corroborate its suspicions."  Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 446 (7th Cir. 2011) (observing that Pirelli did not necessarily need Illinois data to sufficiently allege the existence of a fraudulent scheme).

The Relators cite examples alleging that Defendants were reporting falsely high pricing information to government health programs that

excluded low cash prices. This corroborates allegations that Defendants were committing usual and customary price fraud against multiple government health programs and across state lines. In their motion to dismiss, moreover, the Defendants do not dispute that they did not pass price match discounts on to government health programs. The Defendants simply allege without authority that this practice was legal.

The Relators claim that the fraud scheme asserted here is the same in every State and with every government health program. They have pled specific, representative examples of the scheme which has put the Defendants on notice of the allegations. The Court concludes that the Relators' allegations are sufficiently specific to comply with the requirements of Rule 9(b).

E. Supplemental authority

In a recent case, the United States Court of Appeals considered–among other issues–whether the district court had correctly identified the "usual and customary" price for purposes of the FCA. United

States ex rel. Garbe v. Kmart Corp., 824 F.3d 632, 637 (7th Cir. 2016).[1]

The Seventh Circuit observed:

> Our reading of "general public" is consistent with the regulatory structure that gave rise to the "usual and customary" price term.  Under 42 C.F.R. § 423.100, the usual and customary (U & C) price means the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug.

Id. at 644 (internal quotation marks and citation omitted).  The court interpreted the applicable regulations to mean that state agencies are not to pay more for prescribed drugs than the prevailing market retail price.  See id.  Accordingly, "[r]egulations related to 'usual and customary' price should be read to ensure that where the pharmacy regularly offers a price to its cash purchasers of a particular drug, Medicare Part D receives the benefit of that deal."  Id.

The court further stated:

Allowing Kmart to insulate high "usual and customary" prices by artificially dividing its customer base would undermine a

_____

[1]The Relators filed a Notice of Supplemental Controlling Authority as to Garbe.  See Doc. No. 55.  The Defendants filed a Response to the Notice and the Relators filed a Reply to the Response.  See Nos. 57 & 61.

central purpose of the statutory and regulatory structure. The "usual and customary" price requirement should not be frustrated by so flimsy a device as Kmart's "discount programs." Because Kmart offered the terms of its "discount programs" to the general public and made them the lowest prices for which its drugs were widely and consistently available, the Kmart "discount" prices at issue represented the "usual and customary" charges for the drugs.

Id. at 645. Accordingly, the court determined that the relator's claims were sufficient to withstand summary judgment.

The Defendants allege there are key factual differences between Garbe and the facts at issue here.[2] The price-matching program alleged by the Relators to match competitors' prices for generic drugs differs significantly from the membership-discount program analyzed by the Seventh Circuit in Garbe, wherein all customers enrolled in the discount program were offered a pre-determined set of reduced prices.

Additionally, the Defendants contend that Relators have failed to

_____

[2]The Defendants also allege that Kmart, the defendant-appellant in that case, filed a petition for rehearing or rehearing en banc. According to the docket report on the PACER website, the Seventh Circuit denied Kmart's petition for rehearing and rehearing en banc. Ord., July 18, 2016, ECF No. 70. Following that denial, a Petition for Writ of Certiorari was filed on September 23, 2016. Notice, October 3, 2016, ECF No. 72.

allege that the price-matched drugs were the majority of the claims for any specific drug on any specific day, making them far from the "prevailing retail market price" discussed in the Garbe opinion.  They allege that the handful of examples of claims submitted to various programs does not establish that any particular price-matches were the "prevailing retail market price" at any particular store at any particular time.   The Defendants claim that, even when the facts are construed in the Relators' favor, they have not alleged enough facts to constitute a "false" claim as they have not alleged that price-matched drugs were the majority of the claims for any specific drug on any specific day.

As the Court noted above, however, and as the Relators allege in their Reply, the Seventh Circuit's opinion in Garbe is broader than the Defendants acknowledge.  The offer to the general public determines the usual and customary price–not whether the offer was couched as a discount club or whether a majority of people accepted it.  See Garbe, 824 F.3d at 645 ("Because Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs were

widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs.").

At this stage, the Court must accept the Relators' allegations that SuperValu's price-match discount was an open offer to the general public. Pursuant to Garde, those discount prices represented the "usual and customary price" SuperValu charged for those drugs.

### III. CONCLUSION

The Defendants' Motion to Dismiss will be denied.  Based on the allegations in the Amended Complaint and applicable case law, the Court finds that the Plaintiffs have sufficiently pled with particularity, as required by Rule 9(b), that the Defendants have violated the FCA and related state laws.

Ergo, the Defendants' Motion to Dismiss under Rules 12(b)(6) and 9(b) [d/e 37] is DENIED.

This action is referred to United States Magistrate Judge Tom Schanzle-Haskins for further proceedings related to discovery and entry of a scheduling order.

ENTER: October 21, 2016

FOR THE COURT:

/s/ Richard Mills
Richard Mills
United States District Judge