IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, § <br> and THE STATES OF CALIFORNIA, § <br> DELAWARE, ILLINOIS, INDIANA, § <br> MASSACHUSETTS, MINNESOTA, § <br> MONTANA, NEVADA, NEW JERSEY, § <br> NORTH CAROLINA, RHODE ISLAND, § <br> and VIRGINIA *ex rel.* TRACY SCHUTTE § <br> and MICHAEL YARBERRY, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> SUPERVALU, INC., SUPERVALU § <br> HOLDINGS, INC., FF ACQUISITIONS, § <br> LLC, FOODARAMA, LLC, SHOPPERS § <br> FOOD WAREHOUSE CORP., § <br> SUPERVALU PHARMACIES, INC., § <br> ALBERTSON'S, LLC, JEWEL OSCO § <br> SOUTHWEST LLC, NEW ALBERTSON'S, § <br> INC., AMERICAN DRUG STORES, LLC, § <br> ACME MARKETS, INC., SHAW'S § <br> SUPERMARKET, INC., STAR MARKET § <br> COMPANY, INC., JEWEL FOOD STORES, § <br> INC., and AB ACQUISITION LLC § <br> § <br> Defendants. § | No. 11-cv-03290 |

**DEFENDANTS' MOTION FOR LIMITED SANCTIONS FOR SPOLIATION OF
EVIDENCE AND MEMORANDUM IN SUPPORT**

Defendants move for limited sanctions for spoliation of evidence. Specifically, Defendants seek to strike from Relators' First Amended Complaint (the "Complaint"), and bar from trial, allegations and evidence regarding conversations Relators assert that they had with Defendants' employees. Although Relators claim these conversations are admissions by Defendants, Relators now have no recollection of them and intentionally destroyed all contemporaneous records of them after filing suit.

1

**The Conduct Justifying Sanctions**

In their Complaint, Relators prominently feature excerpts from alleged conversations they had with several of Defendants' employees. Relators claim that during these one-on-one conversations, these employees made admissions that purportedly bind Defendants and support Relators' case. Relators, however, shredded their contemporaneous notes of these supposed conversations, intentionally deleted computer files concerning them, and even went so far as to "throw away" the computer on which the files were stored, thereby precluding examination of the relevant metadata. Relators took all these actions *after* they filed suit, and despite the fact that Relators are old hands at False Claims Act litigation, having filed no less than five *qui tam* suits since 2010.

Relators have testified they lack any recollection of the putative conversations; they instead proffer "summaries" they prepared under suspicious circumstances after litigation began. Defendants maintain that Relators' summaries of these conversations are, at best, inaccurate and, at worst, complete fabrications.

## I.  Procedural Background

Relators filed this action on August 8, 2011, alleging that Defendants defrauded government healthcare programs by fraudulently reporting inflated Usual & Customary (U&C) pharmacy prices for prescriptions filled for government healthcare program beneficiaries. Relators' key allegation is that Defendants reported their regular cash prices for prescriptions as their U&C prices; Relators claim that Defendants should, instead, have reported as their U&C prices, prices set by local competitors which Defendants sometimes matched when requested to do so by individual customers.

In their Complaint, Relators allege that they each spoke one-on-one with employees of certain of Defendants' pharmacies. Relators rely heavily on these alleged conversations to support

their fraud allegations. In particular, the Complaint features Relators' versions of alleged conversations between themselves and Defendants' employees Bob Atchison, Lindsay Reel and Matt Cross.[1] *See* First Am. Compl. ¶¶ 114, 116, and 117, ECF No. 33. The Complaint also alleges that "Relators conducted numerous phone calls with pharmacy staff at Defendants' branded pharmacies verifying Defendants' price matching and fraudulent billing scheme occurred nationwide." *Id.* ¶ 118.

