IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel Tracy SCHUTTE and MICHAEL YARBERRY, ) ) ) ) | |
| Relators, ) ) | |
| v. ) ) | No. 11-cv-3290 |
| SUPERVALU, INC., et al., ) ) | |
| Defendants. ) | |

## **OPINION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Relators Tracy Schutte and Michael Yarberry's Motion to Compel (d/e 109) (Motion). For the reasons set forth below, the Motion is ALLOWED in part and DENIED in part.

BACKGROUND

Relators brought this case against Defendants Surpervalu, Inc., and related entities (collectively Supervalu) for violation of the False Claims Act, 31 U.S.C. § 3729 et seq. Plaintiffs' First Amended Complaint with Jury Demand Pursuant to the Federal and State False Claims Act (d/e 33) (Amended Complaint). Relators allege that Supervalu pharmacies intentionally misrepresented the Usual and Customary (U&C) prices that the pharmacies charged for medications in order to receive inflated

reimbursements from federally funded programs such as Medicare Part D, Medicaid, and federal employee and retiree health insurance programs (collectively Federal Programs).

The Relators allege Supervalu established a Price Matching Program in 2006 under which Supervalu pharmacies matched discount prices offered by Walmart, Kmart, and other competitors to customers paying cash for medications, but did not include the discounted prices in Supervalu's determination of its U&C prices. The U&C prices were used to calculate the reimbursement amounts that the Federal Programs paid Supervalu pharmacies for the medications dispensed to covered individuals. The Relators allege that the miscalculation of the U&C prices constituted a fraudulent misrepresentation used to secure funds from the federal government in violation of the False Claims Act. Supervalu denied the allegations.

On December 20, 2016, Relators served their First Set of Requests to Produce on Supervalu.  Memorandum in Support of Motion to Compel (d/e 110) (Relators Memorandum), Exhibit A, Relators' First Set of Requests for Production of Documents to Defendants (Request).  The Request included the following requests relevant to this Motion:

1. All Documents and Communications Defendants submitted to or received from the United States (including the United States Department of Justice and the United States Department of Health & Human Services, Office of the Inspector General) and/or to any of the Plaintiff States since October 1, 2011 Relating to any of the allegations made or damages sought in this action and/or to the Government's investigation of this matter, including, but not limited to Documents calculating damages to the Massachusetts Medicaid program and any and all privilege logs. This request does not seek production of documents that have previously been produced by Defendants to Relators.

2. All Documents identifying Discount Programs offered by You for any Drug, including but not limited to Documents that contain the following information:
> . . . .
> d. The Drugs covered in your Discount Program(s), including product name, NDC, GCN, dosage, dates covered, and discount amount offered, advertised or matched for each Drug. This request includes any formularies, Competitors' price or drug lists including those maintained at local stores, or other Documents used or distributed by You to determine drugs eligible for any price matching or other Discount Program.
>
> e. Marketing or advertising information of any kind used to publicize or advertise Your Discount Program(s), including: signage (or facsimile thereof) displayed in your stores or on Your store premises; information published in newspapers, magazines, flyers, leaflets, on internet websites, Facebook pages, radio, or television; and, or any other marketing, advertising or promotional information used by You to promote Your Discount Program(s).

. . . .

15. Documents and Communications reflecting or concerning Your determination or calculation of U&C price, Reported U&C price, Negotiated Price, and/or Reported Negotiated Price for

all Drugs sold by You during the relevant time period including Drugs in Your Discount Program(s) or reimbursed by Government Health Programs. This request includes, but is not limited to Documents related to Your discussions or decisions regarding these prices, and any Documents You reviewed or relied on in determining or calculating these prices for each Third Party Payor, including Government Health Programs.

. . . .

19. Documents and Communications (including but not limited to emails, reference manuals, handbooks, training materials, directives, guidance, memoranda, or other rules and/or instructions to pharmacy or IT staff) reflecting or concerning Your policies and procedures regarding:

> . . . .
>
> f. paying, processing, submitting or adjudicating cash transactions for Drugs;
>
> g. paying, processing, submitting or adjudicating claims for reimbursement of Drugs by Third Party Payors;

. . . .

