IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, DELAWARE, ILLINOIS, INDIANA, MASSACHUSETTS, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NORTH CAROLINA, RHODE ISLAND, and VIRGINIA *ex rel.* TRACY SCHUTTE and MICHAEL YARBERRY,<br><br>Plaintiffs,<br><br>v.<br><br>SUPERVALU, INC., SUPERVALU HOLDINGS, INC., FF ACQUISITIONS, LLC, FOODARAMA, LLC, SHOPPERS FOOD WAREHOUSE CORP., SUPERVALU PHARMACIES, INC., ALBERTSON'S, LLC, JEWEL OSCO SOUTHWEST LLC, NEW ALBERTSON'S, INC., AMERICAN DRUG STORES, LLC, ACME MARKETS, INC., SHAW'S SUPERMARKET, INC., STAR MARKET COMPANY, INC., JEWEL FOOD STORES, INC., and AB ACQUISITION LLC<br><br>Defendants. | No. 11-cv-03290 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
DETERMINATION OF PRIVILEGE AND INADVERTENT PRODUCTION**

Pursuant to Federal Rule of Civil Procedure 26(b)(5)(B) and Paragraph 18(d) of the Protective Order entered in this case (*see* Dkt. 74), Defendants file this Memorandum in Support of their Motion for Determination of Privilege with respect to three unique documents[1] that were

---

[1] Unredacted versions of these three documents have been filed under seal and attached as exhibits to this motion. *See* Exhibit M (unredacted version of SVU00427255 and SVU00465079); Exhibit N (unredacted version of SVU00523729 and SVU00087829); and Exhibit O (unredacted version

inadvertently produced during the course of discovery. Because these documents contain information that is protected by the attorney-client privilege, Defendants request that the Court enter a finding that the redacted portions of such documents are privileged and were inadvertently produced, and prohibit Relators' counsel from using or referencing the redacted material going forward.

I.     **FACTS**

During discovery, Defendants have reviewed more than 104,000 documents and produced more than 23,000 documents totaling almost 600,000 pages in response to Relators' 63 separate requests for production in this False Claims Act ("FCA") litigation. The documents produced were collected from [number of custodians] document custodians.

To review the documents, Defendants used the Axcelerate 4 document review platform. Before starting the review, Defendants ran a de-duplication process over the entire universe of collected documents in an attempt to remove as many duplicative documents as the review platform permits. Despite using this electronic de-duplication process, Defendants are aware that duplicate documents remained in remaining document set, which were reviewed and produced in the normal course.

A team of approximately 18 reviewers conducted a first-level review of the collected documents, reviewing the documents for both responsiveness and privilege purposes. Key privilege terms, including the email addresses and names of in-house and outside counsel were highlighted in red in the html view of Axcelerate in an attempt to alert reviewers that a document

---

of Documents SVU00465063-78; SVU00427314-29; SVU00523740-55; and SVU00509954 – 69).

may involve an attorney and be subject to a claim of privilege.[2] In addition, prior to each production, Defendants ran the key privilege terms over any document that had been coded as ready for production in an attempt to keep privileged documents from being produced.

Despite Defendants' best efforts reviewing over 104,000 documents, three unique documents containing privileged information were produced more than once. In each instance, at least one version of the document was produced without any redactions. A description of each document that was inadvertently produced is outlined below.

### A. Documents SVU00427255 (redacted version) and SVU00465079 (unredacted version)[3]

The first document, produced at SVU00427255 with redactions, includes an email for which Defendants' privilege log contains the following description for the privileged information that has been redacted: "Redacted email from M. Johnson to R. Richmond requesting legal advice from inside counsel C. Morris relating to Price Match program and U&C price." *See* Ex. A. Relators first challenged the privilege designation on this document on December 6, 2017. *See* Ex. B. In response to that letter, Defendants reviewed their privilege designation and informed Relators on December 12, 2017 that the document had been properly redacted pursuant to the attorney-client privilege. *See* Ex. C. Relators did not further challenge the privilege designation on this document until March 11, 2018, three months after receiving Defendants' letter maintaining their claim of privilege and more than 60 days after which Relators were aware of a potential discovery dispute.[4] *See* Ex. D.

---

[2] The Axcelerate 4 platform generally renders a document in two views: (1) html – showing just the text of the document, which is searchable; and (2) native – showing the document in its original form, which is not searchable.

[3] *See* Exhibit M for an unredacted version of this document.

