IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA et al., ex rel., TRACEY SCHUTTE and MICHAEL YARBERRY,  and Relators  v.  SUPERVALU, INC., et al.  Defendants | ) ) ) ) **Plaintiffs** ) ) )    No. 11-cv-3290 ) ) ) ) ) |

**RELATORS' RESPONSE TO DEFENDANTS' MOTION FOR DETERMINATION OF PRIVILEGE AND INADVERTENT PRODUCTION**

**I.    Introduction**

Defendants seek a judicial determination of their claims of attorney-client privilege with respect to portions of redacted and unredacted versions of three documents produced by Defendants in this litigation. For the reasons set forth below, the disputed portions of these documents are not privileged attorney-client communications. Accordingly, Relators request that the Court overrule Defendants' privilege claims.

**II.   Facts**

**A.    Documents SVU00427255 (redacted version) and SVU00465079 (unredacted version)**

Relators initially objected to the redacted version of this document, among other redacted documents produced by Defendants, on December 6, 2017. *See* Exhibit B to Defendants' Memorandum in Support of Motion for Determination of Privilege and Inadvertent Production ("Defendants' Memorandum"). The document is an email exchange between two non-attorney

SuperValu employees regarding a third party's inquiry concerning Defendants' price matching program. The description of the redaction in Defendants' privilege log states: "Redacted email from M. Johnson to R. Richmond requesting legal advice from inside counsel C. Morris relating to Price Match program and U&C price." Exhibit A to Defendants' Memorandum. Based on this description in the privilege log, Relators objected to the redaction because "it appears to be a request from a non-attorney to another non-attorney to have an in-house attorney look into the matter … [which] is not protected from discovery by the attorney-client privilege. *Equity Residential v. Kendall Risk Mgmt.*, 246 F.R.D. 557, 568 (N.D. Ill. 2007)." Exhibit B to Defendants' Memorandum. Accordingly, Relators requested that Defendants produce an unredacted copy of this document. *Id.*

By letter dated December 12, 2017, counsel for Defendants stated that the redacted portion of this email "reflects an instruction from [non-attorney] Maxine Johnson to [non-attorney] Ron Richmond to obtain legal advice regarding a specific matter from [in-house counsel] Cheron Morris," but asserted the document was "properly redacted" and stated Defendants' intention to maintain their claim of attorney-client privilege. Exhibit C to Defendants' Memorandum. The December 12 letter did not include any argument or authority in support of Defendants' claim that the document was "properly redacted." *Id.*

In a March 11, 2018 letter to defense counsel expressing concern about "what appear to be overly zealous redactions of other documents" produced by Defendants, Relators also requested that Defendants reconsider the propriety of the redaction of this document. Exhibit D to Defendants' Memorandum. Relators' counsel pointed out that Defendants' admission that "[t]he redacted portion of the email reflects an instruction from Maxine Johnson to Ron Richmond to obtain legal advice regarding a specific matter from [inside counsel] Cheron

2

Morris… is precisely the type of communication, namely a request from a non-attorney to another non-attorney to obtain legal advice from in-house attorney about a matter, that the court in *Equity Residential* held was not a privileged attorney-client communication." *Id.* The letter stated that in the absence of some countervailing authority it would be necessary to seek a ruling from the court on the propriety of the privilege claim. *Id.* Counsel for Defendants responded to this letter on March 19 stating "[w]e are currently evaluating the claims made in … [the] March 11, 2018 letter and will respond at a later date." Exhibit K to Defendants' Memorandum. In a follow up letter dated April 4, 2018, Relators' counsel notified Defendants that they had recently discovered an unredacted version of this document, bates numbered SVU00465079, which confirmed their belief that the redacted sentence is precisely the type of communication that the court in *Equity Residential* held was not a privileged attorney-client communication. Exhibit E to Defendants' Memorandum. In addition, the letter noted Defendants' failure, to date, to respond to the March 11 letter, as promised, and again requested that Defendants provide Relators with any countervailing authority supporting their claim that the redacted portion of this document is a privileged attorney-client communication. *Id.*

