IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, DELAWARE, ILLINOIS, INDIANA, MASSACHUSETTS, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NORTH CAROLINA, RHODE ISLAND, VIRGINIA, *ex rel*. TRACY SCHUTTE and MICHAEL YARBERRY,<br><br>    Plaintiffs and Relators,<br><br>    v.<br><br>SUPERVALU, INC., SUPERVALU HOLDINGS, INC., FF ACQUISITIONS, LLC, FOODARAMA, LLC, SHOPPERS FOOD WAREHOUSE CORP., SUPERVALU PHARMACIES, INC., ALBERTSON'S LLC, JEWEL OSCO SOUTHWEST LLC, NEW ALBERTSON'S INC., AMERICAN DRUG STORES, LLC, ACME MARKETS, INC., SHAW'S SUPERMARKET, INC., STAR MARKET COMPANY. INC., JEWEL FOOD STORES, INC., and AB ACQUISITION LLC,<br><br>    Defendants. | NO. 11-3290 |

## **OPINION**

RICHARD MILLS, U.S. District Judge:

Defendants move to exclude the expert testimony of John Bertko.

## I. BACKGROUND

This is a False Claims Act case, wherein the Relators allege that Defendant pharmacies submitted false or fraudulent claims to obtain federal funds from Government Healthcare Programs (GHP) to which they were not entitled. The Relators allege this occurred through the electronic submission of inflated usual and customary charges to GHPs because Defendants failed to report their cash price matches as their usual and customary price.

One of the Relators' experts is John Bertko. Mr. Bertko has experience and training in the field of government healthcare. The Defendants seek to exclude Mr. Bertko's testimony and opinions as set forth in his reports and deposition on the basis that they fail to satisfy the standards of admissibility set by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

The Defendants claim Mr. Bertko's report and testimony is designed to provide support and supplement the otherwise unsupported testimony of Ian Dew, an electronic data analyst and computer programmer.[1] They claim that Mr. Bertko's

---

[1] In a separate motion, the Defendants moved to exclude Ian Dew's opinions. In an Opinion and Order [Doc. No. 276] entered on March 20, 2019, the Court denied the motion to exclude Mr. Dew's testimony.

efforts to bolster Mr. Dew's testimony fail. The Defendants allege that neither individual employs actuarial methods in their reports or offers actuarial opinions. Additionally, the Defendants say that Mr. Bertko demonstrates a total lack of knowledge about Medicare Part D, which should disqualify him from supplementing Mr. Dew's usual and customary price "overpayment" analysis.

The Defendants claim that Mr. Bertko is not qualified to offer the testimony in his report and that, as an actuary, he does not have the requisite experience on prescription drug billing practices which is the subject of his testimony. They further assert Mr. Bertko's opinion is based on methodology that is not reliable because it cannot be independently tested, is not supported by peer authority, is not based on or has no standards and is not accepted within the relevant discipline. Additionally, the Defendants allege Mr. Bertko's opinions are not relevant and will not help the jury evaluate the Relators' claims.

The Relators state that Mr. Bertko proffers three primary opinions in his report. The first relates to GHP policies, practices and procedures as they relate to billing processes and drug reimbursement funding. The second opinion is a determination of the percentages of Medicare Part D and Federal Employee Health Benefit Program ("FEHBP") prescription payments that are comprised of federal funds. Mr. Bertko's third opinion concerns a review of Ian Dew's methodology in determining the amount of overpayments in comparing the Defendants' reported

3

usual and customary price to the price match cash prices, which the Relators claim is consistent with actuary analytical practices. The Relators contend these opinions are relevant to the issues before the jury and are reliably derived from Mr. Bertko's unique education, training and experience.

## II. DISCUSSION

### A. Standard for Admissibility

"The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted). A court must evaluate: (1) the qualifications of the proposed expert; (2) the reliability of his or her methodology; and (3) the relevance of the proposed testimony. *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). In evaluating the reliability of expert testimony, courts should consider a number of factors and employ a "flexible" inquiry. *See id.* at 779-80.

### B. Mr. Bertko's qualifications

According to Mr. Bertko, healthcare actuaries "evaluate the probability and project what premiums need to be for future years." Mr. Bertko has 40 years of experience as an actuary in the GHP industry, which includes consulting for health insurance companies, state and federal governmental units and private employers.

The Defendants state that Mr. Bertko's report does not contain any actuarial analysis. They further note he testified he is not offering any actuarial opinions in this case. Therefore, Mr. Bertko's qualifications as an actuary are not relevant to his report and the opinions in the report are not supported by qualified expertise.

The Relators note that for eight years, Mr. Bertko served as the Chief Actuary for Humana, one of Medicare Part D's initial Sponsors/Prescription Drug Plans when Part D was implemented in 2006 and 2007. Moreover, Mr. Bertko was involved in Humana's Medicare Part D drug coverage bidding and processing.

