IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATES OF CALIFORNIA, DELAWARE, ILLINOIS, INDIANA, MASSACHUSETTS, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NORTH CAROLINA, RHODE ISLAND, VIRGINIA, *ex rel.* TRACY SCHUTTE and MICHAEL YARBERRY, <br><br> Plaintiffs and Relators, <br><br> v. <br><br> SUPERVALU, INC., SUPERVALU HOLDINGS, INC., FF ACQUISITIONS, LLC, FOODARAMA, LLC, SHOPPERS FOOD WAREHOUSE CORP., SUPERVALU PHARMACIES, INC., ALBERTSON'S LLC, JEWEL OSCO SOUTHWEST LLC, NEW ALBERTSON'S INC., AMERICAN DRUG STORES, LLC, ACME MARKETS, INC., SHAW'S SUPERMARKET, INC., STAR MARKET COMPANY. INC., JEWEL FOOD STORES, INC., and AB ACQUISITION LLC, <br><br> Defendants. | NO. 11-3290 |

OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Relators' motion for sanctions.

In their reply brief, the Relators also request an *in camera* review of Defendants' litigation holds.

I.

The Relators seek the entry of an Order imposing appropriate sanctions against the Defendants for what they allege is (1) Defendants' failure to timely issue a litigation hold; (2) the intentional destruction of material evidence relating to Defendants' price match program; and (3) their subsequent efforts to conceal and obstruct discovery of their spoliation of evidence, including the wrongful withholding of material evidence of the spoliation until just days before the close of discovery in this case.

The Defendants claim (1) they timely issued a litigation hold in this matter; (2) did not intentionally destroy material evidence; and (3) did not attempt to conceal and obstruct discovery of any alleged spoliation of evidence.

The Defendants produced in discovery a January 27, 2012 email from Christopher Basler, a pharmacy district manager for 33 Shop 'n Save pharmacies, instructing those pharmacies to "throw away all your competitor's price matching lists and get rid of all signs that say we match prices." The email was sent seven

days after the January 20, 2012 government agents' visits to Defendants' pharmacies, including one of Basler's pharmacies, five days after Basler learned of the visit by a Special Agent with the Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), and three days after the Defendants received a subpoena from the Government requesting documents regarding the price match program.

The Defendants claim that, after receipt of the subpoena, their in-house counsel and current Vice-President, Litigation and Regulatory Compliance, Daniel Day, "oversaw the preparation of a litigation hold notice." The Relators say that the litigation hold was not sent to Defendants' pharmacies until some time in March 2012, at least five weeks after receipt of the government subpoena.

Christopher Basler testified that the January 27, 2012 email sent to the Shop 'n Save pharmacies directing them to throw away all competitors' price lists and all price match signage was prompted by a phone call he received that morning from Dan Salemi, who at the time was SuperValu's Vice President, Pharmacy Services. Basler testified that his decision to throw away all competitor price lists and get rid of all price match signage had nothing to do with the HHS-OIG agent's visit to one of the pharmacies the week before, was not done at the direction of Salemi, was his decision alone and was "urgent" because he was tired of taking calls from Salemi asking about the number of price matches at his pharmacies.

Dan Salemi testified that he recalled FBI agents visiting various SuperValu stores. However, he did not recall the date of the visits, the date of the HHS-OIG subpoena and did not recall whether he was involved in responding to the subpoena.

In a Declaration, Basler states that in March 2012, he received a litigation hold and a Pharmacy Store Action Manager (SAM) task directive related to the Price Match Program, wherein he was directed to review the categories of documents requested by the subpoena and turn over documents to the legal department. The Relators claim Basler's assertion is disingenuous, as many of the price match ads and competitor price lists had already been destroyed before the March 2012 litigation hold and SAM task were ever issued, pursuant to his January 27, 2012 directive to all the pharmacies in his district.

The Relators further allege it appears that another district manager ordered the destruction of signage promoting the Defendants' price match program after visits by government agents and service of the HHS-OIG subpoena. One of the Relators' deposition exhibits includes a handwritten notation, "N/A those were destroyed per email," which is next to the checklist item instructing pharmacy managers to take a photo of any marketing or signage promoting SuperValu's price match program. The notation relates to one of the Defendants' pharmacies in Corvallis, Oregon, which is outside Basler's district.

The Relators say they do not know whether there exist other communications similar to the January 27, 2012 Basler directive and the email referenced by the Corvallis, Oregon pharmacist ordering the destruction of evidence relating to the Defendants' price match program. They allege the Defendants waited until almost the end of discovery to produce the January 27, 2012 email.

The Defendants claim Oregon stores received instructions to remove advertisements related to price matching before issuance of the subpoena because of a change to Oregon's "usual and customary definition" to specifically include advertising savings and certain other discounts. As a result, the Defendants concluded that advertising the price matching program could no longer occur. That is why they were ordered to destroy any such advertising.

In his March 27, 2018 Declaration, Daniel Day states in part that he is "not aware of any PDM [Pharmacy District Manager], store, or Pharmacy Manager who did not comply with the litigation hold's directive to collect and provide all relevant information provided by the Legal Department and the associated Pharmacy SAM Task." The Relators claim that if, as also attested by Day, his "team performed such record keeping as was necessary to ensure that documents were collected from all of the designated custodians of records," it is difficult to understand how Day could have been unaware of the inability of certain PDMs, stores and pharmacy managers to fully comply with the litigation hold and SAM task due to their prior destruction

of evidence responsive to the government subpoena. It was the day before Day's declaration that Defendants produced the January 27, 2012 email.

The Defendants claim Day issued three litigation holds: (1) one to individuals in the corporate business department on January 30, 2012; (2) one to all Pharmacy District Managers on February 20, 2012; and (3) one to the corporate marketing and advertising executives on March 15, 2012.

The Relators allege there are inconsistencies in both the number and timing of the litigation holds between Day's Supplemental Declaration and his and Basler's previous Declarations. Accordingly, they ask the Court for an *in camera* review of the three litigation holds noted above.

The Defendants claim that their Declarations are entirely consistent. The Supplemental Declaration is simply more comprehensive and detailed to respond to the Relators' new allegations.

The Relators believe that Defendants failed to preserve price matching materials responsive to the government subpoena from approximately 80% of their pharmacies nationwide.

In June 2012, between the Defendants' receipt of the subpoena and their initial production of documents to the Government, the Defendants ordered their pharmacies "to discard and discontinue to keep and use" any "competitor price lists

for reference in servicing customer requests for a price match" that were in a pharmacy's possession.

The Relators allege they had to seek Court intervention in order to attempt to obtain information regarding copies of the destroyed price match materials and competitor price lists. On May 31, 2018, counsel for the Defendants stated in a letter to Relators' counsel: "To the best of their knowledge, Defendants are not aware of any documents discarded pursuant to the June 11, 2012 email of which images or other copies were not produced in discovery." The Relators claim that at this late stage, there is no way to test counsel's conclusory assertion by examining a witness or witnesses with personal knowledge of the destruction of signage, competitor lists and other material relating to Defendants' price-match program, pursuant to the June 11, 2012 SAM task.

The Defendants contend they have previously shown that they properly imposed a litigation hold in response to the subpoena received on January 24, 2012, and then diligently collected documents relating to their price match program. They previously claimed there is no evidence that Defendants failed to photograph, record or otherwise preserve the relevant documents and no evidence that any relevant documents that once existed were destroyed without preservation of copies. The Defendants say that during discovery, they produced all available advertising and marketing documents, including copies of competitors' price lists collected from

stores in Christopher Basler's district. They contend the facts establish that no spoliation of evidence occurred in this case, much less the destruction of evidence in bad faith.

II.

The Relators seek the entry of an Order barring Defendants and their counsel from (1) objecting to the chart offered by the Relators summarizing the price matching advertisements and competitor drug formularies produced by the Defendants, on the basis of the number or percentage of stores represented; and (2) arguing, testifying or presenting any evidence at trial about the number or percentage of their pharmacies that had price matching advertisements and competitor drug formularies during the relevant time period.

"[O]nce a party reasonably anticipates litigation, counsel has a duty to institute a litigation hold to preserve relevant information." *Yahnke v. County of Kane*, 2013 WL 4537865, at *6 (7th Cir. Aug. 27, 2013). The failure to preserve information may lead to sanctions. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). A spoliation sanction is proper only when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent. *See id.* A showing of bad faith—like destroying evidence to hide adverse information—is a prerequisite to imposing sanctions for missing evidence. *See id.*

The Court does not believe that an *in camera* review of the Defendants' litigation holds is necessary at this time.  At this time, the Court does not believe that sanctions are warranted based on the Defendants' alleged failure to timely issue a litigation hold, their intentional destruction of evidence relating to the price match program, or their efforts to conceal and obstruct discovery of the spoliation of evidence.  Upon reviewing the record, the Court is unable to conclude that Defendants acted in bad faith.  If the evidence at trial shows otherwise and bad faith on the part of the Defendants is established, the Court can revisit the issue and consider one or both of the sanctions requested by the Relators or another appropriate sanction.

Ergo, the Relators' motion for sanctions [d/e 205] is DENIED.

ENTER: November 15, 2019

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge