IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF ) <br> AMERICA and THE STATES OF ) <br> CALIFORNIA, DELAWARE, ) <br> ILLINOIS, INDIANA, ) <br> MASSACHUSETTS, MINNESOTA, ) <br> MONTANA, NEVADA, ) <br> NEW JERSEY, NORTH CAROLINA, ) <br> RHODE ISLAND, VIRGINIA, ) <br> *ex rel.* TRACY SCHUTTE and ) <br> MICHAEL YARBERRY, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> SUPERVALU, INC., SUPERVALU ) <br> HOLDINGS, INC., AB ) <br> ACQUISITION  LLC, ) <br> ACME MARKETS, INC., ) <br> ACME SAV-ON PHARMACY, ) <br> ALBERTSON'S, LLC, ) <br> ALBERTSON'S OSCO PHARMACY, ) <br> ALBERTSON'S SAV-ON ) <br> PHARMACY, AMERICAN DRUG ) <br> STORES, LLC, BIGGS PHARMACY,) <br> CUB PHARMACY, FF ) <br> ACQUISITIONS, LLC, FARM ) <br> FRESH PHARMACY, ) <br> FOODARAMA, LLC, JEWEL FOOD ) <br> STORES, INC., JEWEL OSCO ) <br> SOUTHWEST LLC, JEWEL ) <br> PHARMACY, JEWEL-OSCO ) <br> PHARMACY, NEW ALBERTSON'S, ) <br> INC., SHAW'S SUPERMARKET, ) <br> INC., SHAWS OSCO PHARMACY, ) | Case No. 11-CV-3290 |

**SHOP N SAVE OSCO PHARMACY,** )
**SHOP N SAVE PHARMACY,** )
**SHOPPERS FOOD WAREHOUSE** )
**CORP., SHOPPERS PHARMACY,** )
**STAR MARKET COMPANY, INC.,** )
**STAR OSCO PHARMACY,** )
　　　　　　　　　　　　　　　　)
　　　**Defendants.** 　　　　　　　)

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Defendants' Motion to Exclude Expert Testimony of Ian Dew, Relator's Response and Defendants' Motion for Leave to File Reply.  (d/e 408, 418, 420).  Defendants' Motion for Leave to File Reply (d/e 420) is GRANTED. For the following reasons, Defendants' Motion to Exclude Expert Testimony (d/e 408) is DENIED.

### I.　　BACKGROUND

This matter is a False Claims Act case wherein the Relators allege that Defendant pharmacies submitted false or fraudulent claims to obtain federal funds from Government Healthcare Programs to which Defendants were not entitled. The Relators allege this occurred through the electronic submission of inflated usual and customary charges to Government Healthcare Programs because

Defendants failed to report their cash price matches as their usual and customary prices.

On May 21, 2018, SuperValu ("Defendants") filed its First Motion to Exclude Ian Dew and Memorandum in Support. (d/e 177, 178). Relators filed a Response in Opposition, and Defendants then filed their Reply. (d/e 188, 234). On March 20, 2019, U.S. District Court Judge Richard Mills entered an Order denying Defendants' Motion and concluding that Mr. Dew's expert testimony should not be excluded based on methodology, reliability, or relevance. (d/e 276). Further, the Court noted that Mr. Dew's testimony would be admissible pursuant to Federal Rules of Evidence and applicable case law.

On February 26, 2024, Defendants filed a Second Motion to Exclude the Expert Testimony of Ian Dew. (d/e 408). Defendants argue that this Court should not follow the prior ruling of Judge Mills from 2019 because the ruling was incorrect considering the changes to Federal Rule 702 and based on a supplemental report of Ian Dew. In Response, Relators argue that this Court has already found Mr. Dew to be an expert and his testimony should not be excluded as he is qualified, reliable, and his testimony is relevant to a jury's

understanding of the instant matters. (d/e 418). Further, Relators note that Defendants' motion advances arguments that were previously considered and denied.

## II.    LEGAL STANDARD

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 U.S. 2786 (1993) govern the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. The party seeking to introduce the testimony must establish that it is more likely than not that the testimony will assist the trier of fact to understand the evidence or to determine a fact at issue, that the testimony is based on sufficient facts or data, and that the testimony is the product of reliable principles and methods applied to the facts of the case. Fed. R. Civ. P. 702. Further, the Court acts as a gatekeeper to ensure that the testimony rests on a reliable foundation and is relevant to the task at hand. *Kirk v. Clark Equip. Co.,* 991 F.3d 865, 872 (7th Cir. 2021).

Prior to admitting testimony, the Court engages in a three-step inquiry before admitting testimony. *Golpalratnam v. Hewlett-Packard Co.,* 877 F.3d 771, 779 (7th Cir. 2017). The Court considers (1) the

expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony. *Id.*

### III. ANALYSIS

Defendants' arguments are almost identical to those made in early 2019 that the Court found to be unpersuasive. In essence, Defendants ask this Court to reconsider its prior ruling on Mr. Dew's methodology and his application of this method in a more recent report. Specifically, Defendants take issue with a new report issued by Mr. Dew in December 2023. According to Defendants, this report, which the Relators describe as using the same methodology but filtered in a different way, is unreliable.

**A. Mr. Dew's Qualifications**

An expert need not have particular academic credentials to be qualified; "anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). "The question [the court] must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir.

2010) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Mr. Dew, although not a "pharmacy pricing expert," is a data expert whose expertise is data analysis. Mr. Dew has a bachelor's degree in mathematics and psychology, a Master of Engineering from the University of Virginia, and a Master of Environmental Science from Johns Hopkins. (d/e 276, p 4). He has worked on complex, computer-assisted data analysis for more than 25 years, focusing on complex healthcare litigation since 2004. *Id.* The Court has, in 2019, discussed Mr. Dew's qualifications at length and will not repeat each of those points. The Court finds based on the knowledge, skill and experience of Mr. Dew, that Mr. Dew is qualified to provide data-analysis of large sets of electronic information.

### B. Mr. Dew's Methodology

Defendants' Second Motion to Exclude testimony focuses mainly on Mr. Dew's methodology. Defendants specifically highlight Mr. Dew's per-state, per-month analysis as unreliable. Although Defendants take issue with the way Mr. Dew organizes and groups tens of millions of purchases, that alone is not enough to disqualify his opinion.

Defendants argue the record in this case established that the usual-and-customary price was determined based on a particular store's prices on a particular day. (d/e 408, p 7). Additionally, Defendants rely on the fact that Mr. Dew has applied a per-store and per-quarter methodology in other litigation and argue that his failure to substantiate his current methodology taints any analysis he provides.

Relators in their response to Defendants argue that this Court should not revisit its prior ruling and that Defendants have no basis to challenge Dew, as he was already found to be qualified, reliable, and relevant. (d/e 418). Additionally, Relators argue that the methodology that was previously found to be appropriate by the Court is the same methodology that forms the basis of Mr. Dew's supplemental report, but filtered in a different way. Further, Relators argue that Defendants have been able to conduct additional discovery and have retained additional experts to combat the testimony of Mr. Dew.

Relators initially instructed Mr. Dew to assume that lower price matches that are widely available are the usual and customary prices that Defendants should have charged Government Healthcare

Programs for their drugs. (d/e 276). Mr. Dew analyzed the massive amounts of raw data provided by the Defendants and determined the best way to group information that could be plugged into an algorithm while excluding potential outliers. *Id.* at p. 12. This methodology, in relying on information provided by others, including counsel, is appropriate when rendering an opinion. *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 808 (7th Cir. 2013).

The specific methodology in calculating usual and customary pricing by using the most frequently occurring discounted cash price offered by month is a more conservative calculation according to Mr. Dew. Further, Mr. Dew testified that his use of the most frequently occurring price is recognized as a statistically valid method to find the central tendency of a large data set. (d/e 276, p. 12). Additionally, this type of analysis is properly within the professional discretion of the data transaction analyst because the analysis falls within the accepted methodology of large data set analysis. *Id.*

Defendants argue Mr. Dew ignored governing contracts and controlling law and, therefore, his work is unreliable. However, Mr. Dew's work had a limited scope. He was asked to calculate the difference between the two types of price points found within

Defendants' data production: (1) discounted cash override prices and (2) reimbursement based upon undiscounted reported usual and customary prices.

Although Defendants take issue with Mr. Dew's alleged refusal to review government contracts for each of the Defendants and apply such findings to his report, the Defendants can use this information to contradict the findings of Mr. Dew at trial. Mr. Dew's analysis also eliminated outliers, when possible, in the substantial data set provided.

Defendants' arguments regarding Mr. Dew's methodology are largely the same as their arguments in their initial motion, and the Court declines to reverse its earlier order regarding the exclusion of Ian Dew's testimony. Relators argue that, in the supplemental support submitted by Mr. Dew, his methodology has remained unchanged and that this fact alone defeats Defendants' motion.

Specifically, Relators point to the testimony of Mr. Dew regarding the filtering of results in the updated report. (d/e 418, pp. 4-5). This filtering involved whittling down numbers, by "applying filters to identify a subset within the full set from my rebuttal report." (d/e 418, p. 5). Further, Relators note that the Actual Usual and

Customary Prices that were filed in the supplemental report are the same prices and data as the first report just presented in a different manner. (d/e 418, p. 4).

The Court is unpersuaded that Mr. Dew's methodology has changed in any significant manner, so the Court will not reverse its prior ruling. Therefore, the Court cannot find that Mr. Dew's expert report, supplemental report, or his testimony as to either should be excluded based on the methodology used.

### C. Reliability

Mr. Dew's expertise as a data analyst is based on knowledge, skill, and training. The Supreme Court recognizes that "there are many different kinds of experts, and many different kinds of expertise." *Kumho Tire v. Carmichael,* 526 U.S. 137, 50 (1999). Therefore, "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141 (quoting *Daubert,* 509 U.S. at 594). In the end, 'the gatekeeping inquiry must be 'tied to the facts' of a particular 'case'," *Kumho Tire,* 526 U.S. at 150, and "the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors," *Lees v. Carthage College,* 714 F.3d 516, 521 (7th 2013). "An expert who is

addressing non-scientific issues must still employ reliable methods and principles in forming their opinions . . ." *Skaggs v. Ferrellgas, Inc.,* Case No. 21-cv-02406, 2023 U.S. Dist. LEXIS 224429, 2023 WL 8711898, at *3 (S.D. Ind. Dec. 18, 2023).

Mr. Dew's qualifications include working on complex, computer-assisted data analysis for more than 25 years focusing on complex healthcare litigation since 2004. (d/e 276, p 4). His experience has also included work on False Claims Act cases performed at the request of the United States Department of Justice and the Attorneys General for various states. *Id.*

Defendants take issue with Mr. Dew's per-state, per-month analysis, arguing that a per-store, per-day analysis is more appropriate. Further, Defendants argue that Mr. Dew's lack of justification as to why he utilized a per-state, per-month analysis further supports Defendants position. Mr. Dew's failure to review Pharmacy Benefit Manager contracts and failure to utilize geographic and time parameters specified by state Medicaid are two additional factors Defendants believe should have been considered. Lastly, Defendants point to the fact that Mr. Dew has indeed calculated

hypothetical usual and customary prices using a per-store, per-quarter methodology. (d/e 408, pp 6-7).

However, Mr. Dew has testified as to his rationale for his analysis and his use of an alternate method in the past does not disqualify his conclusions in the present matter. Further, Mr. Dew has provided what is generally accepted in the data analytics field, including that he is using a more conservative methodology in this matter than others he has conducted in the past. *See* Dew Report, p. 3.

As this Court has discussed, district judges have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. *Kumho Tire Co.,* 526 at 152. The Court finds that Mr. Dew's opinions and reports quantifying alleged overcharges regarding usual and customary price reflect a reliable application of his principles and methods. Further, the Court finds that Mr. Dew's opinions and reports are an acceptable, reliable application of his methodology pursuant to Federal Rule 702.

**D. Relevance**

This Court has previously found Mr. Dew's expert testimony is sufficiently reliable to present to a jury and relevant to the extent that it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson*, 492 F.3d 901 94 (7th Cir. 2007). Defendants argue that Mr. Dew's methods are irrelevant as they do not use the "relevant" unit of per-store, per-day usual and customary pricing which reflects the record in this matter.

This Court disagrees. The jury in this matter will be tasked with determining whether Defendants submitted false claims in reporting their usual and customary price to various entities. Mr. Dew's testimony and reports provide the type of context and analysis that would clearly assist a trier of facts in determining whether there were overcharges to Government Healthcare Programs. This testimony regarding how often these claims were submitted and the overages claimed above the usual and customary prices may be helpful to jurors as this subject matter is not within a juror's usual scope of knowledge.

Therefore, the Court finds Mr. Dew's methodology is relevant and potentially of assistance to the jury in understanding the evidence.

## IV.  CONCLUSION

The Court has reviewed Defendants' Motion to Exclude Expert Testimony of Ian Dew, Relator's Response and Defendants' Motion for Leave to File Reply.  (d/e 408, 418, 420). Defendants' Motion for Leave to File Reply (d/e 420), is GRANTED and the Clerk is DIRECTED to file the attached Reply.

The Court finds that Mr. Dew possesses the necessary qualifications to be an expert witness. Further, his methodology is reliable and relevant to the instant matter. Therefore, Defendants' Motion to Exclude Expert Testimony (d/e 408) is DENIED.

**IT IS SO ORDERED.**
**ENTERED: September 23, 2024.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**