**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA<br>and THE STATE OF ILLINOIS<br>ex rel., TRACY SCHUTTE and<br>MICHAEL YARBERRY,**<br><br>   **Relators and Relators**<br><br>**v.**<br><br>**SUPERVALU, INC., et al.**<br><br>   **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **No. 11-cv-3290-SEM**<br>)<br>)<br>)<br>) |

**RELATORS' PRESERVATION OF OBJECTIONS TO
THE COURT'S AND DEFENDANTS' PROPOSED INSTRUCTIONS**

Relators make the following objections to the Court's proposed jury instructions and to the Court's and Defendants' most recent proposed verdict forms. Relators preserve for the record the specific objections they have already made to the proposed instructions in d/e 477, Relators' Objections to Defendants' Jury Instructions; d/e 511, Plaintiffs' Responses to Defendants' Objections to d/e 501, Defendants' Objections; and d/e 520, Supplement to Objections to the Court's Proposed Objections Nos. 1 and 4. Relators also object to the Court's failure to give the instructions requested in: d/e 462, Plaintiffs-Relators' Motion In Limine No. 4 for Preliminary Jury Instructions Regarding Summary Judgment Rulings; d/e 472-11, Plaintiffs' Proposed Jury Instructions; d/e 497, Plaintiffs' Proposed Alternate Jury Instructions and Proposed Verdict Form; d/e 549, Relators' Request for Additional Jury Instructions; and d/e 550, Relators' Supplement to their February 28 Request

for Additional Jury Instructions. Finally, Relators incorporate their objections

made to a similar verdict form in d/e 532.

## I.     <u>Relators' Objections to Court's Proposed Instruction No. 1A</u>

The Court has proposed the following Instruction No. 1A:

> To succeed on their federal claim as to the False Claims Act,
> Relators must prove the following by a preponderance of the
> evidence that:

> 1.     Defendants knew claims were false or fraudulent when
> presented for payment to a federal program; and

> 2.     The false or fraudulent claims caused the federal
> government to suffer damages.

> Whether the claims were false or fraudulent is not for you to
> decide.

Relators object to this instruction for the reasons stated below, and

Relators object to the failure of this instruction to inform the jury that falsity

has been established and need not be decided.

First, concerning falsity, Relators have repeatedly requested that the

jury be instructed that the Defendants' claims were "false." *See, e.g.* d/e 497-1

Relators' Alternate Instruction 1A, at ECF 1; d/e 520; d/e 549. Relators stand

on that objection for the reasons stated in those filings and in their objections

to the Courts' failure to give Relators' Proposed Instructions 1X and 1AX set

forth below.

Failing to instruct the jury on controlling law and leaving the jury to

answer the question on their own is reversible error. In *Schmitz v. Canadian*

*Pac. Ry. Co.*, 454 F.3d 678 (7th Cir. 2006), the Seventh Circuit found that the

district court erred by not instructing the jury about 49 C.F.R. § 213.37(c),

2

which required railroads to control vegetation so it doesn't interfere with

employees' duties. Violation of this regulation would have constituted

negligence per se.

> There can be little doubt that the omission of an instruction on 49
> C.F.R. § 213.37 prejudiced Schmitz's case. . . . *But there is a world*
> *of difference between telling the jury that Schmitz alleged the railroad*
> *should have taken a particular precaution and telling the jury that*
> *federal law required the railroad to take that very precaution. By not*
> *instructing the jury on the federal regulation, the district judge left it*
> *up to the jury to decide whether the railroad had a duty to keep the*
> *vegetation trimmed.* The regulation answers that question in the
> affirmative -- the railroad was required under federal law to keep the
> vegetation trimmed. The jury should have been deciding only
> whether the railroad violated the regulation and whether the violation
> was a cause of Schmitz's injury. Schmitz's case was prejudiced by
> the district court's sua sponte withdrawal of the instruction on the
> federal regulation, and the case must be remanded for a new trial on
> liability.

*Schmitz*, 454 F.3d at 684 (emphasis added).

It is also reversible error to allow the defense to introduce evidence

concerning liability after a court has previously granted summary judgment on

liability for the plaintiff. *Guzman v. City of Chicago*, 689 F.3d 740, 745–48 (7th

Cir. 2012). The *Guzman* court considered whether it was improper for the

district court to allow evidence (and jury instructions) relating to liability in

what should have been exclusively a damages trial:

> The record shows, however, that the trial was not limited to simply
> quantifying Guzman's compensable damages; rather, the defendants
> consistently attempted to inject into the trial evidence and arguments
> tending to disclaim their liability. In fact, it seems that the
> defendants' entire theory of the case was that the search and seizure
> were legal and reasonable, and that if Guzman suffered harm it was
> caused by Task Force members other than the two named
> defendants.
> . . . .

> We agree that defense counsel put liability in issue and hold that the defense's theory and evidence, coupled with the liability instruction, likely confused the jury by converting this damages-only trial into one about liability. The jury was consistently asked to assess whether the defendants' personal conduct . . . caused Guzman's injuries. But the question should have been whether Guzman's injuries were proximately caused by the unlawful search and seizure.

*Guzman*, 689 F.3d at 746.

The instruction in the Courts' 1A that "Whether the claims were false or fraudulent is not for you to decide" does not do enough to communicate the controlling law to the jury. Relators request that the jury be provided Relators' Proposed Instruction 1AX instead—preserving their other objections as set forth below—as well as Relators' Proposed Instruction 1X including the factual findings from d/e 301, both filed as d/e 549-1.

In every case the Relators have been able to identify where the relator or the Government has prevailed on falsity as a matter of law, the jury has been instructed by the court that the defendants' claims were false and the falsity element is satisfied.[1] Courts universally instruct juries when falsity has been determined as a matter of law, because, as the Supreme Court recognized in this case, "the scienter requirement of the FCA is plainly directed to the falsity

---

[1] *See United States ex rel. Streck v. Takeda Pharms. Am., Inc.,* No. 1:14-cv-09412, Transcript of Proceedings-Trial Volume 8B, Dkt. 520 at 1738 (N.D. Ill Aug. 2, 2022) (Leinenweber, J.) (filed as d/e 520-1); *United States ex rel. Island Industries v. Vandewater Int'l et al.,* Case No. 2:17-cv-04393, Jury Instructions, Dkt. 423 at 13, (C.D. Cal. Oct. 7, 2021) (Klausner, J.) (filed as d/e 520-2)*; United States ex rel. Montcrieff v. Peripheral Vascular Assocs., PA,* Case No. 17-CV-317-XR, Dkt. 213 at 726–27 (W.D. Tex. Feb. 15, 2022), Transcript of Jury Trial Proceedings (Rodriguez, J.) (filed as d/e 520-3).

of the claims submitted." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 n.4 (2023). The False Claims Act's scienter requirement is specifically defined in terms of "truth or falsity." *Id.* at 750–51 (discussing 31 U.S.C. § 3729(b)(1)(A) (ii) & (iii)); *see also Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016) (same).

Relators are concerned the failure to instruct the jury that falsity has been determined as requested in Relators' Proposed Instruction 1AX could invalidate the result of the trial because the jury will not be adequately informed that a core issue which is inextricably linked with scienter has been resolved. The jury cannot determine whether a defendant "knowingly" submitted false claims without deciding (or being told) whether the claims were false to begin with.

Second, this instruction adds "causation" as an element of False Claims Act liability when causation is only relevant to damages. A Defendant can be liable for violating the False Claims Act even if they do not cause any damage to the Government. *See* d/e 477, Relators' Objections to Defendants' Jury Instructions, at ECF 35–38 & n.9 (collecting cases explaining that damages are not an element of False Claims Act liability, and affirming liability when only penalties were sought). Relators addressed the erroneous causation element in their objections to Defendants' Instruction D-11, (d/e 477) at ECF 63–68. *See also United States ex rel. Heath v. Wis. Bell, Inc.*, 75 F.4th 778, 783 (7th Cir. 2023) ("a False Claims Act case requires proof of falsity, knowledge, materiality . . . and the involvement of federal funds."); *Cf. United States ex rel. Calderon v.*

*Carrington Mortg. Servs., LLC*, 70 F.4th 968, 978 (7th Cir. 2023) (Seventh Circuit expressly stated that it did not "consider" claims for FCA civil penalties in that opinion which listed causation as an element and instead was opining only on the "form of liability" triggered under the FCA's treble damages provision.) Instead a defendant is liable under the False Claims Act for civil penalties simply for submitting false claims for payment, even if there are no "damages sustained by the government." *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 985 n.5 (E.D. Wis. 1998) ("Some courts have wrongly included the additional element that the United States must have suffered actual damages. This is not true under a plain reading of the statute and is rejected by precedent.") *aff'd*, 168 F.3d 1013 (7th Cir. 1999); *See United States v. Hughes*, 585 F.2d 284, 286 n.1 (7th Cir. 1978)."); S. Rep. No. 99-345 at 8 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5273 (the United States "is entitled to recover [civil penalties] solely upon proof that the false claims were made, without proof of any damages.").

The overwhelming weight of authority agrees that the place for "causation" in a False Claims Act case is in the damages instruction. The Court's proposed Instruction No. 6A is already limited to damages "sustained because of the false claims" and the "amount of actual loss the government incurred as a result of" any false claims. This is where "causation" belongs, and it should not be converted to an element of liability as it is in Proposed Instruction 1A.

## II.    Relators' Objections to Court's Proposed Instruction No. 2

Relators object to the inclusion of the last sentence in this instruction that innocent mistakes do not satisfy the scienter standard as that is not in *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) which specified the FCA scienter standard. This extra statutory negative instruction is unnecessary. For the reasons stated in d/e 549 at 3–5, Relators also object to the failure to instruct the jury that the False Claims Act's scienter standard does not require proof of specific intent to defraud, *see* 31 U.S.C. § 3729(b)(1)(B), and request that the jury be instructed as set forth in Relators' Proposed Instruction 2X, filed as d/e 549-1.

## III.    Relators' Objections to Court's Proposed Instruction No. 3A

Relators object to the inclusion of the following language in the Court's proposed instruction No. 3A:

> In order to find a corporation has knowledge of a wrongful act, you must find that at least one particular person at the corporation who was involved in a wrongful act, had knowledge of said wrongful act.

Defendants advocated for a substantially similar instruction, arguing that "if corporate employees submit a claim to the government believing it is accurate, and a different employee knows a fact that contradicts the claim but does not know the claim was submitted to the government, the company would not have the requisite scienter because no individual at the company acted with a culpable mental state." (d/e 501-1) at ECF 13. This is incorrect for the reason stated in Defendants' own authority:

> We decline to adopt [Defendant's] "single actor" requirement in this false certification case. In particular, we decline to adopt [Defendant's] view that a single employee must know both the wrongful conduct and the certification requirement. If we established such a rule, corporations would establish segregated "certifying" offices that did nothing more than execute government contract certifications, thereby immunizing themselves against FCA liability.

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 919 (4th Cir. 2003). As the Fifth Circuit has likewise concluded, such a "constricted theory of FCA liability would enable managers at an organization to concoct a fraudulent scheme—leaving it to their unsuspecting subordinates to carry it out on the ground—without fear of reprisal. The FCA is not so limited." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 479 (5th Cir. 2015) (observing that "the statute provides for liability where a defendant knowingly 'causes to be presented' a false claim or knowingly 'cause[s]' a false record to be made or used," that "the statute by its plain text permits liability without a direct falsity," and that "courts have rejected 'ignorant certifier' defenses like this one.) (internal citations omitted).[2]

Defendants' witnesses have testified in such a way that suggests they are seeking to compartmentalize managed care and pricing to take advantage of this "single actor" instruction to mislead the jury. *E.g.* Feb. 20, 2025 Trial Tr.

---

[2] Defendants' other authority, *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275–76 (D.C. Cir. 2010), similarly recognizes that "Under the FCA, if a plaintiff can prove that a government contractor's structure prevented it from learning facts that made its claims for payment false, then the plaintiff may establish that the company acted in deliberate ignorance or reckless disregard of the truth of its claims."

8

33:8-16 (Johnson not aware of pricing); Feb. 21, 2025 Trial Tr. 218:16-18 (Walls, formerly Dony, had no liaison between managed care and pricing). Relators, on the other hand, have obtained testimony from multiple individual executives who knew that SuperValu was not submitting price match prices as U&C price.

## IV.  <u>Relators' Objections to Court's Proposed Instruction No. 4A</u>

The Court has proposed the following Instruction No. 4A:

> To succeed on Relators' state law claim as to the Illinois False Claims Act, Relators must prove the following by a preponderance of the evidence that:
>
> 1.    Defendants knew claims were false or fraudulent when presented for payment to the State of Illinois.
>
> 2.    The false or fraudulent claims caused the State of Illinois to suffer damages.
>
> Whether the claims were false or fraudulent is not for you to decide.

Relators have the same objections to the Court's proposed Instruction No. 4A that they have identified above for the Court's proposed Instruction No. 1A, except that here it is the parallel Illinois FCA at issue. Specifically Relators object to the falsity, causation, and damages language in this instruction. Relators request that the jury be provided Relators' Proposed Instruction 1AX instead, modified for their "state law claim as to the Illinois false claims act"—preserving their objections as set forth in their objections to Instruction 1A—as well as Relators' Proposed Instruction 1X including the factual findings from d/e 301, both filed as d/e 549-1.

## V.    Relators' Objections to Court's Proposed Instruction No. 5A

Relators object to the following language:

> Your numbers must be based on evidence and not speculation
> or guesswork.

"[T]he jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946). "Once the plaintiff proves injury, broad latitude is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification." *BCS Servs. v. BG Invs., Inc.*, 728 F.3d 633, 640 (7th Cir. 2013) (citations omitted) ("[e]ven 'speculation has its place in estimating damages, and doubts should be resolved against the wrongdoer.'") (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1365 (7th Cir. 1996)).

Furthermore, repeating "speculation or guesswork" in later instructions only serves to complicate the instructions and increase Relators' burden for the sake of increasing Relators' burden. It does not provide any new information to the jury.

## VI.    Relators' Objections to Court's Proposed Instruction No. 6A

Relators object to the following language: "Your numbers must be based on evidence and not speculation or guesswork." *See* Objections to Court's Proposed Instruction No. 5A above.

Relators request that the jury be provided Relators' Proposed Instruction 6AX instead—preserving their objections to the above—filed as d/e 550-1.

10

**VII.**   **Relators' Response to Proposed Instruction No. 7**

No objections.

**VIII.**   **Relators' Response to the Court's Proposed Instruction No. 8**

Relators agree with the Court's proposed Instruction No. 8, which

provides:

> When I used the expression "proximate cause," I mean a cause
> that, in the natural and ordinary course of events, produced the
> Government's harm. It need not be the only cause, nor the last or
> nearest cause. It is sufficient if it combines with another cause
> resulting in the injury.

"A cause . . . that produced" in the Illinois Pattern Instruction accurately

states the standard urged by Defendants, and there is no competing definition

in the Seventh Circuit Pattern Instructions. When this instruction was argued

in the January 31 pretrial conference, Mr. Martins observed that "issue of the

causation is foreshadowed by some of the briefing that they've had where the

claims go to the PBM and [] then up the chain and Federal funds following

through the PBMs . . . that's why the instruction, it need not be the only cause

nor the last or nearest cause" is necessary. As predicted, the issue of causation

has been raised repeatedly by Defendants to give the jury the impression that

the complex structure of Medicare Part D—which can involve multiple

intermediaries between the Defendants and the government—somehow

forecloses liability or damages for false claims submitted by Defendants to

those intermediaries.

The Court's proposed Instruction No. 8 is an accurate statement of the

law and it is applicable to the evidence that has been presented in this case.

11

**IX.**    **<u>Relators' Objections to the Courts' Proposed Instruction No. 9</u>**

The Court's proposed Instruction No. 9 provides:

> As with all other elements of a False Claims Act violation, Plaintiffs must prove the governments' damages by a preponderance of the evidence, that is what is more likely true than not. Your calculation of the amount of damages must be based on the evidence, and may not be the result of speculation or guesswork.

Relators object to instructing the jury that damages are a required element of Relators' FCA claims. See objections to Instruction Nos. 1A and 4A above. This is also contrary to controlling precedent as it overstates the jury's obligation to precisely calculate damages. The jury need only "make a just and reasonable estimate of the damage based on relevant data." *Bigelow*, 327 U.S. at 264. "[B]road latitude is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification." *BCS Servs.*, 728 F.3d at 640 (citations omitted) ("[e]ven 'speculation has its place in estimating damages, and doubts should be resolved against the wrongdoer.'") (citations omitted).

Relators also object as this is internally duplicative to other instructions as it instructs the jury (once again) that damages must be proven by a preponderance of the evidence and (once again) that "Your calculation of the amount of damages must be based on evidence and not speculation or guesswork."

**X.**    **<u>Relators' Objections to the Failure to Give Relators' Proposed Instructions 1X, 1AX, 2X, 3X, 4X, 6AX</u>**

Relators have submitted Proposed Supplemental Instructions 1X, 1AX, 2X, 3X, 4X, and 6AX. *See* d/e 549-1, d/e 550-1. The Court has rejected the

proposed instructions. Relators object to the Court's failure to provide these instructions for the reasons stated below and in the memoranda accompanying their requests for these instructions, and in Relators' request for a curative instruction. *See* d/e 544, Relators' Motion for Curative Instruction; d/e 547, Reply in Support; d/e 549, Relators' Request for Additional Jury Instructions; d/e 550; Relators' Supplement to their February 28 Request for Additional Jury Instructions.

## A. Relators' Proposed Instruction 1X, 1AX, 4X

Defense counsel and witnesses have consistently challenged the falsity ruling, the findings in that ruling, and the longstanding definition of U&C price that was articulated in *Garbe*. *See* d/e 544; d/e 547. Relators' counsel have been severely limited in their ability to rebut these challenges with the law of the case. This has led the jury to distrust Relators' counsel who are forced to ask witnesses to assume established facts and law, and it made the jury suspicious of Relators' expert witness who relied on a definition of U&C price from the *Garbe* case that was communicated to him by Relators' counsel but they cannot tell the jury that this definition was distilled by the Seventh Circuit. Expert testimony on February 28 telling the jury that findings in *Garbe* and d/e 301 are wrong exacerbated the problem.

Jury questions clearly indicate confusion about how price matching fits into U&C price, not whether the Defendants knew there was a substantial risk that price match prices should have been reported as U&C. Jury Question 42 to Mr. Correia shows the jury trying to figure out what U&C means and where

it is defined, not what his opinion is about price matching; he had already testified that in his opinion individualized price matching was not U&C price matching. Jury Questions 14, 29, 33, and 36 are even more obviously searching for answers to questions that the Court has already resolved. Jury Question 44 shows that requiring the Relators to obliquely reference the law of the case while Defendants openly contradict it has caused real, and likely irreparable, unfair prejudice to the Relators.

This one-sided ceasefire did not work. The jury should have been told the truth.

Defendants' argument for continuing to hide the truth from the jury is thinly supported and has already failed in this real-world test. Defendants' case *Turner v. Mink*, No. 19-cv-1001-jdp, 2023 U.S. Dist. LEXIS 209649, at *8-9 (W.D. Wis. Nov. 22, 2023) is a prisoner pro se case with one paragraph addressing Defendants' MIL to preclude references to summary judgment decisions (which were in the Defendants' favor) in a severed action. The plaintiff, who lost, wanted to refer to discussions of factual events in decisions in the other case and the judge did not allow it. This is inapposite.

*Ewing v. 1645 Farragut, LLC*, Case No. 16-cv-9930, 2021 U.S. Dist. LEXIS 108946 (N.D. Ill. June 10, 2021) is more applicable. In that case the plaintiffs brought a claim of fraud and other claims against the defendant including claims under the Illinois Fraud and Deceptive Practices Act (ICFA). The court granted the plaintiff's partial summary judgment motion as to liability on one of the fraud and ICFA claims but not on damages. The plaintiffs

14

filed a motion requesting that the court enter an order that certain material

facts in the partial summary judgment Opinion and Order are established for

trial purposes.

The court granted the motion based on FRE 56(g) and 7th Circuit

authority:

> Rule 56(g) specifically states: "If the court does not grant all the
> relief requested by the [summary judgment] motion, it may enter an
> order stating any material fact … that is not genuinely in dispute and
> treating the fact as established in the case." Simply put, after
> partially granting a summary judgment motion, district courts may
> enter orders stating that certain material facts are not genuinely
> disputed for trial purposes. *Ford v. Marion County Sheriff's Office*,
> 942 F.3d 839, 849 (7th Cir. 2019)" [A district court also may enter an
> order stating any material fact that is not genuinely in dispute for
> trial.]. *Id.* at *2.

Rule 56(g) does not squarely fit the instant facts because d/e 301

granted all the relief requested in Relators' Motion for Partial Summary

Judgment while leaving scienter and damages for trial. To the extent Rule 56(g)

does not cover the present situation, the Court need only look to the law of the

case doctrine. "Additionally, [the falsity partial summary judgment] is subject

to the doctrine of the law of the case, namely, a ruling made in an earlier phase

of a litigation controls the later phases unless a good reason is shown to depart

from it." *Correa v. Otto Eng'g Inc.*, Case No. 21-cv-01367, 2024 U.S. Dist.

LEXIS 8399, at *3-4 (N.D. Ill. January 17, 2024) (quoting *Krieger v. United

States*, 842 F.3d 490, 505 (7th Cir. 2016)). Thus, as Judge Posner stated, the

law of the case doctrine is not hard and fast and allows a party to argue that

an intervening change in law or other changed or special circumstance

warrants a departure—but the party must first acknowledge the doctrine and

15

then try to fit the case within an exception to it. *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853-54 (7th Cir. 2004). So far in this case, Defendants have done neither.

Failing to instruct the jury on controlling law and leaving the jury to answer the question on their own is reversible error. In *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678 (7th Cir. 2006), the Seventh Circuit found that the district court erred by not instructing the jury about 49 C.F.R. § 213.37(c), which required railroads to control vegetation so it doesn't interfere with employees' duties. Violation of this regulation would have constituted negligence per se.

It is reversible error to allow the defense to introduce evidence concerning liability after a court has previously granted summary judgment on liability for the plaintiff. *Guzman v. City of Chicago*, 689 F.3d 740, 745–48 (7th Cir. 2012). The *Guzman* court considered whether it was improper for the district court to allow evidence (and jury instructions) relating to liability in what should have been exclusively a damages trial.

Defendants' request for an instruction D-1X based on incorrect readings of vacated decisions would only exacerbate the problem. When the Supreme Court set these decisions aside, it observed that: "the Seventh Circuit did not hold that respondents made an honest mistake; it held that, because *other* people might make an honest mistake, defendants' subjective beliefs became irrelevant to their scienter. . . . [and] we do not look to legal interpretations that respondents did not believe or have reason to believe at the time they

16

submitted their claims." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 753, 755 (2023) (emphasis in original).

Relators' Proposed Instruction 1X, 1AX, 4AX should be given, as has been done in every case the Relators have been able to identify where the relator or the Government has prevailed on falsity as a matter of law.

### B. Relators' Proposed Jury Instruction 2X—Specific Intent to Defraud

Moments into Defendants' opening statement, they had contradicted the law and their own representation that "Defendants do not intend to argue that a "specific intent to defraud the Government" is required to show liability, and so there is no need for the jury to be instructed on the legalistic concept of specific intent." Counsel argued that for the Relators to prevail on their fraud claim under the False Claims Act, "you have to have intentionality. You have to have a certain state of mind." Feb. 11, 2025 Trial Tr. at 60:20–61:3.

This misstates the specific language in the False Claims Act scienter definition that "knowingly" under the FCA "require[s] no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Even assuming that Defendants' hair-splitting argument "intentionality" communicates something other than intent to defraud is correct, it sounds to the jury like "specific intent" is required. The statute makes clear it is not, and the plain language of the definition of "knowingly" in the False Claims Act should be given to the jury. For the same reason, the extra statutory addition stating that "innocent mistakes" are not knowing violations of the False Claims Act should not be given.

Relators are not required to prove that Defendants had a specific intent to defraud the Government, the Defendants told the jury that they are, and the jury should be fully informed as to what the actual standard is.

### C. Relators' Proposed Jury Instruction 3X—HIPAA Exception

45 C.F.R. § 164.502(j)(1) exists to permit whistleblowers, plural, to disclose fraud to those who can help them when they believe a company is committing unlawful acts. Here, Relators Schutte and Yarberry worked together from the beginning to assess whether SuperValu was committing fraud. There was never a time when there was a singular "Relator" in this case. Their efforts to prosecute fraud against the government is covered—and specifically contemplated—by this exception to HIPAA.

Defendants seek to undo the HIPAA whistleblower exception by reading it as narrowly as possible as applying only to "a whistleblower," singular.

Defendants also argue that the HIPAA exception only applies once a client retains a lawyer. This crabbed interpretation ignores the realities of obtaining legal representation. The documents whistleblowers access and provide to counsel are the basis for (potentially) filing a lawsuit. Defendants would have the whistleblower and counsel enter into a representation agreement before seeing the documents that tell the lawyer whether there is a legitimate case. That makes no sense as a practical matter. Counsel needs some evidence that what the client says is happening is real before agreeing to representation. The idea that whistleblowers can consult with a lawyer and

18

take steps to investigate a potential fraud without being covered by the HIPAA exception for investigating unlawful acts is nonsensical.

Defendants also inaccurately cite *Monarch Fire Protection Dist. v. Freedom Consulting & Auditing Servs.*, 678 F. Supp. 2d 927 (E.D. Mo. 2009), for the proposition that the statute unambiguously requires that "the attorney must be '[a]n attorney retained' by the potential whistleblower at the time of the disclosure." The court actually said that "the statute speaks only to disclosures that are made by a whistleblower to an attorney 'retained by or on behalf of' the whistleblower . . . ."), *id.* at 937, which they were.

The only other decision cited by Defendants, *Vaughn v. Epworth Villa*, 537 F.3d 1147 (10th Cir. 2008) states in a footnote that "the whistleblower exception . . . applies to disclosures made to . . . an attorney retained by or on behalf of the whistleblower," which is precisely what happened.

**D. Relators' Proposed Instruction 6AX—Tracing Funds**

Defendants' entire damages argument has been a reprise of the presentment and materiality arguments rejected in *Garbe*. In *Garbe* Kmart made the same "causal chain between a false claims and a CMS payment" argument that SuperValu has made repeatedly with witnesses and demonstrative exhibits interposing Plan Sponsors and PBMs between SuperValu's claims for payment and the Federal Government. This is designed to mislead the jury into thinking that in order for a false claim to be actionable, the Relators are required to trace each step in that chain and because they have not, the jury should find against them. The *Garbe* court rejected this

19

argument, holding that Relators are "not required to trace the movement of currency . . . through the Medicare Part D funding structure." *Garbe*, 824 F.3d at 639. Relators' other experts have shown how SuperValu's false claims caused the Government to pay more money than it would have otherwise. The jury should be instructed with this holding from *Garbe*.

### E. Relators' Proposed Instruction 30—*Heckler*

Relators also object to the Court's failure to give their Proposed Instruction No. 30, 472-11 at ECF 69, which requested the inclusion of language based on *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63–64 (1984), stating that those who seek public funds must act with scrupulous regard for the requirements of the law, and that participants in Government Healthcare Programs have a duty to familiarize themselves with the legal requirements for reimbursement. A similar instruction was given in *United States ex rel. Streck v. Takeda Pharms. Am., Inc.*, No. 1:14-cv-09412, Dkt. 520, at 1739) (N.D. Ill Aug. 2, 2022), Transcript of Proceedings–Trial Volume 8B, previously filed as d/e 520-1, Relators' Supplement to Objections to Court's Instruction Nos. 1 and 4 at ECF 10.

### XI. <u>Relators' Objections to the Court's and the Defendants' Proposed Verdict Forms</u>

Relators object to Questions 2–3 and 6–7 of the Court's Proposed 2.0 Verdict Form as injecting error as well as unnecessary complexity into the verdict form by requiring the jury to determine (twice) whether Defendants' false claims caused damages, before identifying the number of false claims submitted. It is well established that a defendant who is found to have violated

the False Claims Act "is liable to the United States Government for a civil penalty," 31 U.S.C. § 3729(a), whether or not the Government sustains damages.[3] Relators have separate claims for penalties and for damages under the federal False Claims Act and under the Illinois False Claims Act. *See* d/e 472, Pretrial Order at 8–11. The jury should be asked to assess the number of false claims and then be separately asked whether those false claims caused damages to the government.

Relators further note that Question 8 erroneously refers to the "federal government" when it should refer to the "State of Illinois."

Relators also object to Defendants' proposed edits to the Court's proposed verdict form. *See* d/e 551, 551-2, and 551-3. Specifically Relators object to Defendants request to eliminate "all mentions of falsity" in the questions (other than in Questions 1 and 5) and from the spaces on the verdict form. This request is another of Defendants' continuing attempts to eliminate any mention of falsity in a False Claims Act case where the Court has already determined that Defendants submitted false claims. But making the verdict form more vague and less specific will only make it more confusing to jurors. Further, Defendants' suggested language in Questions 2, 3, 4, 6, 7, and 8, referring to "such claims," is confusing and ambiguous. Because the jury will

---

[3] *See, e.g.* d/e 477, Relators' Objections to Defendants' Jury Instructions at ECF 35-38 & n.9.

be charged with determining whether Defendants knowingly submitted "false or fraudulent claims" that language should be remain in the verdict form.

Relators also object to Defendants' request to change the language from "do you find" to "did Relators prove" in Questions 1 and 5 and to add that Relators have the burden of proof in every question on the verdict form by adding this to questions 3, 4, 7, and 8. The burden of proof is already provided in the Instruction Nos. 1 and 4 and should not be repeated in every question on the verdict form.

Relators further object to Defendants' request to add the word "knowingly" in Questions 3 and 7. This element is already stated in Instructions 1 and 4 and should not be repeated on the verdict form.

Relators also object to Defendants' proposed deletion of "United States" and "Illinois" from the blanks in the damages lines in Questions 4 and 8. This appears to be an attempt to make the jury believe that the damages, though sustained by these governmental entities, may not actually be awarded to them and instead perhaps to the Relators.

Respectfully submitted,

/s/ Timothy Keller
Timothy Keller
  Illinois Bar No. 6225309
Dale J. Aschemann
  Illinois Bar No. 6269347
Aschemann Keller LLC
300 North Monroe Street
Marion, Illinois 62959-2326
Telephone: (618) 998-9988
Facsimile: (618) 993-2565
E-Mail: tkeller@quitamlaw.org
        dale@aschlaw.org

/s/ Paul B. Martins
Paul B. Martins
  Ohio Bar No. 0007623
James A. Tate
  Ohio Bar No. 0085319
Julie Webster Popham
  Ohio Bar No. 0059371
Helmer, Martins, Tate & Garrett Co., L.P.A
1745 Madison Rd.
Cincinnati, Ohio 45206
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
E-Mail: pmartins@fcalawfirm.com
      jtate@fcalawfirm.com
      jpopham@fcalawfirm.com

Glenn Grossenbacher
  Texas Bar No. 08541100
Law Office of Glenn Grossenbacher
17 Derecho Way
Hot Springs Village, Arkansas, 71909
Telephone: (210) 325-3887
E-Mail: gglaw@satx.rr.com

Rand J. Riklin
  Texas Bar No. 16924275
Goode Casseb Jones Riklin
  Choate & Watson
2122 North Main Avenue
P.O. Box 120480
San Antonio, Texas 78212-9680
Telephone: (210) 733-6030
Facsimile: (210) 733-0330
E-Mail: riklin@goodelaw.com

Gary M. Grossenbacher
  Texas Bar No. 24008972
402 Vale Street
Rollingwood, Texas 78746
Telephone: (512) 699-5436
E-Mail: gmgtex@austin.rr.com

Jason M. Idell
  Texas Bar No. 24055714
Idell PLLC
6800 Westgate Blvd. Ste 132 #301
Austin, Texas 78745
Telephone: (512) 689-3081
E-Mail: jason@idellpllc.com

G. Patrick Murphy
  Illinois Bar No. 1994484
Murphy & Murphy LLC
3415 Office Park Drive, Suite D
Marion, IL 62959
Telephone: (618) 248-3236
E-Mail: efile@murphymurphyllc.com

*Attorneys for Relators-Relators*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2025, pursuant to Local Rule 5.3 and Federal Rule of Civil Procedure 5(b), that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system and served upon counsel.


/s/ *Paul B. Martins*