On December 20, 2016, Defendants served interrogatories seeking details of the supposed conversations. Relators identified 19 alleged conversations between Relators and Defendants' pharmacy employees. Relator Yarberry identified the following alleged conversations:

| August 2009 | Relator Yarberry phone calls with "Las Vegas, Nevada SavOn;" "Florence, Kentucky Bigg's Pharmacy"; "Springfield, Illinois Shop N' Save"; and "Chicago, Illinois Jewel Osco" |
|---|---|
| November 2009 | Relator Yarberry phone call with "Bigg's Pharmacy in Cincinnati, Ohio" |
| December 9, 2009 | Relator Yarberry phone calls with "Jewel-Osco in Dyer, Indiana"; Cub Foods in Burnsville, Minnesota"; Bigg's Pharmacy in Cincinnati, Ohio"; and "Shop N' Save in St. Peters, Missouri" |

*See* Yarberry's Resps. to Defs.' First Interrogs. (**Ex. A**), at 3. Relator Schutte identified the following additional alleged conversations:

| May 2011 | Relator Schutte phone call with Lindsay Reel |
|---|---|
| July 8, 2011 | Relator Schutte phone call with Matt Cross |
| May 9, 2011 | Relator Schutte in-person conversation with "Colleen, Technician at Arnold MO Shop N' Save" |
| May 20, 2011 | Relator Schutte phone call with "Rich RPh at Cub pharmacy #1602" |
| May 21, 2011 | Relator Schutte in-person conversation with "Technician at Kirkwood, MO Shop N' Save" |
| May 22, 2011 | Relator Schutte phone calls with "Brain [sic] RPh. at SavOn Acme #7704"; "Rachel RPh at SavOn Acme #7822"; "Beverly RPh. at Farm Fresh Pharmacy Chesapeake, VA"; and "Andy RPh at Farm Fresh Pharmacy in Elizabeth City, NJ" |
| April 23, 2011 | Relator Schutte phone call with "Holly at Osco in Bollingbrook, IL" |

---

[1] These individuals are no longer employed by the Defendants.

3

*See* Schutte's Resps. to Defs.' First Interrogs. **(Ex. B)**, at 3.

Defendants also propounded Requests for Production on December 20, 2016, which sought, among other things:

- "all documents relating to your alleged June 3, 2011 telephone call with Lindsay Reel referenced in Paragraph 116 of the Complaint,"

- "all documents relating to your alleged July 8, 2011 telephone call with Matt Cross referenced in Paragraph 117 of the Complaint," and

- "all documents relating to the 'numerous phone calls with pharmacy staff at Defendants' branded pharmacies' described in Paragraph 118 of the Complaint."[2]

Relators did not produce any documents related to such alleged conversations in response to these requests. *See* Relator Yarberry's Resps. to Defs.' First Set of Reqs. for Produc. of Docs. **(Ex. C)**, at 3; Relator Schutte's Resps. to Defs.' First Set of Reqs. for Produc. of Docs. **(Ex. D)**, at 4.

At his deposition, however, Yarberry testified that he prepared for his testimony by reviewing "four or five documents on – about notes on calls" made by him or by Mr. Schutte. *See* Yarberry Dep. **(Ex. E**[3]**)**, at 13-15. He testified that:

> [T]here's a mixture of notes from Mr. Schutte and myself [Yarberry]. The notes that I [Yarberry] made were calls that I made from home and I was in front of a computer while I was talking on the phone. So those were – there were not handwritten notes. But there – I believe there were some handwritten notes that Tracy [Schutte] made that are the origin of some of his stuff [referring to handwritten notes taken by Mr. Schutte during calls he made].

Yarberry Dep. **(Ex. E),** at 16-17.

---

[2] Defendants also sought "all documents relating to the April 15, 2011 orientation session as described in Paragraph 114 of the Complaint," which allegations reference additional putative conversations with Defendants' pharmacy employees.

[3] Excerpts from Relator Yarberry's deposition have been filed under seal contemporaneously with this motion.

Relators' counsel then produced five documents (*see* **Exs. F-J**[4]), which Yarberry confirmed were the notes that he reviewed. During their depositions, Yarberry and Schutte were questioned at length about their records of these putative conversations. The salient facts revealed by this questioning include the following:

>**Exhibit F (Deposition Exhibit 13)** - Yarberry identified this document as notes he made on his home computer concerning phone calls he allegedly made to various Defendant pharmacies. Yarberry Dep. **(Ex. E),** at 117-20. He stated the following with respect to this document:
>
>- During these phone calls, Yarberry asked the pharmacy employees, many of whose names he did not recall and did not record, about the cash price of certain prescription drugs and the pharmacies' competitor price matching practices. *Id*. at 117-20; 123-38.
>
>- He has no independent recollection of the substance of these calls. *Id.* at 127-28; 140-144.
>
>- He has no recollection or record of which pharmacies he allegedly called, other than the pharmacy name and city identified in his notes. *Id.* at 143-44.
>
>- The computer on which he prepared these notes "quit working," and he threw it away *after* the filing of this lawsuit. *Id* at 119, 150.
>
>- Yarberry "deleted everything [all documents he prepared on that computer related to this lawsuit] after [he] sent them to counsel." He made no effort to copy any of the files on the computer prior to discarding it. *Id.* at 119, 150.
>
>**Exhibit G (Deposition Exhibit 14)** - Yarberry identified this document as notes he prepared after reviewing a price override report from a Supervalu pharmacy in Arnold, MO. Yarberry Dep. **(Ex. E),** at 145-47. Yarberry stated, with respect to this document:
>
>- The report was provided to him by Schutte at some point after May 15, 2011. *Id.* at 147-148.
>
>- These notes were also prepared on the computer that Yarberry discarded. *Id*. at 148, 150.
>
>Schutte, however, testified that:

---

[4] Exhs. F-J have been filed under seal contemporaneously with this motion.

- This document was typed by Yarberry, who "prepared it with [Schutte's] information," provided to Yarberry by telephone. Schutte Dep. **(Ex. K[5]),** at 137-38.

- Schutte believed he "could have shredded" the price override report that is the subject of this document. *Id*. at 138.

**Exhibit H (Deposition Exhibit 15**) - Yarberry identified this as a document he typed from information provided by Schutte. Yarberry Dep. **(Ex. E),** at 154-55. Yarberry stated that:

- He did not recall whether he typed this from Schutte's handwritten notes, or from a phone call in which Schutte dictated the information from such notes. *Id*.

Schutte testified that:

- Yarberry created these "training notes from the first day that [Schutte] worked" at Shop 'n Save based on "my [Schutte's] notes that I read to him over the phone." Schutte Dep. **(Ex. K),** at 142.

- Schutte had "handwritten notes from [his] training day with Mr. Atchison," he dictated the handwritten notes to Yarberry over the phone, and he "shredded them," "probably after the suit was filed." *Id*. at 142-43.

**Exhibit I (Deposition Exhibit 16**) - Yarberry identified this as a document he typed based on information dictated by Schutte from Schutte's handwritten notes. Yarberry Dep. **(Ex. E),** at 156-58.

- Yarberry confirmed, again, that he disposed of the computer used to prepare these notes. *Id*. at 158.

Schutte testified that:

- This document is "a compilation" created by Yarberry from information related by Schutte over the telephone based on Schutte's handwritten notes. Schutte Dep. **(Ex. K),** at 146-47.

- Schutte would prepare handwritten notes following his shifts at Defendant pharmacies, and that he "took notes on stuff that was pertinent to the case." *Id.* at 150-51.

- Schutte does not have any independent recollection of the transactions or telephone calls reflected in any of these notes. *Id*. at 149; 152-53; 154.

---

[5] Excerpts from Relator Schutte's deposition have been filed under seal contemporaneously with this motion.

- As with the notes referenced above, Schutte shredded the handwritten notes of this phone call. *Id.* at 147, 151-52.

**Exhibit J (Deposition Exhibit 17) -** Yarberry identified this as a document he created from information provided by Schutte, either orally or through notes taken by Schutte. Yarberry Dep. **(Ex. E),** at 159-60. Yarberry stated that:

- "if there were notes, [he doesn't] have them anymore." *Id.* at 160.

- He does not recall "how long after July 8, 2011" he created this document, and he conceded that "we might be able to figure that out" if we had his computer. *Id.* at 161-62.

Schutte testified that:

- Yarberry prepared this document based on information he provided over the phone by Schutte that was, in turn, taken from Schutte's handwritten notes of a July 8, 2011 phone call with Matt Cross. Schutte Dep. **(Ex. K),** at 158-59.

- Schutte shredded these notes, along with all his other handwritten notes related to the issues in this lawsuit. *Id.* at 159.

- Schutte's notes with Matt Cross were a "summarization [sic] of the conversation." *Id.* at 164-65.

- Schutte could not recall whether he included any of his own statements in his notes, and did not rule out the possibility that the typed summaries contain statements or quotations that are actually attributable to Schutte, as opposed to Cross. *Id.*

- As with the other summaries, Yarberry did not send Schutte copies of the summaries to ensure their accuracy. *Id.* at 166.

Schutte additionally identified a May 2011 telephone call he claims to have had with Lindsay Reel, regarding "[s]ubmitting price match to insurance." Schutte's Resps. to Defs.' First Interrogs. **(Ex. B)**, at 3. During his deposition, Schutte testified "I'm sure I took notes of the phone call," "I assume they're gone," and "I don't think I gave any of my handwritten notes to anybody." Schutte Dep. **(Ex. K),** at 168, 170. This vague testimony is at odds with Relators' Complaint, which features a detailed version of this putative conversation about which there is apparently no

7

substantiating evidence, and about which Relators have no present recollection. *See* First Am. Compl. ¶ 116.[6]

## II.     Argument & Authorities

### A.     Seventh Circuit Spoliation Standard and FRCP 37(e)

Spoliation of evidence occurs when a party destroys evidence relevant to an issue in a case. *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002) (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001)). Because this case is based on federal question jurisdiction, federal spoliation law applies. *Cmtys. for Equity v. Mich. High School Athletic Ass'n*, No. 1:98-CV-479, 2001 U.S. Dist. LEXIS 16019 (W.D. Mich. Sept. 21, 2001). That law provides that a court may impose sanctions for spoliation of evidence under Federal Rule of Civil Procedure 37 or under its own inherent power. *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 WL 2371597, at *10 (S.D. Ind. May 18, 2015) (citing *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 998 (N.D. Ill. 2005), *aff'd*, 200 F. App'x 592 (7th Cir. 2006)). Sanctions can include a monetary fine or an award of attorneys' fees assessed against the spoliating party, exclusion of evidence related to or derived from the evidence that has been destroyed, adverse inference presumptions and jury instructions, and default judgment. *See, e.g.*, *Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *6 (N.D. Ill. 2000); *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 272 (7th Cir. 1993); *Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8,* No. 10–CV–1122, 2014 WL 201534, at *11 (C.D. Ill. Jan. 17, 2014); Fed. R. Civ. P. 37(e).

---

[6] No notes – whether handwritten or typed – from this alleged conversation have been produced in this lawsuit. To the extent handwritten notes ever existed, Schutte destroyed them. Schutte Dep. **(Ex. K),** at 170. To the extent a typewritten summary ever existed, the summary itself and any record of its creation or editing was lost when Yarberry deleted his files and threw away the computer he used to create them – all of which occurred well after the filing of this lawsuit by these experienced relators.

8

In the Seventh Circuit, the standard related to spoliation of electronically stored information (ESI) differs from that applicable to destruction of non-electronic information. The latter is derived from the common law associated with courts' enforcement of document preservation obligations under their inherent powers. The former is set forth in Federal Rule of Civil Procedure 37(e), which became effective on December 1, 2015. A review of both follows.

### 1.    Standard Applicable to Destruction of Non-Electronic Evidence

To establish a claim for spoliation *of non-electronic evidence*, such as the handwritten notes destroyed by Relators, the moving party must establish that the non-moving party: 1) had a duty to preserve the evidence because it knew or should have known of imminent litigation; and 2) destroyed the evidence in bad faith. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 429 (7th Cir. 2010); *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998); and *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013). "Bad faith" has been interpreted to mean that a party destroyed evidence for the purpose of hiding adverse information. *Malibu Media, LLC*, 2015 WL 2371597, at *11 (finding two individuals liable for spoliation and entering a default judgment against them) (citing *Mathis*, 136 F.3d at 1155; and *Bracey*, 712 F.3d at 1019).

"The prevailing rule [is] that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Crabtree*, 261 F.3d at 721 (citing *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)); *see also Partington*, 999 F.2d at 272 ("[I]f, being sensitive to the possibility of a suit, a [party] then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence.").

2.  *Standard Applicable to Destruction of Electronically Stored Information*

On December 1, 2015, Rule 37(e) of the Federal Rules of Civil Procedure set forth a new standard for spoliation of ESI, which applies to the Relators' deletion of everything drafted on Yarberry's computer as well as the disposal of the computer itself. The new Rule 37(e) states:

> If *electronically stored information* that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) *only* upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e), 2015 Am. (emphasis added).

Importantly, the "intent-to-deprive" standard under Rule 37(e)(2) applies *solely* to parties who seek the sanctions of an adverse inference presumption, a jury instruction, or a default judgment related to spoliation of ESI. Parties who seek lesser sanctions under Rule 37(e)(1) need not satisfy this standard. Instead, parties, like Defendants here, who seek a lesser sanction of exclusion of the evidence tainted by Relators' destruction, need only show that: (1) the destroyed information is evidence that should have been preserved; (2) Relators failed to take reasonable steps to preserve the ESI; and (3) the evidence cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e)(1).

There must also be a finding of prejudice due to the spoliation, but "the rule does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e) Notes of Advisory Comm. to 2015 Am. ¶ 14. The Advisory Committee recognized that "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." *Id.* Once the Court makes a finding of prejudice, the Court may enter sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The Advisory Committee, however, also recognized that "[i]n an appropriate case, it may be that serious measures are necessary to cure prejudice, such as forbidding the party that failed to preserve the information from putting on certain evidence." Fed. R. Civ. P. 37(e) Notes of Advisory Comm. to 2015 Am. ¶ 16.

The spoliation by Relators in this case meets all requirements for the limited sanctions sought by Defendants under both the bad faith standard applicable to Relators' destruction of the handwritten notes and the Rule 37(e)(1) standard applicable to Relators' disposal of the computer and the ESI it contained.

**B.    Relators Had a Duty to Preserve the Destroyed Evidence**

The Seventh Circuit has noted that "courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask–Morton*, 534 F.3d at 681. The duty under Rule 37(e) is intended to codify this common law duty, and applies to "[ESI] that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e) Notes of Advisory Comm. to 2015 Am. ¶ 5. "The duty to preserve evidence includes any relevant evidence over which the nonpreserving party had control and reasonably knew or could reasonably foresee was material to a potential legal action." *China Ocean Shipping Co. v. Simone Metals, Inc.*, No. 97 C 2694, 1999 WL 966443,

11

at * 3 (N.D. Ill. Sept. 30, 1999) (citations omitted). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake v. UBS Warburg, LLC (Zubulake IV)*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). Relevant records include "any documents or tangible things (as defined by Rule 34(a)) made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* at 217–218.

Here, Relators clearly had a duty to preserve the evidence at issue. Litigation was obviously "imminent" – Relators themselves had filed the case before the misconduct. The evidence was also manifestly relevant, as it purportedly memorialized conversations featured in the Complaint. The evidence was in Relators' control when lost, and was destroyed by the Relators themselves after they filed this suit. Relators' deposition testimony clearly shows they were involved in spoliation of both ESI and non-electronic source evidence after the August 8, 2011 filing of their Complaint.

**C.  Relators Failed to Take Reasonable Steps to Preserve the Electronically Stored Information, Which Cannot be Replaced or Restored Through Additional Discovery**

Similarly, Relators failed to take reasonable steps to preserve the ESI at issue. In fact, contrary to taking steps to preserve the ESI, Relators actively worked to destroy or otherwise make the evidence unavailable. Relator Yarberry testified that once the computer "quit working," he simply threw it away after the filing of the lawsuit. Yarberry Dep. **(Ex. E),** at 119, 150. He also stated that he "deleted everything [all documents he prepared on that computer related to this lawsuit] after [he] sent them to counsel," and did not even try to copy any of the files on the computer prior to discarding it. *Id.* at 119, 150.[7] Under these facts, not only did Relators "fail to

---

[7] Apparently, "sen[ding] them to counsel" means sending paper copies of the typed summaries, as no electronic versions of the summaries or attendant metadata reflecting dates of their creation or editing have been produced in response to Defendants' document requests.

take reasonable steps to preserve" the computer and the ESI stored on it, they took affirmative steps to dispose of it. *See Snider v. Danfoss*, No. 15 CV 4748, 2017 WL 2973464, at *6 (N.D. Ill. July 12, 2017) (in which court found a party who "blindly followed its 90 day destruction policy in the face of a clear threat of litigation" "[could] not honestly contest" that they had failed to take reasonable steps to preserve).

The question of whether a party took reasonable steps to preserve ESI commonly arises in the context of a corporate party managing a large volume of ESI, only a small percentage of which may be potentially relevant. The Advisory Committee made it clear that Rule 37(e) was designed, at least in part, to address the burden that may arise when ESI is voluminous and stored on multiple devices. Fed. R. Civ. P. 37(e) Notes of Advisory Comm. to 2015 Am. ¶ 9 ("Due to the ever-increasing volume of [ESI] and the multitude of devices that generate such information, perfection in preserving all relevant [ESI] is often impossible."). The committee was also concerned with proportionality, and the need to be sensitive to parties' resources, recognizing there may be large costs associated with preservation of voluminous data. *Id.* ¶ 11.

Here, there was neither burden nor expense to the Relators associated with safeguarding the single computer used to create Yarberry's summaries. Relators could simply have provided the seemingly non-functioning computer to their counsel along with the surviving summaries, at no cost. They also could have taken the computer containing relevant evidence for repair by IT professionals when it appeared to stop working. Instead, they acted intentionally to cause its disappearance, along with the highly relevant metadata it contained regarding the dates and times of creation and editing of the summaries discussed above. Given that the burden on Relators associated with preservation of the computer was nonexistent and the evidence it contained was highly relevant, it is clear that Relators did not take reasonable steps to preserve the ESI at issue.

13

The data lost when Relators discarded the computer plainly cannot be replaced or restored through additional discovery. Notes not produced to date have been lost forever, and all metadata reflecting the timing of the creation and editing of even the summaries has likewise been lost and is non-recoverable. That there is no evidentiary "fix" for this loss is particularly clear given Relators' testimony that they cannot recall details regarding either when these summaries were completed, or the substance of the conversations they purport to record. There simply is no evidentiary substitute for the metadata that was contained on the now-discarded computer.

**D.      Relators Destroyed Evidence in Bad Faith, and Defendants Have Been Prejudiced**

Once a duty to preserve has been established, the question with respect to the handwritten notes[8] becomes whether Relators destroyed the notes in bad faith, *i.e.,* for the purpose of depriving Defendants of relevant evidence adverse to Relators' case. *Trask-Morton*, 534 F.3d at 681. "'Bad faith' is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference." *Mathis*, 136 F.3d at 1155. Thus, even in the absence of direct evidence, the Court may infer bad faith from the circumstances of the destruction of evidence. *Id; see also Sokn*, 2014 WL 201534, at *7 ("The way to determine whether evidence was destroyed in order to hide adverse information is to either: (a) assess the actual evidence, which one typically cannot do because the evidence no longer exists; or (b) infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation.").

In the *Sokn* case, this Court stated, in evaluating whether to make an inference that evidence was destroyed in bad faith,

> [i]f the tapes were destroyed before the Defendants had a reasonable indication of potential litigation with Plaintiff, then it is substantially less likely the destruction was done to hide discoverable information from the Plaintiff. In such a case, the

---

[8] As discussed above, this bad faith standard does not apply to Relators' disposal of the computer, for which Defendants seek sanctions solely under Rule 37(e)(1).

> Court will not infer bad faith. If, however, the tapes were destroyed after the Defendants had a reasonable indication of potential litigation with Plaintiff, then it is substantially likely the destruction was done to hide information from the Plaintiff. If this were the case, the Court would infer bad faith."

*Id.* at *5. *See also Malibu Media, LLC.,* 2015 WL 2371597, at *14-16 (finding that circumstances of the spoliating party's destruction of evidence, including their motive to destroy the evidence and the timing of its destruction, supported an inference that the party acted in bad faith in destroying the files at issue).

Applying Seventh Circuit law to the facts of this case leads to the conclusion that Relators' destruction of this evidence after filing suit constitutes bad faith sufficient to support the limited sanctions Defendants seek. Relators unquestionably destroyed relevant evidence after filing this suit, and did so despite being experienced in collecting and marshalling such evidence in fraud cases. Despite their experience as *qui tam* relators and their clear duty to understand their preservation obligations, Relators destroyed original-source information and apparently did so without first consulting their counsel (*see* Schutte Dep. **(Ex. K),** at 144) (in which Schutte stated he never asked his attorney whether he needed to keep the notes he shredded). Given the importance the Seventh Circuit places on the timing of a party's destruction of relevant evidence, little more is required here. There are, however, additional facts to support the finding of bad faith, which also highlight the prejudice Defendants have suffered due to Relators' destruction of relevant evidence.

1.  *Relators Destroyed the Best Evidence of the Phone Calls, Leaving Defendants with Limited Ability to Effectively Cross-Examine Relators About Them*

Relators testified that after Schutte read what he claimed were portions of his handwritten notes over the phone to Yarberry, and after the lawsuit was filed, Schutte shredded all of his contemporaneous notes from these calls. Thereafter Yarberry doubled down on this misconduct,

15

first deleting his files related to this case and then disposing of his computer. Relators' actions have deprived Defendants of the only contemporaneous evidence of the phone calls Relators claim constitute admissions from Defendants' employees. A logical explanation for Relators' post-filing destruction of the contemporaneous records of the conversations is that the destroyed records were actually damaging to the Relators' case, or at least inconsistent with Relators' current characterization of the conversations.

Had these conversations actually been helpful to their case, Relators – who are experienced in bringing and maintaining these suits – would presumably not have destroyed the best, and only contemporaneous, evidence of them. Relators' motive, in such a case, would have been to preserve and produce the evidence, not to destroy it. This destruction leaves Yarberry's summaries as the only "evidence" of these calls. These summaries, however, were prepared under what can only be described as suspicious circumstances. They were created and edited to support Relators' case after the filing they purportedly support. Moreover, taking Relators' testimony at face value:

- The summaries were, in large part, created based on oral communications made over the phone, the communications themselves being derivative of Schutte's now-destroyed handwritten notes – all while Relators were in different physical locations. Yarberry Dep. **(Ex. E),** at 161;

- Schutte never reviewed the summaries to ensure that they accurately reflected either his conversations or his notes of them. Schutte Dep. **(Ex. K),** at 145, 166;

- Schutte does not deny that some of the statements attributed to Defendants' employees could, in fact, be his own words. *Id.* at 164-65; and

- Neither Relator has any independent recollection of the alleged conversations. Yarberry Dep. **(Ex. E),** at 127-28; 140-144; Schutte Dep. **(Ex. K),** at 149, 152-53, 154.

2. *Relators are Serial Litigators Who Are Well Aware of their Document Preservation Obligations*

16

Relators are experienced *qui tam* litigators. Together with their counsel in this case, Relators have filed a combined five *qui tam* lawsuits since 2010, all against pharmacies alleged to have defrauded government healthcare programs. Yarberry Dep. **(Ex. E),** at 40, 49, 53, 56, and 63. Relators clearly understood and disregarded their obligation to retain all evidence relevant to the instant lawsuit.

3. *Relators Destroyed Evidence Knowing It was Relevant*

Relators understood the relevance of the documents and computer they destroyed. Yarberry testified that he made the phone calls, and took notes about them, because he "knew that [the Defendant pharmacies] were not billing properly," and he "was investigating what they were doing." Yarberry Dep. **(Ex. E),** at 121-22. He also admitted that "we might be able to figure [] out [when his typewritten notes were created]" if we had his computer. *Id.* at 161-62. Schutte testified that he applied for a job at SuperValu in 2011 for the express purpose of "you know, check[ing] on this fraud thing that was going on," and he "took notes on stuff that was pertinent to the case." Schutte Dep. **(Ex. K),** at 40, 151.

**D.    The Court Should Sanction Relators**

In the Seventh Circuit, the Relators' destruction of clearly relevant evidence after filing this lawsuit is sufficient grounds to infer bad faith and to impose sanctions related to destruction of the handwritten notes. The additional evidence set forth above regarding Relators' bad faith and the prejudice to Defendants resulting from Relators' spoliation only reinforces that sanctions are appropriate, with respect to both the handwritten notes and the computer and ESI it contained. Although a finding of prejudice is not required for the Court to impose sanctions for Relators' destruction of the handwritten notes, Defendants have nonetheless demonstrated that they have been prejudiced by Relators' intentional destruction of both the computer and the handwritten

17

notes, and sanctions, under both Rule 37(e)(1) (for Relators' destruction of the computer and attendant ESI) and the Court's inherent powers (for Relators' destruction of the handwritten notes), are appropriate.

Relators' actions all call into question the credibility of the information Relators have reported about these phone calls, and their destruction of the only contemporaneous, original-source materials concerning that evidence has created a situation where Defendants are unable to effectively challenge the content of the litigation-driven summaries they now proffer. Under such circumstances, the only outcome that could cure the prejudice to Defendants created by Relators' spoliation of this evidence is to exclude all evidence regarding Relators' alleged conversations with Defendants' employees, and to strike all allegations of same in their Complaint.

### III.   Conclusion

Relators destroyed relevant evidence in bad faith, causing prejudice to Defendants. Defendants therefore ask the Court to:

1)   strike all references to Relators' alleged conversations with Defendants' employees from Relators' First Amended Complaint;

2)   preclude Relators from offering any evidence at trial regarding their conversations with Defendants' employees, including but not limited to the typed notes of conversations that were produced during the Yarberry deposition **(Exs. F-J)**, any evidence that is derived from those notes, including Relators' interrogatory responses, and any other evidence related to the occurrence or content of Relators' alleged conversations with employees of Defendant pharmacies, about which Relators have no independent recollection; and

3)   award Defendants their attorneys' fees related to bringing this motion.

Dated:  January 9, 2018

Respectfully submitted,

By *s/ Frederick Robinson*
Frederick Robinson
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
Phone:  (202) 662-4534
Fax:  (202) 662-4643
Email:  rick.robinson@nortonrosefulbright.com
*Lead Counsel*

Selina Coleman
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
Phone:  (202) 662-4536
Fax:  (202) 662-4643
Email:  selina.coleman@nortonrosefulbright.com

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION

I certify that the foregoing Motion for Limited Sanctions for Spoliation of Evidence and Memorandum in Support complies with the type volume limitation set forth in C.D. Ill. Local Rule 7.1(B)(4)(b)(1). The document is 20 pages long, and according to Microsoft Word, the foregoing motion contains 5826 words, 37,143 characters (with spaces) and 618 lines of type.

*s/ Frederick Robinson*
Frederick Robinson

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2018, pursuant to Local Rule 5.3 and Federal Rule of Civil Procedure 5(b), this document was filed electronically with the Clerk of the Court using CM/ECF and served upon counsel of record. Confidential exhibits related to this motion have been filed under seal and served upon all counsel of record by e-mail.

            *s/ Frederick Robinson*
            Frederick Robinson