22. Documents and Communications reflecting or concerning business and financial studies, analyses, reports, summaries, memoranda, opinions, and recommendations relating to or concerning: the calculation of U&C price, Reported U&C Price, Negotiated Price or Reported Negotiated Price; Your Discount Program(s), including price matching and whether discount prices should be included in calculations of Reported U&C Price or Reported Negotiated Price;

. . . .

31. All Documents that discuss or refer to Your competitors' Discount Programs, including programs under which Walmart or any other competitor offered generic prescription drugs for $4 for a 30-day supply, $8 for a 60-day supply, or $10 or $12 for a 90-day supply or brand drugs during the Relevant Time

>    Period, including any prices lists or formularies of Drugs offered at a discount.
>
>    . . . .
>
>    42. For the Relevant Time Period, Documents related to compliance, fraud or abuse training related to Government Health programs.
>
>    44. Documents identified by You in Your May 13, 2016 Initial Disclosures:
>
>    >    . . . .
>    >
>    >    e. Relevant policies, procedures, protocols, and training materials.

Request, ¶¶ 1, 2(d) and (e); 15; 19(f) and (g); 22; 31; and 44(e).

Supervalu produced some documents during discovery. Relators concluded the production was insufficient. Supervalu disagreed. The parties' attorneys corresponded to try to resolve the disputes between themselves, but could not. The Relators then filed this Motion.

The Relators ask the Court to order Supervalu to produce the several categories of documents. The Court addresses those requests in order.

1.   <u>Documents Discarded in June 2012</u>

Relators filed this action under seal on August 8, 2011. On January 17, 2012, the Office of Inspector General for Health and Human Services served a subpoena on Supervalu to secure advertising relating to the Price Matching Program. On March 2, 2012, Supervalu management issued

instructions to all pharmacies to take photographs of Price Matching marketing materials and signage and make copies of any competitor's price list or drug list, and put the photos and copies in a file and deliver the file to district managers (Litigation Hold). The district managers thereafter delivered the files to Supervalu's legal department. See Defendants' Opposition to Relators' Motion to Compel Discovery Responses (d/e 114) (Opposition), Exhibit B, Declaration of Daniel S. Day (Day Declaration), ¶¶ 1-6.

On June 11, 2012, Supervalu management issued instructions by email to pharmacies to discard and destroy Price Matching Program marketing materials and competitor price lists and drug lists (June 11, 2012 Email). See Day Declaration, ¶ 9. Supervalu states that pharmacy managers were instructed to retain copies of materials that had not already been copied before discarding or destroying them. Relators state that some of the emails directed pharmacies to retain copies of all materials to be discarded or destroyed, but some of the emails did not. Relators state that these documents are responsive to Requests 2(d), 2(e), 31, and 44(e) quoted above. The Court agrees that those requests encompassed such advertising materials and competitor drug and price lists.

Supervalu has produced marketing materials, signage, price lists, and drug lists, but has refused to identify materials responsive to a particular discovery request. Supervalu takes the position that it is not required to do so because it has produced the documents as the documents were kept in the usual course of business. Relators ask the Court to compel Supervalu to identify by Bates numbers which documents are responsive to discovery requests and, specifically, to identify copies of advertising materials and competitors' price and drug lists produced that were destroyed pursuant to the June 11, 2012 Email. If no copies were retained, the Relators ask the Court to compel Supervalu to so state.

The Court orders Supervalu to identify by Bates numbers the documents produced that were copies of documents that were destroyed or discarded pursuant to the June 11, 2012 Email, including copies made before June 11, 2012 pursuant to the Litigation Hold. Rule 34 requires a party to produce documents (1) as they are kept in the usual course of business or (2) must organize and label them to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E). Companies change marketing materials periodically, so discarding or destroying outdated materials could be in the usual course of business. An instruction for all pharmacies to retain copies would not be in the usual course of business.

The documents would be retained for the purpose of the compliance with the subpoena or for potential litigation.  Supervalu, therefore, must identify the documents produced that were retained copies of documents discarded or destroyed pursuant to the June 11, 2012 Email, including copies made before June 11, 2012 pursuant to the Litigation Hold.  If no such copies were produced in discovery, Supervalu must so state.

  2. <u>Data used by Christina Zook to set U&C Prices</u>

  Christina Zook was Senior Pricing Specialist for Supervalu.  Part of her duties was to calculate U&C prices for generic drugs.  One method of calculating U&C prices involved surveys of the competition performed by an outside company.  Zook testified that the outside company produced an Excel spreadsheet that contained the survey results.  <u>Motion</u>, Exhibit F, <u>Deposition of Christina Zook</u>, at 101-03.  Zook said, "We would compile the data and see if we needed to make any adjustments . . . in each market." <u>Id.</u> at 104.  Zook testified that she retained these spreadsheets on her computer.  <u>Id.</u> at 106.  Relators ask the Court to compel Supervalu to produce these spreadsheets.  The spreadsheets are responsive to Requests Nos. 15 and 22 at least.  Supervalu objects that the documents are not relevant and production of such documents is not proportional to the needs of the case.

Supervalu's objections are overruled. The Complaint alleges that Supervalu's representation to the Federal Programs of its U&C prices were false. The method by which Supervalu calculated its U&C prices is relevant, at least for discovery purposes. Supervalu must produce the survey data spreadsheets that Zook used to calculate U&C prices.

Supervalu states that this Court previously held that it did not need to produce documents related to discount programs besides the Price Matching program. See Opinion entered April 17, 2017 (d/e 80) (Opinion 80), at 8-9. The issue presented here is narrower than the issue before the Court in the Court's prior April 17, 2017 Opinion (d/e 80). Zook used the spreadsheets sought here to calculate U&C prices, not cash prices or discount prices under other discount programs. The validity of the U&C prices is a central issue. Discovery of evidence related to Supervalu's procedures for calculating U&C prices is relevant and proportional to the needs of the case. The Relators are entitled to discover how Supervalu set those prices. Supervalu is ordered to produce these documents.

3. Medicare Part D Updates

Relators ask the Court to compel Supervalu to produce all of its Medicare Part D updates, described by Supervalu Managed Care Operations Manager in his deposition. Relators Memorandum, Exhibit E,

Deposition of Matthew Cross, at 13.  Supervalu responds that it has produced all such updates and has identified the updates by Bates number.  Copies are attached to the Opposition as Exhibit F.  This portion of Relator's Motion is, therefore, denied as moot.

4. Materials Stored on the Learning Cart

Relators ask the Court to compel Supervalu to produce training and other material stored on a computer application called a Learning Cart.  The documents sought are responsive to at least Requests Nos. 19 and 42 quoted above. Supervalu has now agreed to give Relators access to the materials on the Learning Cart.  Opposition, at 6-7.  Supervalu is ordered to do so.

5. Documents Sent to or Received from Governmental Entities

Supervalu's attorneys wrote letters concerning this case to state agencies that administered Medicaid programs, including the twelve states Relators included as proposed plaintiffs in this case and twelve additional states in which Supervalu operated pharmacies.  Relators state Supervalu also wrote letters to federal agencies including the Department of Health and Humans Services and the Centers for Medicare and Medicaid Services.

Relators secured copies of two letters Supervalu attorneys sent to the North Carolina and Washington agencies administering Medicaid. The letters were both dated January 26, 2018. The letters stated that Supervalu was prepared to serve a subpoena for documents and deposition testimony from the agency to defend itself in this case. The letters offered to avoid the time and expense of responding to such a subpoena by securing an acceptable declaration from an authorized representative of the agency. The letters offered to work with the agency to draft a declaration acceptable to the agency and Supervalu. The letters included draft copies of the proposed subpoenas. The letters included subpoenas for documents and asked the agencies to execute a declaration relevant to this case. See Relators Memorandum, at 13-15 and Exhibit P, Letter dated January 26, 2018, from Supervalu counsel to Deputy Secretary for Medical Assistance, North Carolina Department of Health and Human Services (with enclosures), and Exhibit Q, Letter dated January 26, 2018, from Supervalu counsel to Director, Washington health Care Authority (with enclosures). Supervalu has produced some executed declarations and agreed to produce the rest by the close of discovery. Relators ask the Court to order Supervalu to produce all communications with these agencies. The documents are responsive to Request 1, quoted

above. Supervalu objects claiming the attorney work product privilege. Opposition, at 7-11.

The work product privilege is set forth in Federal Rule of Civil Procedure 26(b)(3):

> **(3) *Trial Preparation: Materials*.**
>
> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > **(i)** they are otherwise discoverable under Rule 26(b)(1); and
>
> > **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> **(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.
>
> **(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:
>
> > **(i)** a written statement that the person has signed or otherwise adopted or approved; or

> **(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

Fed. R. Civ. P. 26(b)(3) (emphasis in the original). The work-product privilege "protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." <u>Sandra T.E. v. South Berwin School District 100</u>, 600 F.3d 612, 618 (7th Cir. 2010). The purpose of the privilege is to "protect an attorney's mental impressions and opinions against disclosure and to limit the circumstances in which attorneys may piggy-back on the research and thinking of their more diligent adversaries." <u>United States v. Dean Foods Co.</u>, 2010 WL 3980185, at *2 (E.D. Wis. October 8, 2010). The Supreme Court explained when it adopted this privilege, that "under ordinary circumstances, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to dangers of inaccuracy and untrustworthiness." <u>Hickman v. Taylor</u>, 329 U.S. 495, 513 (1947). The Supreme Court, however, also said that the underlying facts, themselves, are not protected, "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, a party may compel the other to disgorge whatever facts he has in his possession." <u>Hickman</u>, 329 U.S. at 507.

The attorney work product privilege does not cover documents written by representatives of a state or federal agency. The representative of these agencies did not produce these documents "by or for" Supervalu. These agency representatives did not work for Supervalu or its attorneys. Supervalu must produce all responsive documents written by representatives of these agencies.

The attorney work product privilege may cover documents (including letters and draft documents, such as draft declarations) prepared by Supervalu's attorneys and sent to these agencies as described in the Motion.

The Relators argue that Supervalu waived attorney work product privilege with respect to documents sent to these agencies. The attorney work product privilege can be waived. The waiver is different from the waiver of the attorney-client privilege. The attorney does not waive the privilege anytime an attorney discloses privileged documents to third parties. The privilege covers work documents prepared for trial. The attorney often must confer with third parties such as experts and third party witnesses to prepare.

A waiver occurs if the attorney voluntarily discloses the information in a way that is "inconsistent with the adversary system." Eagle

Compressors, Inc. v. HEC Liquidating Corp., 206 F.R.D. 474, 479 (N.D. Ill. 2002). Letting an adversary see the information, for example, is inconsistent with protecting the attorney's mental impressions and thought processes and usually waives the privilege. The Second Circuit explained, "Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993). The Seventh Circuit has said that disclosing information in a way that substantially increases the opportunities for potential adversaries to obtain the information may waive the privilege. See Appleton Papers, Inc. v. E.P.A., 702 F.3d 1018, 1025 (7th Cir. 2012).

In United States v. Nobles, 422 U.S. 225, 239-40 (1975), the defendant waived the privilege to his investigator's report by putting his investigator on the stand to testify. In Steinhardt Partners, the attorney waived the privilege by voluntarily disclosing information to the Securities and Exchange Commission at a time when the plaintiff was the subject of an SEC investigation. The SEC was an adversarial position with the plaintiff because of the investigation. The voluntary disclosure to the SEC waived the privilege for the subsequent private civil suit. Steinhardt Partners, 9 F.3d at 234-35.

In Appleton Papers, the Environmental Protection Agency previously alleged that the plaintiff and seven other companies contaminated the Fox River in Wisconsin.  The EPA retained a consultant in preparation for potential litigation regarding the Fox River contamination.  The EPA filed actions against two of the other companies and entered into consent decrees with those companies.  The EPA used portions of the retained consultant's report in connection with the two other consent decrees.  The plaintiff in Appleton Papers filed a Freedom of Information Act request for the entire consultant's report.  The EPA asserted the work product privilege.  The Seventh Circuit held that disclosing portions of the consultant's report in connection with the two consent decrees, but not the entire report, was consistent with adversary system and consistent with the purposes of the work product privilege.  The EPA disclosed specific portions of the consultant's report to secure settlements with specific parties, but retained the confidentiality of the remainder of the report to use in negotiations and potential litigation with the remaining companies.  Appleton Papers, 702 F.3d at 1025.  The privilege was waived as to the portions disclosed in connection with the consent decrees, but the remainder of the report remained privileged attorney work product. Id.

The United States and the twelve States named as potential plaintiffs are not parties to this case. Governments become parties of a False Claims Act case only if they elect to intervene. <u>United States ex rel. Eisenstein v. City of New York, New York</u>, 556 U.S. 928, 932-33 (2009). None elected to do so here. They are not parties. The other twelve States listed in the Amended Complaint, but not named as potential parties, also clearly are not parties. The United States and the 24 States identified in the Amended Complaint also have not threatened to commence an action against Supervalu. These governmental entities are less adverse to Supervalu than the EPA was to the plaintiff in <u>Appleton Papers</u>, the SEC was to the defendant in <u>Steinhardt Partners</u>, or the prosecutor was to the defendant in <u>Nobles</u>.

The United States and the 24 States, however, have a pecuniary interest in the outcome of this case that is adverse to Supervalu. If the Relators prevail, the United States and these States may receive reimbursements and/or civil penalties from Supervalu. <u>See</u> <u>Amended Complaint</u>, at 46-48 <u>Prayer for Relief (and statutes cited therein)</u>. The entry of such a judgment would make Supervalu adverse to these States and the United States. Supervalu's communications of information to these potential adversaries was inconsistent with protecting Supervalu's

attorney's mental impressions and thought processes with respect to the information provided.  The Court, therefore, finds that Supervalu waived the attorney work product privilege with respect to correspondence with agencies of the United States and the 24 States identified in the Complaint.

The Court orders Supervalu to produce all documents that Supervalu, or its attorneys or agents, sent after January 1, 2018, to any representative of the 24 States or the United States relating to any of the allegations or claims for damages in the Amended Complaint, and all responses thereto by any representative of the 24 States or the United States.  The Court limits the production to correspondence sent after January 1, 2018, because Supervalu's attorneys apparently sent the letters at issue to North Carolina and Washington in January 2018.  Limiting the responsive documents to correspondence after January 1, 2018, therefore, is appropriately proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).

Relators further ask this Court for permission to take additional depositions at Supervalu's expense after receipt of the documents.  The request is denied at this time.  Relators have not demonstrated any specific prejudice that they suffered by not having specific documents at particular

depositions. Absent a showing of prejudice, the Court will not consider the question of ordering additional depositions.

THEREFORE, IT IS ORDERED that Relators Tracy Schutte and Michael Yarberry's Motion to Compel (d/e 109) is ALLOWED in part and DENIED in part. Defendants shall produce by May 31, 2018, all documents ordered to be produced by this Opinion.

ENTER: April 23, 2018

                                      s/ *Tom Schanzle-Haskins*
                                  TOM SCHANZLE-HASKINS
                                  UNITED STATES MAGISTRATE JUDGE