[4] The Original Scheduling Order in this case states that "Motions to compel . . . shall be pursued in a diligent and timely manner, but in no event filed more than sixty (60) days following the event . . . that is the subject of the motion." *See* Dkt. 69 at 2.

Relators sent Defendants an additional letter on April 4, 2018 stating that, "Regarding SVU00427255-56, please let us know by [April 6th] whether Defendant[s] will withdraw the privilege claim to the above-quoted communication." *See* Ex. E. The letter also indicated that Relators had located an unredacted version of the document at SVU00465079, but did not reference this document in their request associated with SVU00427255. *Id.* Defendants informed Relators on April 5 and 6, 2018 that they believed SVU00427255 had been properly redacted; Relators' counsel disagreed, stating that it was "incumbent upon [Defendants] to seek a judicial determination to avoid a waiver of the claim [of privilege]" as to SVU00427255. *See* Exs. F and G. On April 6, 2018, Defendants informed Relators that because SVU00427255 had not been inadvertently produced, Defendants did not have an obligation to seek a judicial determination of privilege. *See* Ex. G.

On April 13, 2018, Relators informed Defendants that an unredacted version of the document, produced at SVU00465079, existed, and that "if [Defendants] do not include SVU00465079 in your motion for determination of privilege, we will feel free to use the document in the upcoming motion practice." *See* Ex. H. Defendants immediately informed Relators that they were clawing document SVU00465079 back pursuant to Section 18 of the Protective Order. Ex. I. The Parties met and conferred on April 16, 2018 and could not reach an agreement as to either of these documents. As a result, Defendants request that the Court find both documents SVU00427255 and SVU00465079 contain privileged information and that SVU00465079 was inadvertently produced.

**B.   Documents SVU00523729 (redacted version) and SVU00087829 (unredacted version)[5]**

The second document, produced at SVU00523729 with redactions, contains one redacted

---

[5] *See* Exhibit N for an unredacted version of this document.

sentence with the following privileged log description: "Email between employees L. Foss-Ritter, C. Huang, T. Taylor, and other company employees discussing legal advice of the inside legal department regarding price match policy." Ex. J. Defendants clawed back an unredacted version of this document, produced at SVU00087829, on February 27, 2018.

Relators challenged the redaction on document SVU00523729 on March 11, 2018, and further requested that Defendants reconsider the decision to clawback the unredacted version of the document produced at SVU00087829 on April 4, 2018. Exs D and E. Defendants responded, informing Relators that the document was appropriately redacted. *See* Ex. F. The Parties did not discuss this document during their meet-and-confer on April 6, 2018, and it was not mentioned in Relators' April 13, 2018 email informing Defendants that Relators intended to use the other documents discussed in this memorandum in their dispositive motions if Defendants did not move the Court for a determination of privilege. In an abundance of caution, however, Defendants request that the Court find that both documents SVU00523729 and SVU00087829 contain privileged information, and that SVU00087829 was inadvertently produced.

### C. Documents SVU00465063-78 (unredacted version); SVU00427314-29 (redacted version); SVU00523740-55 (redacted version); and SVU00509954 – 69 (redacted version)[6]

The last document is a 16-page email string that was produced four separate times. Three of the versions contained redactions, while one version was produced with no redactions. On March 11, 2018, Relators informed Defendants – following what appears to have been a very detailed review of the unredacted version of this document[7] – that they had determined this

---

[6] *See* Exhibit O for an unredacted version of this document.
[7] As indicated by Relators' detailed March 11th letter, it is clear that Relators' review of the documents they challenged went beyond that allowed by the Protective Order entered in this case. Specifically, the Protective Order states: "[i]f a Receiving Party ***receives information***, through discovery or otherwise, that ***appears to be subject to the attorney-client privilege*** or work-product doctrine and it is ***reasonably apparent*** that these materials were provided or made through

5

document had been produced three times with redactions and once without redactions. *See* Ex. D. Defendants immediately undertook a review of the documents in their database to determine which – if any – of the four documents needed to be clawed back. This review included a search in the database for any additional email strings containing the same material.

On March 19, 2018, Defendants informed Relators that they were clawing back specific pages of documents SVU00465063-78, SVU00523740-55, and SVU00509954-69. *See* Ex. K. Defendants determined that document SVU00427314-29 did not contain any inadvertently produced information.

On April 5, 2018, Defendants informed Relators that they maintained their claim of privilege over four communications within each version of the 16-page document. These communications included:

1. An email from D. Salemi to C. Dimos, copying A. Dony and K. Tripp sent on June 10, 2008 with the subject "$4 generics" regarding a request made for legal advice ("Excerpt 1").

2. An email from M. Johnson to D. Salemi, copying in-house counsel C. Morris sent on June 26, 2008 with the subject "ScriptSave Update on your questions & outline of 'next

---

*inadvertence*, then the Receiving Party **must refrain from examining the materials any more than is necessary** to ascertain if the information is privileged, and **shall immediately notify the Producing Party** in writing that he or she possess information that appears to be privileged. A cursory review of the four documents at issue here clearly shows that Defendants believed that at least a portion of the documents contained attorney-client privileged information and that any production of versions that did not include the same redactions was made inadvertently. Therefore, pursuant to the Protective Order, Defendants expected Relators to bring the issue to Defendants' attention, allow Defendants to determine whether any or all of such documents contained privileged information that was inadvertently produced, and most importantly, to have limited their review of the documents ***prior to*** preparing a detailed letter challenging Defendants' privilege designations.

6

> steps'" regarding a request to in-house legal counsel to review issues associated with the ScriptSave prescription drug program. ("Excerpt 2").
>
> 3. Email from D. Salemi to in-house counsel R. Mendes, copying L. Berggren, C. Dimos, and A. Dony sent on April 11, 2008 with the subject line "RE: $4 generic- legal questions" regarding a request for legal advice. ("Excerpt 3").
>
> 4. Email from A. Dony to D. Salemi and in-house counsel R. Mendes, copying L. Berggren and C. Dimos sent on April 11, 2008 with the submit line "RE: $4 generic- legal questions," which provided in-house legal counsel with additional information to use in preparing legal advice requested by D. Salemi. ("Excerpt 4").

*See* Ex. F. Defendants produced redacted versions of the documents they had clawed back that reflected these redactions on April 6, 2018.

After a meet and confer and late on April 6, 2018, Relators informed Defendants that they did not agree to Defendants' proposals redacting communications 1, 2 and 4 above but agreed that Excerpt 3 is protected by the attorney-client privilege. *See* Ex. L. As such, Defendants request that the Court make a finding that the proposed redactions for communications 1, 2, and 4 above are privileged and were inadvertently produced.

## II.     LAW

### A.     Choice of Law

"Questions of privilege that arise in the course of adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501). This means that privilege questions arising in a matter pending in federal court only on the basis of federal question jurisdiction are governed by the federal common law of the attorney-client privilege. *See Mem'l Hosp. for McHenry Cnty. V. Shadur*, 664

F.2d 1058, 1061 (7th Cir. 1981); *see also EEOC v. Illinois Dept. of Empl. Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) ("State privileges are honored in federal litigation only when state law supplies the rule of decision. When federal law governs, as it does here, only privileges recognized by the national government matter."). To the extent a discovery dispute concerns material that may be relevant to both federal claims and pendant state law claims, the Seventh Circuit has held that that the federal common law of privilege still applies. *Mem'l Hosp.*, 664 F.2d at 1061 n. 3. Because jurisdiction in this matter rests upon a federal question, the federal common law of privilege must apply.

B.     **The Attorney-Client Privilege**

The attorney-client privilege protects communications between an attorney and a client that "constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). Communications between **non-attorney employees** of a corporation may also fall within the scope of the attorney-client privilege. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, No. 93 C 4899, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) (emphasis added) (citing *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 514 (D. Conn. 1976)). Indeed, a privileged communication does not lose its status as such when an executive relays legal advice given to another corporate employee who is also responsible for the subject matter underlying the legal advice. *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 379 (N.D. Ill. 1999).

Moreover, the attorney-client privilege applies even when non-attorneys communicate regarding legal advice they *intend* to seek from an attorney. *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, No. CIV. A. 97 C 5827, 1999 WL 617842, *6-7 (N.D. Ill. Aug. 12, 1999). That is because the attorney-client privilege extends to factual communications made for the purpose of facilitating legal representation. *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill.

8

2007). As such, emails among corporate employees regarding the *communications* of facts to an attorney are privileged, even if the underlying facts are not. *Id*. at 363, n.21.

C. **<u>Inadvertent Production of Documents</u>**

With respect to the inadvertent production of electronically stored information ("ESI"), both the Federal Rules of Civil Procedure and the Federal Rules of Evidence have adopted procedures governing the process Parties should take when they realize a privileged document has been inadvertently produced. *See* Fed. R. Civ. Pro. 26(b)(5)(B), Fed. R. Evid. 502(b). Moreover, the Parties specifically addressed the issue of inadvertent production in Paragraph 18(d) of the Protective Order, signed by the Court on February 7, 2017. There, the Parties agreed that, if the Receiving Party still disputes the Producing Party's claim that information was inadvertently produced after a meet and confer, "the Producing Party may, under Federal Rule of Civil Procedure 26(b)(5)(B), promptly move the Court for a determination under seal." *See* Dkt. 74 at 18.

"Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (quoting references omitted). In litigation involving extensive amounts of discovery, "mistakes are inevitable and claims of inadvertence are properly honored so long as appropriate precautions are taken." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (N.D. Ill. 2006) (finding that the production of an unredacted document was "[o]bviously . . . inadvertent" where it was produced on four prior occasions with redactions, where discovery was extensive, and where a protective order was in place to address such a situation). Factors reviewed when determining whether documents were produced inadvertently include "the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of the producing party after discovering that the documents had been produced." *Wunderlich-*

9

*Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, at *3 (N.D. Ill. Oct. 18, 2007).

### III.    ARGUMENT

All three of the unique documents at issue in this motion are communications protected by the attorney-client privilege.  Based on a review of the facts involved in the production of the unredacted versions of the documents described above, Defendants' production of these documents meets the Court's standard for inadvertent production.  As such, Defendants respectfully request that the Court find that (1) the identified portions of each document are protected by the attorney-client privilege and (2) the production of unredacted versions of each document was inadvertent.

#### A.    The Documents Are Protected by the Attorney-Client Privilege.

##### 1.    Documents SVU00427255 (redacted version) and SVU00465079 (unredacted version)

The redacted portion of document SVU00427255, produced in unredacted form at SVU00465079, involves a non-attorney employee informing her subordinate of the need to request legal advice relating to the Price Match program.  Although the communication itself does not involve an attorney, the attorney-client privilege applies even when non-attorneys communicate regarding legal advice they intend to seek from an attorney because such communications "disclose confidential information for the purpose of seeking legal advice." *IBJ Whitehall Bank & Trust Co.*, 1999 WL 617842, at *6-7.  "[I]n the single-party context, it is the nature of the communication, rather than who the communication is addressed to, that determines whether or not it is privileged." *Id.* at *6.

In this document, Maxine Johnson is instructing a lower-level employee to contact legal counsel for advice regarding the Price Match Program.  The nature of this document – a managing

supervisor instructing a subordinate to obtain legal advice – conveys confidential information from management for the purpose of seeking legal advice. The fact that legal counsel is not present on this document does not eliminate the fact that this portion of the document is protected by the attorney-client privilege.

      2.    **Documents SVU00523729 (redacted version) and SVU00087829 (unredacted version)**

Similarly, although the redacted portion of SVU00523729 involves a communication between two non-attorney employees, this document contains information summarizing privileged legal advice given to the corporation that is relayed from one non-attorney employee to another. A privileged communication does not lose its status as such when executives discuss legal advice that has been given to the corporation. *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. at 379; *Roth v. Aon Corp.*, 254 F.R.D. 538, 542 (N.D. Ill. 2009); *IBJ Whitehall*, 1999 WL 617842, at *6-7. This privilege extends to communications about the privileged material between non-attorneys who are properly privy to the privileged information. *United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012). Because the redacted portion of this document indicates that an employee is conveying legal advice from in-house counsel regarding the Price Match program to other employees in confidence, the language is protected by the attorney-client privilege.

      3.    **Documents SVU00465063-78 (unredacted version); SVU00427314 -29 (redacted version); SVU00523740-55 (redacted version); and SVU00509954-69 (redacted version)**

Excerpts 1, 2, and 4 of the 16-page document, produced at SVU00465063-78; SVU00427314-29; SVU00523740-55; and SVU00509954-69 are also protected by the attorney-client privilege. Excerpt 2 clearly represents a direct request to in-house counsel for legal advice, while Excerpt 1 references the fact that the company had already requested specific legal advice

11

from in-house counsel and is awaiting a response. Excerpt 4 includes additional factual information provided to in-house counsel to aid counsel in providing the legal advice requested in Excerpt 3, which Relators have already agreed is privileged.[8]

The attorney-client privilege extends to factual communications made for the purpose of facilitating legal representation. *Muro*, 250 F.R.D. at 363. As such, the **communications** of facts to an attorney are privileged, even if the underlying facts are not. *Id*. at 363, n.21. In *Muro*, the Court considered the application of the attorney-client privilege to emails forwarding earlier email strings containing factual information to an attorney. *Id.* at 363. The Court ultimately held that a party can legitimately withhold an entire email forwarding materials to counsel, while also disclosing those materials themselves. *Id*. Communications between an attorney and his or her client discussing factual information can itself be privileged because it may contain the attorney's mental impressions of facts he or she deemed to be relevant to the legal analysis.

Similar to *Muro*, Excerpts 2 and 4 are communications involving factual statements being made for the purpose of facilitating legal advice. For instance, the portion of the email string in Excerpt 2 identifies specific information that Maxine Johnson believes inside counsel, Cheron Morris (who is copied on the email), needs to review relating to the ScriptSave Proposed Pharmacy Enrollment Program. Similarly, Excerpt 4 contains information that in-house counsel Ron Mendes will need to complete the legal analysis requested. There is no requirement that these communications actually involve the legal advice itself in order for the attorney-client privilege to

---

[8] To the extent Relators retract their statement that they agree Excerpt 3 is privileged, a review of the Excerpt reveals that it contains a confidential request from an employee to in-house counsel requesting legal review of a matter relating to Defendants' pharmacy operations. The request also includes the employee providing in-house counsel with additional information needed for counsel to conduct his analysis.

apply. Therefore, these excerpts are still afforded protection by the attorney-client privilege because of the relation the facts have to the legal advice being rendered.

        **B.**    **The Multiple Versions of Each Document Were Inadvertently Produced**

The production of multiple versions of each of the three documents at issue with different – or no – redactions was clearly inadvertent. This litigation involves a significant amount of discovery; Defendants reviewed more than 104,000 documents and produced more than 23,000 documents totaling 600,000 pages in response to Relators' requests for production. Defendants' review process included checks both initially during the first level review of the documents and then prior to production. This process involved searching for and highlighting key privilege search terms, including the names of in-house and outside counsel. Most importantly, after discovering that certain versions of the documents were produced without redactions, Defendants ran searches through their database to determine if there were any *additional* versions of the documents that had not yet been identified and clawed back the minimal portions possible from the documents that they believed were protected by the attorney-client privilege. The fact that discovery has been extensive, Defendants took diligent precautions to avoid the production of privileged information, and Defendants sought to claw back the unredacted versions of the documents at issue supports a finding of inadvertent production for all of the documents at issue. *See Judson Atkinson*, 529 F.3d at 388 (affirming the lower court's finding of inadvertence where defendant had produced 25,000 pages in connection with the litigation and where there was "nothing clearly inadequate about the [document review] process"); *MSP Real Estate, Inc. v. City of New Berlin*, No. 11-C-281, 2011 WL 3047687, at *3 (E.D. Wis. July 22, 2011) (finding that the "rather large production of 8932 total pages of documents . . . supported a finding of inadvertence" where there was "nothing clearly inadequate" about defendant's review process to indicate that the procedures "'were so deficient' to conclude that the disclosure was voluntary"); *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169

13

F.R.D. 113, 116 (N.D. Ill. 1996) (finding disclosure was inadvertent "in light of the voluminous document production—approximately 25,000 pages" and plaintiff's designation of the documents on its privilege log); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990) (finding that production of 14,000 documents supported that disclosure was inadvertent where discovery was national in scope and involved a number of additional non-parties).

### IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court find that (1) the redacted portions of documents SVU00427255, SVU00523729, SVU00427314-29, SVU00523740-55, and SVU00509954-69 are privileged; (2) the production of documents SVU00465079, SVU00087829, and SVU00465063-78 was inadvertent.

Dated: <u>April 26, 2018</u>                    Respectfully submitted,

By *s/ Frederick Robinson*
Frederick Robinson
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
Phone: (202) 662-4534
Fax: (202) 662-4643
Email: rick.robinson@nortonrosefulbright.com
*Lead Counsel*

Selina Coleman
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C., 20001-4501
Phone: (202) 662-4536
Fax: (202) 662-4643
Email: selina.coleman@nortonrosefulbright.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 26, 2018, pursuant to Local Rule 5.3 and Federal Rule of Civil Procedure 5(b), this document was filed electronically with the Clerk of the Court using CM/ECF and served upon counsel of record. Confidential exhibits related to this motion have been filed under seal and served upon all counsel of record by e-mail.

*s/ Frederick Robinson*
Frederick Robinson