Counsel for Defendants responded to the April 4 letter the next day stating that "we continue to assert the attorney-client privilege over the redacted portions of" this document; however, despite having been notified of their production of an unredacted version of the document, Defendants did not seek to claw back the unredacted version as having been inadvertently produced. Exhibit F to Defendants' Memorandum.[1] It was only after Relators reminded Defendants that it is their burden, under both Seventh Circuit privilege law and

---

[1] The statement at page 4 of Defendants' Memorandum that Relators informed Defendants of the existence of an unredacted version of this document on April 13, 2018, is misleading. Relators informed Defendants of the existence of an unredacted version of this document on April 4, 2018. Exhibit E to Defendants' Memorandum.

paragraph 18(d) of the Protective Order (Dkt. 74 at 15), to establish the propriety of the privilege claim, and that their failure to seek a determination of the privilege claim risked a waiver of the claim, that Defendants claimed the unredacted version of this document was inadvertently produced. Exhibits H and I to Defendants' Memorandum.

**B.  Documents SVU00465063-78 (unredacted version), and SVU00427314-29, SVU00523740-55, and SVU00509954-69 (redacted versions)**

These documents are unredacted and partially redacted versions of the same 16-page email string covering almost an entire year, from January 25 through December 15, 2008. Defendants produced SVU00465063-465078 without any redactions. The other three versions of this document are partially redacted, however, the redactions of each are different. Defendants' privilege logs contain three different privilege descriptions for this document.[2] All three can charitably be characterized as incomplete descriptions of the redacted portions of this 16-page document. By letter dated March 11, 2018 Relators objected to the redactions and requested that Defendants withdraw their privilege claims relating to this document. Exhibit D to Defendants' Memorandum.

As discussed in the March 11 letter, the vast majority of the emails in this 16-page string and the redactions of all or portions of the emails, consist of communications between and among non-attorney employees discussing various options relating to, and terms of, a proposed program, and the potential financial impacts of implementing the program. *See* Exhibit D to

---

[2] The entry for SVU0042314-427329 contains the following description: "Redacted emails involving D. Salemi, C. Dimos, M. Johnson, A. Dony, and inside counsel R. Mendes, et al., regarding legal review of issues and implementation of legal advice of inside counsel C. Morris relating to discount drug programs." The entry for SVU00523740 – 523755 states: "Emails between employees M. Johnson, D. Salemi, inside counsel C. Morris, and other company employees providing and discussing legal advice of inside counsel C. Morris regarding compliance issues surrounding proposed pharmacy enrollment program." The entry for SVU00509954 – 509969 is similar to, but slightly different than, the privilege description for 523740 – 523755 and states: "Emails between D. Salemi, M. Johnson, inside counsel C. Morris, and other company employees requesting and discussing legal advice of inside counsel C. Morris and the inside legal department regarding proposed pharmacy enrollment program."

4

Defendants' Memorandum, pp. 2 – 3 and Exhibit O to Defendants' Memorandum. In fact, of the 24 emails in the chain there are only three in which an attorney is copied on, or a recipient of, the communication. *See id.* Most of the redacted communications are not remotely privileged, which Defendants have implicitly acknowledged by withdrawing all the redactions except partial redactions of two emails and redactions of two other emails. *Compare* Exhibit O to Defendants' Memorandum *with* redacted version SVU00509954-509969 (Exhibit A). For example, a copy of a December 1, 2008 email from a non-attorney employee to four other non-attorney employees that was redacted in its entirety in two of the three partially redacted versions of this email thread and completely unredacted in the other partially redacted version of this document, was marked as Plaintiff's Exhibit 51 at the deposition of SuperValu employee Anne Dony, who testified about the contents of the email and the accompanying PowerPoint presentation, without objection. Exhibits A, B, C, and D.

On March 19, 2018, counsel for Defendants responded to the March 11 letter by clawing back, as inadvertently produced, portions of the unredacted version (SVU00465063-78) and two of the three partially redacted versions of this document (SVU00523740-55 and SVU0050995469). Exhibit K to Defendants' Memorandum. By letter dated April 4, 2018 Relators disputed Defendants' claim that these were inadvertently produced privileged documents. Exhibit E to Defendants' Memorandum.

The next day, April 5, counsel for Defendants claimed Plaintiffs' counsel's review of these documents "went beyond that allowed by the Protective Order entered in this case," and quoted the following provision of the Protective Order:

> If a Receiving Party receives information, through discovery or otherwise, that appears to be subject to the attorney-client privilege or work-product doctrine and it is reasonably apparent that these materials were provided or made through inadvertence, then the Receiving Party must refrain from examining the materials any more than is necessary to

> ascertain if the information is privileged, and shall immediately notify the Producing Party in writing that he or she possesses information that appears to privileged.

Exhibit F to Defendants' Memorandum. Defendants repeated the accusation in their Memorandum in Support of Motion for Determination of Privilege. Defendants' Memorandum, pp. 5-6n.7. Relators disagree with Defendants' characterization of the challenge to the multiple versions of this document. *See* Exhibit L to Defendants' Memorandum. It was not at all apparent to Relators that the challenged redactions and documents were protected by the attorney-client privilege and produced through inadvertence. What was apparent from the multiple, differently redacted and unredacted versions of this document is that most, if not all, of the redactions were improper. The fact that Defendants, in response to the challenge, have withdrawn almost all the redactions vindicates this belief. Moreover, upon receiving the March 19 clawback notice Relators promptly sequestered the clawed back documents and certified to Defendants that they had done so, in compliance with the Protective Order. In addition, the lapse of time between the March 11 challenge to the redactions of these documents and the April 5 letter alleging that the "challenge went beyond that allowed by the Protective Order" suggests that this was not the burning issue defense counsel portrayed it to be, but more likely an attempt to divert attention from Defendants' excessive and improper redactions and privilege claims, and misleading privilege log descriptions.

    **C.**    **Documents SVU00523729 (redacted version) and SVU00087829 (unredacted version)**

This document is a June 27, 2008 email from Lisa X. Foss-Ritter, Regional Marketing Manager, SuperValu Pharmacies, Inc., addressed to numerous non-attorney employees and blind copied to every pharmacy in Ms. Foss-Ritter's region regarding Defendants' price match policy. Exhibit N to Defendants' Memorandum. The redacted version of the document was marked as

Exhibit 232 in the January 11, 2018 deposition of Kevin Tripp, a former executive of Defendants. Subsequently Relators discovered the unredacted version of this document and shortly thereafter challenged the propriety of the redaction and privilege claim. Exhibit D to Defendants' Memorandum, pp. 7-8. The redaction, consisting of one sentence, is described in Defendants' privilege log, as follows: "Email between employees L. Foss-Ritter, C. Huang, T. Taylor, and other company employees discussing legal advice of the inside legal department regarding price match policy." Exhibit J to Defendants' Memorandum. By letter dated April 5, 2018 Defendants continued "to assert privilege over the redacted portion of this document."
Exhibit F to Defendants' Memorandum.[3]

The description in the privilege log is misleading, at best, because the redacted sentence does not include any discussion of "legal advice of the inside legal department regarding price match policy," or regarding anything else for that matter. Instead, it simply states a fact; namely an announcement to, among others, every pharmacy in the region that going forward, Defendants would no longer include certain pricing in its advertising. Exhibit N to Defendant's Memorandum.

### III.    The Attorney-Client Privilege

The attorney-client privilege applies to confidential communications made with an attorney in connection with the provision of legal services and in the context of an attorney-client relationship.[4] The privilege also extends to communications about the privileged material between non-attorneys who are properly privy to the privileged information.[5] The burden of proof is always on the party claiming privilege.[6] The privilege "only protects disclosure of

---

[3] Notwithstanding the statements to the contrary in Defendants' Memorandum at p. 5, counsel for the parties did discuss this document during their meet and confer on April 6, 2018, and it was also referenced in Relators' April 13, 2018 email along with the other two documents the subject of Defendants' Motion for Determination of Privilege. Exhibit H to Defendants' Memorandum.
[4] *United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012).
[5] *Id.*
[6] *Towne Place Condominium Ass'n v. Philadelphia Indemnity Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018).

7

communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."[7] Thus, the communication of factual information is not protected by the attorney-client privilege.[8]

Moreover, communications from the attorney to the client are privileged only if it is shown that the client had a reasonable expectation in the confidentiality of the statement.[9] Disclosures from a client to an attorney are likewise only entitled to limited protection because the privilege protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.[10] The question is whether legal advice or a client confidence is revealed by the disclosure.[11]

Because the attorney-client privilege has the effect of withholding relevant information from the fact finder, it "should be strictly confined within the narrowest possible limits."[12] As a result, generalized or broad privilege claims will not be upheld.[13] Rather, the party asserting the privilege must make a particularized showing for each document or redaction at issue.[14] The attorney-client relationship itself "does not create 'a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the

---

[7] *Whitchurch v. Canton Marine Towing Co.*, 2017 U.S. Dist. LEXIS 42034 at *7-*8, 2017 WL 1165988 at *3 (C.D. Ill. March 23, 2017), quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584, 595 (1981).
[8] *E.F. Transit, Inc. v. Indiana Alcohol and Tobacco Comm'n*, 2015 U.S. Dist. LEXIS 28246 at *12, 2015 WL 1013475 at *4 (S.D. Ind. March 9, 2015).
[9] *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, 1999 U.S. Dist. LEXIS 12440 at *7, 1999 WL 617842 at *3 (N.D. Ill. August 10, 1999); *In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 U.S. Dist. LEXIS 16523 at *15, 1995 WL 663684 at *3 (N.D. Ill. November 3, 1995).
[10] *Koken v. American Patriot Ins. Agency, Inc.*, 2007 U.S. Dist. LEXIS 20798 at *6-*7, 2007 WL 914251 at *2 (N.D. Ill. March 23, 2007).
[11] *United States ex rel. McGee v. IBM Corp.*, 2017 U.S. Dist. LEXIS 51041 at *8, 2017 WL 1232616 at *2 (N.D. Ill. April 4, 2017).
[12] *Hamdan v. Indiana University Health North, LLC*, 2014 U.S. Dist. LEXIS 86097 at *5, 2014 WL 2881551 at *2 (S.D. Ind. June 24, 2014), quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).
[13] *In re Brand Name Prescription Drugs Antitrust Litigation, supra* 1995 U.S. Dist. LEXIS 16523 at *9, 1995 WL 663684 at *1
[14] *Id.*

relationship of the attorney with his client.'"[15] Thus, not all communications between an attorney and client are privileged.[16] For example, merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the communication was at the behest of the lawyer.[17]

Although the attorney-client privilege may extend to company employees discussing legal advice already given by an attorney, it does not extend to communications between non-attorney employees regarding legal advice that has not yet been sought, but that a non-attorney would like to receive, or a request by a non-attorney employee to another non-attorney employee to ask an attorney to look into a matter.[18]

## IV. Argument

The redacted portions of the documents at issue are not confidential communications protected by the attorney-client privilege. Accordingly, Relators request that the court overrule Defendants' claim of privilege regarding these documents.

### A. Documents SVU00427255 (redacted version) and SVU00465079 (unredacted version)

The fact that an attorney was neither the author nor the recipient of the allegedly privileged communication does not necessarily invalidate the privilege claim; however, "it does raise red flags."[19] The redacted portion of this document, consisting of a single sentence, is a request from a non-attorney employee to another non-attorney employee to make sure an in-

---

[15] *Towne Place Condominium Ass'n v. Philadelphia Indemnity Ins. Co., supra* at 895, quoting *In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980), *cert. denied*, 449 U.S. 994, 101 S. Ct. 531, 66 L. Ed. 2d 291.
[16] *Towne Place Condominium Ass'n v. Philadelphia Indemnity Ins. Co., supra* at 895.
[17] *Id.*
[18] *Equity Residential v. Kendall Risk Mgmt.*, 246 F.R.D. 557, 568 (N.D. Ill. 2007).
[19] *United States ex rel. McGee v. IBM Corp., supra*, 2017 U.S. Dist. LEXIS 51041 at *5-*6, 2017 WL 1232616 at *2.

9

house attorney is prepared to respond to a third party about a matter if the third party presses for a response to its inquiry concerning Defendants' price match program. As previously stated, such communications are not privileged attorney-client communications.[20] Moreover, the redacted portion of this document does not contain any confidential information necessary to obtain informed legal advice, and therefore, is not protected by the attorney-client privilege.[21] Although Relators cited and relied on the *Equity Residential* decision in every communication with defense counsel disputing Defendants' contention that the redacted portion of this document is a privileged attorney-client communication (*see* Exhibits B, D, E, H, and L to Defendants' Memorandum), Defendants, in their argument on this issue, make no attempt to distinguish, and do not even mention this decision. Defendants' Memorandum, pp. 10-11.[22] Instead, Defendants rely solely on the decision in *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, 1999 U.S. Dist. LEXIS 12440, 1999 WL 617842 (N.D. Ill. August 10, 1999) in support of their argument that the redacted portion of this document is a privileged attorney-client communication. Defendants' Memorandum, pp. 10-11. This decision, however, provides no support for Defendants' argument. The *IBJ Whitehall* decision, and its progeny, stand for the proposition that there are three ways, and only three ways, for a communication between two parties with a

---

[20] *Equity Residential v. Kendall Risk Mgmt., supra*, at 568 (communications between non-attorney employees regarding legal advice that has not yet been sought, but that a non-attorney would like to receive are not privileged attorney-client communications).

[21] *Koken v. American Patriot Insurance Agency, Inc.*, *supra* 2007 U.S. Dist. LEXIS 20798 at *6-*7, 2007 WL 914251 at *2.

[22] In his April 5, 2018 letter counsel for Defendants did argue for the first time that Relators' reliance on this decision is misplaced because the court "applied Connecticut state law in reviewing the claim of privilege in that case, not the federal common law of privilege." Exhibit F to Defendants' Memorandum. However, counsel failed to mention that (1) Connecticut law was applied to determine the issue whether the attorney-client privilege extended to non-control group employees, *Equity Residential v. Kendall Risk Mgmt., supra* at 565; (2) the court based its choice of privilege law on this issue, in part on the fact that "Connecticut law provides greater protection to these communications than Illinois law," *Id.*; and (3) neither Connecticut law nor the privilege law of any other jurisdiction was cited by the court in determining whether the non-lawyer's request to another non-lawyer to have an in-house lawyer look into a matter was a privileged attorney client communication, presumably because under any conceivable choice of law such a communication is not privileged. *Id.* at 568.

common interest in a lawsuit to be privileged: (1) if one party is seeking confidential information from the other on behalf of an attorney; (2) if one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work product that is related to the litigation.[23] Unlike the redacted portion of this document and the communications between non-parties in *Equity Residential*, the relevant disclosures in *IBJ Whitehall* consisted of two parties with a common interest in a lawsuit sharing the work product of one of the attorneys (a privilege not asserted here) and one party relaying confidential information to the other party on behalf of an attorney.[24] Therefore, Defendants' reliance on this decision is misplaced and their privilege claim should be overruled.

    **B.**    **Documents SVU00465063-78 (unredacted version), and SVU00427314-29, SVU00523740-55, and SVU00509954-69 (redacted versions)**

As previously stated, Defendants have withdrawn all the redactions except partial redactions of two emails and redactions of two other emails. *See* Exhibit E. Only two of the redacted emails are still in dispute. *See* Exhibit L of Defendants' Memorandum. The first is an April 11, 2008 email from non-attorney Anne Dony to non-attorney Dan Salemi and in-house attorney Ron Mendes, with copies to in-house attorney Lynette Berggren and non-attorney Chris Dimos. Exhibit O to Defendants' Memorandum, p. 12. Defendants claim that this email is protected in its entirety by the attorney-client privilege. Defendants' Memorandum, p. 7 (Excerpt 4). The email consists entirely of the communication of publicly disseminated factual information that was cut and pasted from a third-party competitor's website (Exhibit O to

---

[23] *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, *supra* 1999 U.S. Dist. LEXIS 12440 at *20, 1999 WL 617842 at *6; *Zitzka v. Village of Westmont*, 2009 U.S. Dist. LEXIS 41081 at *6, 2009 WL 1346256 at *2 (N.D. Ill. May 13, 2009); *Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572, 584 (D. S.D. 2006); *Beneficial Franchise Co. v. BankOne, N.A.*, 205 F.R.D. 212, 220 (N.D. Ill. 2001).
[24] *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc., supra* 1999 U.S. Dist. LEXIS 12440 at *20-21, 1999 WL 617842 at *6.

11

Defendants' Memorandum, p. 12), and therefore is not a confidential communication protected by the attorney-client privilege.[25] Moreover, at least one of Defendants' lawyers apparently agrees that this is not a protected attorney-client communication because in one of the three partially redacted versions of this document, this email is completely unredacted. Exhibit B, p. 12.

The other email still in dispute is the partial redaction of a June 26, 2008 email from nonattorney Maxine Johnson to non-attorney Dan Salemi with copy to in-house attorney Cheron Morris. This e-mail consists of a summary of the conversation Ms. Johnson and Ms. Morris had with a third party and its attorney, four enumerated next steps to be taken to implement the proposed program, and a concluding message to "Dan" discussing the time it would take to implement, and the logistics of implementing, the proposed program. Exhibit O to Defendants' Memorandum, pp. 5-6. This email is completely redacted in one of the partially redacted versions of this document, redacted except for the last few sentences in another partially redacted version of this document, and unredacted except for the four enumerated next steps which are redacted except for the first sentence of step 1 which is not redacted. *See* Exhibit A, p. pp. 5-6, Exhibit B, pp. 5-6, Exhibit C, pp. 5-6.

The only portions of this email still in dispute are part of the second sentence of next step 1 beginning with "I" and ending with "definitions" and the second sentence of next step 2 beginning with the word "If." Exhibits E (p. 5), L (p. 2) and O (p. 5) to Defendants' Memorandum. The pertinent portion of step 1 merely conveys factual information – a third party's agreement to send Ms. Johnson its review of certain matters, and Ms. Johnson's intention, upon receipt of that review, to identify the portions of the review that are relevant to

---

[25] *E.F. Transit, Inc. v. Indiana Alcohol and Tobacco Comm'n, supra* 2015 U.S. Dist. LEXIS 28246 at *12, 2015 WL at 1013475 *4 (communication of factual information is not protected by the attorney-client privilege).

Defendants' pharmacies. Exhibit O to Defendants' Memorandum, p. 5. Likewise, the disputed portion of step 2 consists entirely of factual information; namely, if Defendants have any questions or would like the third party to further review the matter, they could send the pertinent language to the third party for their comment. *Id.* Because the disputed portions of this email merely convey factual information, they are not confidential communications protected by the attorney-client privilege.[26]

### C.    Documents SVU00523729 (redacted version) and SVU00087829 (unredacted version)

Defendants' characterization of the redacted sentence in this email as "summarizing privileged legal advice" is an implicit acknowledgment of the inaccuracy of the description in the privilege log stating "[e]mail between employees… and other company employees discussing legal advice of the inside legal department regarding price match policy." Exhibit J to Defendants' Memorandum.[27] The redacted sentence is neither a discussion nor a summary of legal advice "between non-attorneys who are properly privy to the privileged information," as argued by Defendants. Defendants' Memorandum, p. 11. It is simply a factual statement by Defendants' Regional Marketing Manager announcing to every pharmacy in the region and other non-attorney employees that going forward, Defendants would no longer include certain pricing in its advertising. Exhibit N to Defendant's Memorandum. As stated previously, the

---

[26] *E.F. Transit, Inc. v. Indiana Alcohol and Tobacco Comm'n, supra* 2015 U.S. Dist. LEXIS 28246 at *12, 2015 WL at 1013475 *4.

[27] The entire process for asserting and testing privilege claims depends upon the accuracy of the descriptions in a party's privilege log. *B.F.G. of Illinois, Inc. v. Ameritech Corp.*, 2001 U.S. Dist. LEXIS 18930 at *11, 2001 WL 1414468 at *4 (N.D. Ill. November 8, 2001). Unfortunately, however, inadequate privilege logs are a recurring and significant problem in federal litigation. *Towne Place Condominium Ass'n v. Philadelphia Indemnity Ins. Co., supra* at 892 (citing cases). The misleading description of the redacted portion of this document in Defendants' privilege log illustrates the importance of accurate privilege log descriptions and, in their absence the difficulty of detecting improper claims of privilege merely from the description in the privilege log. *See B.F.G. of Illinois, Inc. v. Ameritech Corp., supra*, 2001 U.S. Dist. LEXIS 18930 at *16, 2001 WL 1414468 at *6.

communication of factual information is not protected by the attorney-client privilege.[28] Moreover, the redacted sentence does not seek or reveal any legal advice.[29] Finally, the fact that this communication consisted of an email blast from Defendants' Regional Marketing Manager to every pharmacy in her region, among other non-attorney employees, demonstrates that Defendants did not have, and could not have had, a reasonable expectation in the confidentiality of the redacted sentence.[30] Therefore, the redacted portion of this email is not a privileged attorney-client communication.

## V.     Conclusion

For the reasons stated above, the redacted, disputed portions of documents SVU00427255, SVU00427314-29, SVU00523740-55, SVU00509954-69, and SVU00523729 are not privileged attorney-client communications. Accordingly, Relators request that the Court overrule Defendants' privilege claims and order Defendants to provide Relators with copies of these documents without the challenged redactions, within seven (7) days of the date of the order.

Dated: May 10, 2018                                     Respectfully submitted,

                                                        Timothy Keller
                                                        Illinois Bar No. 6225309
                                                        ASCHEMANN KELLER LLC
                                                        300 North Monroe Street
                                                        Marion, Illinois 62959-2326
                                                        Telephone: (618) 998-9988
                                                        Facsimile: (618) 993-2565
                                                        E-Mail: tkeller@quitamlaw.org

---

[28] *E.F. Transit, Inc. v. Indiana Alcohol and Tobacco Comm'n*, *supra* 2015 U.S. Dist. LEXIS 28246 at *12, 2015 WL at 1013475 *4.

[29] *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 2018 U.S. Dist. LEXIS 64095 at *4, 2018 WL 1804350 at *2 (N.D. Ill. April 17, 2018) (legal advice was not sought, nor is any such advice revealed); *United States ex rel. McGee v. IBM Corp.*, *supra* 2017 U.S. Dist. LEXIS 51041 at *8, 2017 WL 1232616 at *2 (the question is whether legal advice or a client confidence is revealed).

[30] *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs.*, *supra* 1999 U.S. Dist. LEXIS 12440 at *7, 1999 WL 617842 at *3; *In re Brand Name Prescription Drugs Antitrust Litigation*, *supra* 1995 U.S. Dist. LEXIS 16523 at *15, 1995 WL 663684 at *3.

*Lead Counsel for Relators Tracy Schutte and Michael Yarberry*

/s/ Rand J. Riklin_____
Rand J. Riklin
Texas Bar No. 16924275
Goode Casseb Jones Riklin Choate & Watson
2122 North Main Avenue
P.O. Box 120480
San Antonio, Texas 78212-9680
Telephone: (210) 733-6030
Facsimile: (210) 733-0330
E-Mail: riklin@goodelaw.com

*Attorneys for Relators Tracy Schutte and Michael Yarberry*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2018 the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and served upon counsel of record.

By: */s/* Rand J. Riklin_____