The Defendants claim Mr. Bertko's report requires expertise on "billing standards and practices for Federal Government prescription benefit programs." Moreover, although Mr. Bertko was employed at Humana for eight years, his tenure barely overlapped with Medicare Part D, which was introduced the year before his tenure as chief actuary ended.

The Defendants further assert the scope of Mr. Bertko's experience does not qualify him as an expert in this case. This case is about the definition of usual and customary prices between retail pharmacies and Pharmacy Benefit Managers (PBMs). The Defendants say Mr. Bertko's actuarial work for a private insurance company did not directly expose him to these relationships: not the contracts, not the billing standards and practices, and not how reimbursements are calculated. Mr. Bertko did not recall working with a PBM while at Humana. In 2004, Mr. Bertko

helped Humana set up its Medicare Part D offering for 2006.  Mr. Bertko's role as chief actuary was to prepare projected rate bids to submit to CMS for evaluation. The Defendants cite Mr. Bertko's testimony that he relied on Humana's director of pharmacy to understand how the underlying contracts affected drug costs.  Mr. Bertko reviewed only three contracts.  He did not review any regulatory definitions regarding usual and customary prices.   The Defendants note Mr. Bertko acknowledged in his testimony he did not consider himself an expert on those issues.

The Relators note that during the period between 2003 and 2006, when Part D was enacted and launched, Mr. Bertko also worked with the HHS Administrator of the Centers for Medicare & Medicaid Services (CMS), the Senate Finance Committee and the Congressional Budget Office as an industry representative.

Additionally, the Relators state that Mr. Bertko was a member of the Medicare Payment Advisory Commission (MedPAC) from 2004 to 2010.  MedPAC is a "nonpartisan legislative branch agency that provides the U.S. Congress with analysis and policy advice on the Medicare program."  http://medpac.gov.  "MedPAC is directed to provide the Congress with advice and recommendations on policies affecting the Medicare program."  Sample 2011 Congressional Annual Report for CY 2010, at 250.

The Relators further note that from 2007 through 2011 and from 2015 through the present, Mr. Bertko served as a member of the Congressional Budget Office

Panel of Health Advisors. In 2004 and again from 2010 through 2012, Mr. Bertko co-chaired the Medicare Trustees Technical Advisory Panel. This panel reviewed the Congressional Annual Reports on the performance of Medicare, focusing on trends and projections for the Medicare Part D program.

Mr. Bertko testified that he also worked for CMS as the Director of the Office of Special Initiatives and Pricing, providing actuarial advice to the CMS Center for Consumer Information and Insurance Oversight. He worked with the CMS Administrator as well as the White House in developing regulations to implement the Affordable Care Act.

The Relators allege that Defendants knew that since the 2003 enactment of Medicare Part D in the Medicare Modernization Act, Mr. Bertko provided testimony on GHPs to the United States Congress on five separate occasions.

Additionally, Mr. Bertko is a fellow in the Society of Actuaries and a member of the American Academy of Actuaries, where he is recognized in the specialized field of health insurance—practicing in the specialized category of GHP actuarial analysis.

Upon considering Mr. Bertko's extensive experience and the nature of the opinions contained in his report, the Court concludes he is qualified to proffer his opinions to the jury. The Defendants have identified what they claim are weaknesses and Mr. Bertko's lack of experience with the precise issues concerning billing

standards and practices for federal prescription benefit programs. However, Mr. Bertko's tenure at Humana includes experience which touches on the opinions which form the basis of his testimony. Moreover, since leaving Humana, Mr. Bertko appears to have remained active in the general field. The Court is unable to find that his testimony should be excluded based on a lack of qualifications.

    C. <u>Mr. Bertko's methodology</u>

The Defendants contend Mr. Bertko's opinions are not reliable. His methodology cannot be independently tested, is not supported by peer authority, is not based on any standards and is not accepted within the relevant discipline. They claim his overpayment analysis is flawed and based on incorrect premises: (1) that a miscalculated usual and customary price would be passed on to CMS; and if it were, (2) CMS would react by reimbursing the Sponsor more money than it should have. The Defendants allege that usual and customary prices are not passed on to CMS and CMS does not retrospectively refund Sponsors for their costs incurred.

The Defendants further assert Mr. Bertko's assertion that "[t]o the extent that there were overstated claims paid [after 2007], [CMS] premiums would be increased by roughly the same overstatement" is unsupported and not based on any professional experience. They allege he provides no methodological basis, no citation to peer-reviewed analysis, no principle generally accepted by professionals in the field or much of an explanation of why he believes this to be the case.

The Relators allege Mr. Bertko's testimony is based on his knowledge and experience in the field. Mr. Bertko has shown he is thoroughly familiar with the processes and procedures governing the Medicare Part D and FEHBP systems. His testimony has been deemed sufficiently reliable to testify before the United States Congress, advise CMS on the operation of the Medicare Part D system and to serve on various panels and commissions.

The Relators claim Mr. Bertko's opinions on usual and customary pricing is consistent with published definitions from the National Council of Prescription Drug Programs as well as the Academy of Managed Care Pharmacy. Moreover, his testimony on what constitutes a usual and customary price is consistent with contracts produced in this case and the testimony of some of the Defendants' managers.

The Relators further allege Mr. Bertko's opinion is consistent with a recent Seventh Circuit decision wherein that court stated, "Regulations related to 'usual and customary' price should be read to ensure that where the pharmacy regularly offers a price to its cash purchasers of a particular drug, Medicare Part D receives the benefit of that deal." *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 644 (7th Cir. 2016).

Additionally, the Relators claim Mr. Bertko's opinion relating to the percentages of Medicare Part D and FEHBP prescription payments that are

9

comprised of federal funds is based on an examination of the Congressional Annual Reports, which the Seventh Circuit cited in stating "[t]here is little doubt much of the money paid to Kmart under Medicare Part D came from government coffers." *See id*. at 639. The Relators allege Bertko compared the federal expenditures for Part D to the total Part D expenditures and arrived at a federal fund percentage that is well below the ten-year average of federal contribution and also below the federal contribution for any given year from the inception of the Part D program. They claim his calculations are independently verifiable through the Congressional Annual Reports cited in Mr. Bertko's report.

Finally, the Relators note that Mr. Bertko reviewed and approved the methodology employed by their data transaction analyst, Ian Dew, to ensure that his methods were reasonable. Mr. Bertko states in his report:

> I performed an examination of the written methodology and analysis used by Mr. Dew and had several conversations with him to confirm my understanding of his work and its results. Based on my actuarial experience with prescription drug coverage for Medicare Part D and for the FEHPB, I found his methodology and analysis to be detailed and appropriate for determining the size of the overcharge payments. In my previous work as Chief Actuary for Humana, I performed similar kinds of reviews of work done by Humana data analysts to assure myself that the results were reliable. It is customary for actuaries in this industry to rely upon other experts such as data analysts but to perform reviews to check the reliability of results. I did not audit his work but I did review his methodology and found it reliable in comporting with actuarial review standards. I did not find any components of the methodology that he employed to be of actuarial concern.

Doc. No. 187, Exhibit A, Report at 13. The Relators allege Mr. Bertko is opining about the manner in which Mr. Dew conducted his analysis. Bertko explained that Defendants' electronic submission of false and inflated usual and customary prices in their claims for prescription reimbursement resulted in overpayments of federal moneys to which Defendants were not entitled. The Relators say this is the same damages theory recognized by the Seventh Circuit's analysis. *See Garbe*, 824 F.3d at 636, 639.

The Court is unable to conclude that any of the Defendants' critiques warrant excluding Mr. Bertko's testimony based on reliability. The Seventh Circuit has stated:

> District judges have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152, 119 S. Ct. 1167. Reliability, however, is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "Rule 702's requirement that the district judge determine that the expert used reliable methods does not ordinarily extend to the reliability of the conclusions those methods produce-that is, whether the conclusions are unimpeachable." *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed. *See id.* at 766; *Smith*, 215 F.3d at 720.

*Manpower Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013).

The Court concludes Mr. Bertko's methodology is sufficiently reliable to present to a jury. The Defendants will have an opportunity to challenge his testimony and present contrary evidence.

D. Relevance

A qualified expert's opinions are admissible only if they are relevant, meaning "the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson*, 492 F.3d 901, 904 (7th Cir. 2007) (citing Fed. R. Evid. 702). At issue is whether the Defendants submitted false or fraudulent claims to obtain federal funds from GHPs to which they were not otherwise entitled, in violation of the False Claims Act. The Relators allege this was done by electronic submission of usual and customary charges to GHP Sponsors and PBMs because Defendants failed to report their price match cash price as their usual and customary price. These are matters of some complexity that are not within a typical juror's scope of knowledge. *See, e.g.*, *United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007) ("The Medicare program operates within a complex and intricate regulatory scheme and we cannot say that the average lay person, including any Medicare beneficiary, commands a working knowledge of Medicare reimbursement procedures."). The parties recognize the necessity of having an expert explain how the GHPs at issue are organized, how billings are submitted and how they are funded by the federal government.

The Defendants strongly disagree with the substance of Mr. Bertko's opinions, claiming his theory is unclear and testimony is untethered to the facts. Notwithstanding any weaknesses, the Court believes the testimony could "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Defendants' disagreements can be addressed through cross-examination at trial. Accordingly, Mr. Bertko's testimony is admissible pursuant to the Federal Rules of Evidence and applicable case law.

Ergo, the Defendants' motion to exclude the expert testimony of Mr. John Bertko [d/e 179] is DENIED.

ENTER: May 24, 2019

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge