## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **THE UNITED STATES OF AMERICA and THE STATE OF ILLINOIS** *ex rel.* **TRACY SCHUTTE and MICHAEL YARBERRY,**<br><br>    **Plaintiffs and Relators,**<br><br>    **v.**<br><br>**SUPERVALU, INC., et al.,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. 11-CV-3290** |

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court are Relators' Motion to Amend Judgment and Grant a New Trial on Damages (d/e 568), Defendants' Motion for Judgment as a Matter of Law (d/e 571), and the respective responses and replies thereto. For the following reasons, Relators' Motion to Amend Judgment and Grant a New Trial and Defendants' Motion for Judgment as a Matter of Law are each DENIED.

### BACKGROUND

The parties and this Court are each familiar with the facts at issue in the matter.  Therefore, the Court will not provide a full

recitation of the relevant facts.  However, the Court will provide a

brief procedural history.

Plaintiffs, United States of America and the States, through

the Relators, filed this action alleging violations of the False Claims

Act, 31 U.S.C. § 3729 *et seq,* and of analogous[1] false claims acts

and health care fraud remedial statutes of the Plaintiff States.

The False Claims Act imposes liability on anyone who

"knowingly" submits a "false" claim to the Government.  31 U.S.C. §

3729(a).  The two essential elements of a False Claims Act violation

are (1) the falsity of the claim and (2) the defendant's knowledge of

the claim's falsity.  The False Claims Act provides for liability if a

person "knowingly presents, or causes to be presented, a false or

fraudulent claim for payment or approval," *see* 31 U.S.C. §

3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or

used, a false record or statement material to a false or fraudulent

claim." 31 U.S.C. § 3729(a)(1)(B).  A person acts "knowingly" for

purposes of the False Claims Act if he: "has actual knowledge of

---

[1] "[T]he state law does not differ in any meaningful way from the federal law" and the same analysis may be applied to both federal and state law.  *United States v. Molina Healthcare of Illinois, Inc.*, 17 F.4th 732, 737 (7th Cir. 2021).

that information;" "acts in deliberate ignorance of the truth or falsity of this information;" or "acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. §3729(b)(1)(A).

The Relators in this matter alleged that the Defendant pharmacies submitted false or fraudulent claims to obtain federal funds to which they were not entitled from Government Healthcare Programs ("GHPs").  The Federal Government provides beneficiaries of GHPs with prescription drug benefits through relationships with private subcontractors known as pharmacy benefit managers.  GHPs reimburse those providers who dispense covered drugs to program beneficiaries.

Specifically, the Relators alleged that the false claims occurred when Defendant pharmacies submitted inflated charges to GHPs, because Defendants failed to report their cash price matches as their usual and customary price.

On August 5, 2019, the Court entered an Order and Opinion (d/e 301) granting partial summary judgment in Relators' favor.  At issue in that Order was the Defendants' price match programs and whether those discounted prices constituted the usual and customary prices.  The Court granted summary judgment as to

falsity regarding Defendants' reporting of "usual and customary"

pricing.  Specifically, pursuant to *Garbe*, the Court determined that

the Defendants' "discount cash prices" offered through price match

programs available to all cash customers constituted the "usual and

customary prices."  *See United States ex rel. Garbe v. Kmart,* 824

F.3d 632, 645 (7th Cir. 2016) (holding the offer to the general public

determines the usual and customary price – not whether the offer

was couched as a discount club or whether a majority of people

accepted it.)  Further, Medicare Part D and Medicaid programs were

entitled to those usual and customary prices. *Id.* at 644. (d/e 301,

p. 19-20).

Following interlocutory appeals to the Seventh Circuit, 9 F.4th

455 (7th Cir. 2021), and the Supreme Court, 598 U.S. 739 (2023), of

a now-vacated summary judgment Order (d/e 333) on the issue of

scienter,[2] the parties filed additional summary judgment motions.

On September 30, 2024, this Court entered an Order and

Opinion (d/e 437) denying partial summary judgment in Relators'

favor on the issue of scienter and denying Defendants' summary

---

[2] The element of falsity was not at issue on appeal.

judgment motion in its entirety.  In so doing, this Court applied the Supreme Court's definition of "knowingly," by which the Supreme Court held that Relators could establish scienter under the False Claims Act by showing that Defendants:

> (1) actually knew that their reported prices were not their "usual and customary" prices when they reported those prices, (2) were aware of a substantial risk that their higher, retail prices were not their "usual and customary" prices and intentionally avoided learning whether their reports were accurate, or (3) were aware of such a substantial and unjustifiable risk but submitted the claims anyway.

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 757 (2023).

However, in that same Order (d/e 437), this Court granted partial summary judgment in Relators' favor on the issue of materiality.  That is, the Court held that Defendants' submission of false claims was capable of influencing the payment or receipt of funds.

This matter proceeded to trial on February 11, 2025, with the trial lasting three and one-half weeks.  At the conclusion of the trial, the jury found for Relators as to scienter but found for Defendants on the issue of causation.   Thereafter, the Court entered judgment in Defendants' favor. (d/e 556).

On April 1, 2025, Relators filed a Combined Rule 59 Motion Requesting the Court Amend the Judgment and Grant a New Trial on Damages (d/e 568).  On April 9, 2025, Defendants filed a Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) (d/e 571).  The parties have each filed responses in opposition to the other party's motion, together with replies and other supplemental briefings. (d/e 573, 575, 579, 580, 598).

## ANALYSIS

### I. Relators' Rule 59 Motion Requesting the Court Amend the Judgment and Grant a New Trial on Damages is Denied.

In Realtors' Motion (d/e 568) and accompanying Memorandum of Law (d/e 569), Relators request that the Court: (1) amend the judgment in order to include the number of false claims for which civil penalties can be recovered under the False Claims Act and (2) grant a new trial on the issue of damages.

#### A. Applicable Standards Under Rule 59

Federal Rule of Civil Procedure 59 governs both new trials and the amendment of judgments.

Subsection 59(a) provides the grounds for a new trial on some or all issues following a jury trial: "The court may, on motion, grant a new trial on all or some of the issues…for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

The decision whether to grant a new trial is left to the sound discretion of the district court.  *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014).  A new trial is appropriate if the jury's verdict was against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.  *Venson*, 749 F.3d at 656.  A motion for new trial "is not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence."  *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 n.4 (7th Cir. 1990).

Subsection 59(e) allows a party to file a motion to alter or amend a judgment within 28 days after entry.  Fed. R. Civ. P. 59(e).

To establish relief under Rule 59(e), a "movant must demonstrate a manifest error of law or fact or present newly discovered evidence." *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011); *see also Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) ("Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures."). However, as with a motion filed under Rule 59(a), "a Rule 59(e) motion is not to be used to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014).

## B.    Relators' Arguments

Relators assert that they are entitled to an amended judgment establishing the total number of false claims proven at trial and awarding civil penalties for those claims and a new trial on the issue of damages for the following reasons.

First, Relators argue that the jury was required to determine the number of false claims but did not do so because the Court adopted an incorrect jury verdict form as it relates to the issue of causation. Specifically, Relators argue: "Causation is not an

element of liability for civil penalties, which are recoverable [even] in the absence of damages." (d/e 569, p. 3).

Second, Relators argue that the jury's award of no damages was the result of errors in the Court's instructions regarding its prior falsity ruling, the Seventh Circuit decision in *Garbe*, and the proper standard for damages. Relators argue a new trial on damages is required because "the instructions 'misstate[d] the law or fail[ed] to convey the relevant legal principles in full' and [because] those shortcomings confuse[d] or mis[led] the jury and prejudice[d]" Relators. (d/e 569, p. 25 (quoting *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007); *Byrd v. Illinois Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005).

### C. Relators' Request for an Amended Verdict is Denied because the Court's Instructions as to Causation, as Reflected in the Verdict Form, did not Constitute a Manifest Error of Law

To succeed on a Rule 59 motion based upon an erroneous jury instruction, Relators "must show that the instructions did not adequately state Seventh Circuit law and [that they were] prejudiced by the error because the jury was likely confused or misled." *See Huckaba v. CSX Transp., Inc.*, 2015 WL 672334, at *6

(S.D. Ill. 2015), *citing Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).

This Court's instructions regarding the element of causation, and the corresponding verdict form, correctly stated Seventh Circuit law.

The Seventh Circuit has clearly outlined that, in order to succeed under the False Claims Act, "[a] plaintiff must plead and ultimately prove four elements: 1) the defendant made a false statement (falsity); 2) the defendant knew the statement was false (knowledge); 3) the false statement was material to the government's decision (materiality); and 4) the false statement caused the government's loss (causation)." *United States ex rel. Calderon v. Carrington Mortgage Services, LLC*, 70 F.4th 968, 973 (7th Cir. 2023), *citing United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739-40 (7th Cir. 2021).

This Court's instruction to the jury as to the elements of a False Claims Act was given as follows:

> To succeed on their federal claims as to the False Claims Act, Relators must prove the following by a preponderance of the evidence:

> 1. Defendants knew claims were false or fraudulent when presented for payment to a federal program;
>
> and
>
> 2. The false or fraudulent claims caused the federal government to suffer damages.
>
> Whether the claims were false or fraudulent is not for you to decide.

(d/e 558, p. 24).

Therefore, element 1. in the foregoing instruction correctly summarized the element of knowledge, while element 2. correctly summarized the element of causation.  The final sentence made clear that the jury was not to decide the element of falsity.[3]

Still, Relators argue that causation is not actually an element of liability under the False Claims Act in certain circumstances. Specifically, Relators argue that "[c]ausation is not an element of liability for civil penalties, which are recoverable in the absence of damages."  (d/e 569, p. 3).  The Seventh Circuit has acknowledged that some other circuits have taken this approach and discussed it

---

[3] Likewise, the jury was not tasked with deciding the element of materiality.  Neither party argues that the Court should have included a similar instruction that materiality was not to decide whether the false claims were material, nor that the jury was confused by a lack of instruction as to this element.

at length as recently as 2023 *without* adopting this distinction

between liability for the purpose of civil penalties versus liability for

the purpose of actual damages:

> Turning now to causation, we must briefly address the False
> Claims Act's damages provisions.  Some circuits have
> interpreted the Act as creating "two sorts of liability."  See
> *United States ex rel. Schwedt v. Planning Research Corp.*, 59
> F.3d 196, 199 (D.C. Cir. 1995).  As they see it, the first form of
> liability can be found in the Act's civil penalty, which,
> according to *Schwedt*, may be imposed "regardless of whether
> the submission of the claim actually causes the government
> any damages; even if the claim is rejected, its very submission
> is a basis for liability." *Id.*  The second form of liability they
> identify is the Act's provision of treble damages, which is
> triggered only "for damages the government sustains because
> of the submission of the false claim." *Id.* … Though [Relator]
> suggested to the district court that she should proceed to trial
> even without sufficient evidence of causation (*i.e.,* by using the
> first approach mentioned above), she has not renewed that
> argument on appeal.  Because she has not asked us to do so,
> we do not consider the possibility of a claim limited to civil
> penalties.  Whether we agree with the *Schwedt* approach is a
> question for another day.

*Calderon*, 70 F.4th at 978.

As the Seventh Circuit has yet to address that question since

*Calderon*, this Court's elements instruction to the jury accurately

stated current Seventh Circuit law.  *Id.* at 978-79 ("[S]ince *United*

*States v. Luce*, we have required a plaintiff to establish both actual

and proximate cause to recover under the [False Claims] Act. 873

F.3d 999, 1014 (7th Cir. 2017)"); *see also Molina Healthcare*, 17
F.4th at 745 ("Last, we say a word about causation.  This too is an
element of an FCA claim").

Having correctly instructed the jury that causation is a
necessary element to establish liability under the False Claims Act,
this Court's verdict form reflected the Seventh Circuit's
longstanding holding that "liability *must* be resolved before the
question of damages is reached."  *Guzman v. City of Chicago*, 689
F.3d 740, 745 (7th Cir. 2012), *citing Hydrite Chem. Co. v. Calumet
Lubricants Co.*, 47 F.3d 887, 890-91 (7th Cir. 1995).  That is, the
verdict form required the jury to find in Relators' favor on *both* of
the two outstanding elements of liability under the False Claims
act—knowledge (scienter) and causation—before the jury would be
asked to determine the number of false claims and corresponding
damages for which Defendants should be held liable.

Specifically, the verdict form (d/e 556) read as follows:[4]

1.    Do you find by a preponderance of the evidence that
Defendants knowingly presented, or caused to be presented,

---

[4] Questions 1 through 4 were repeated as Questions 5 through
8 with "State of Illinois" or "Illinois" substituted in place of "United
States" or "federal government."

false or fraudulent claims for payment to federal programs?
(Circle One)

YES                    NO

2.    Did Relators prove by a preponderance of the evidence
that Defendants' false claim(s) caused the United States
government to suffer damages.[5]

YES                    NO

3.    If you answered "Yes" to Questions 1 and 2, specify the
total number of the false or fraudulent claims submitted to
federal programs for payment.

Number of false or fraudulent claims:

United States:  _____

4.    Specify the total amount, in dollars, of damages that the
federal government sustained because of the false or
fraudulent claims.

Damages for false or fraudulent claims:

United States: $_____

Likewise, this Court's verdict form was consistent with

Seventh Circuit Pattern Instruction 1.31, which this Court also read

to the jury: "If you decide for the defendant[s] on the question of

_____

[5] Question 2 should have ended in a question mark rather
than a period.  However, neither party has raised this as an error
warranting an amended judgment, new trial, or any other form of
relief.

Page **14** of **26**

liability, then you should not consider the question of damages."
(d/e 558, p. 20).

While Relators may wish that the Seventh Circuit had resolved
the question of whether there are "two sorts of liability" under the
False Claims Act—one for the purpose of civil penalties only and
another for treble damages—prior to trial in this matter, it has not.
*See Calderon*, 70 F.4th at 978.  At most, Relators cite to a 1978
Seventh Circuit case in which civil penalties were acknowledged to
be mandatory when, "[p]rior to trial, the government *withdrew* its
request for damages and relied *solely* on the forfeiture provision of
the Act."  *U.S. v. Hughes*, 658 F.2d 284, 286 (7th Cir. 1978)
(emphasis added).

But the circumstances of *Hughes* are not consistent with the
facts of the instant case, in which Relators sought both civil
penalties and damages.  *See Saathoff v. Davis*, 826 F.3d 925, 933
(7th Cir. 2016) (upholding district court's instructions where a
party's proposed language did not fit the facts of the case).  Further,
the Seventh Circuit's 2023 discussion in *Calderon* made clear that
the Seventh Circuit did *not* consider the question of liability for the

purpose of civil penalties versus actual damages to have been resolved by *Hughes* some 45 years prior.

In order to succeed on their request for amended judgment under Rule 59, Relators had the burden to show that this Court's "instructions did not adequately state Seventh Circuit law" as to causation and damages and that Relators were "prejudiced by the error because the jury was likely confused or misled." *Susan Wakeen Doll Co.*, 272 F.3d at 452. Because the Court did not misstate existing law within this Circuit, the jury could not have been misled and Relators' Rule 59 Motion must be denied on this basis.

### D.   Relators' Request for a New Trial is Denied because the Jury was not Confused or Misled as to the Court's Prior Falsity Ruling

The Court next turns to Relators' argument that they are entitled to a new trial on damages because the jury was confused or misled as to whether the element of falsity was at issue during the trial, when the Court had in fact already granted summary judgment in Relators' favor as to falsity.[6]

---

[6] Relators also seek a new trial based upon their assertion that the jury was improperly instructed regarding whether they should

When "determin[ing] whether the jury was sufficiently
informed, by the instructions the court did give and by other
means, of the issues and its duty to decide them," the Court should
"consider all that the jury heard and, from the standpoint of the
jury, decide not whether the charge was faultless in every particular
but whether the jury was misled in any way and whether it had
understanding of the issues and its duty to determine those issues."
*Alloy Intern. Co. v. Hoover-NSK Bearing Co., Inc.*, 635 F.2d 1222,
1226-27 (7th Cir. 1980) (internal quotations and citations omitted).
Similarly, "[w]here an alleged error of admission of evidence
occurred during a trial, [the court] will grant a new trial only if the
error had a substantial influence over the jury and the result
reached was inconsistent with substantial justice."  *Saathoff*, 826
F.3d at 930.

In Relators' Motion, they argue that the jury was confused
about the definition of "usual and customary price" and never

---

calculate the number of claims and any damages, regardless of
their determination on the issue of causation.  That request is
denied for the same reasons that the Court has denied relators'
request for an amended judgment on that basis, as discussed
immediately prior in subsection C.

learned that the Court had already decided, at summary judgment, that Defendants' price match program determined their usual and customary prices.  As already indicated in the Background section, the Court's determination as to the "usual and customary price" resulted in summary judgment being granted in favor of Relators on the issue of falsity.

Put simply, Relators maintain that "[t]he jury should have been told that the falsity of Defendants' claims was established as a matter of law prior to trial."  (d/e 569, p. 27).  But that is exactly what this Court did.  The Court's final instructions to the jury included the following clear directive: "Whether the claims were false or fraudulent is not for you to decide." (d/e 558, p. 24).

Relators' proposed instructions regarding the definition of "usual and customary" price and whether Defendants' price match programs constituted an offer to the general public (*see* d/e 569, p. 29, nos. 1-4) were more specific and technical and, therefore *less* clear, than the plain instruction that the Court delivered, in which the jury was clearly informed it was not tasked with determining whether the claims at issue were false.

Relators also argue that the jury should have been provided the definition of a "claim."  But the foregoing instruction also explicitly referred to the existence of "claims" when instructing the jury that it was not to decide whether those claims were false or fraudulent.

Moreover, the jury found for Relators on question 1 (the element of knowledge) on the verdict form.  That is, the jury answered "yes" when asked: "Do you find by a preponderance of the evidence that Defendants knowingly presented, or caused to be presented, *false or fraudulent claims* for payment to federal programs?" (d/e 556, p. 1) (emphasis added).  The jury simply could not have answered in the affirmative the question whether Defendants knowingly submitted false claims if the jury mistakenly believed that no false claims had been established at all.[7]

In finding in favor of Relators on the issue of knowledge, the jury clearly communicated that it understood that false or

---

[7] Compare Relators' argument that "the jury was left to figure out on their own what the correct definition of "usual and customary' price was, how it applied to Defendants' conduct, and which programs were entitled to those lower cash prices. (d/e 569, p. 35).

fraudulent claims had been presented by Defendants.  Moreover,
because the jury found in favor of Relators on this issue, Relators
could not have suffered prejudice from the Court's decision not to
issue more specific instructions on the definition of "claim," "usual
or customary price," or some other instruction regarding falsity.
*See Alloy Intern. Co.*, 635 F.2d at 1126-27 ("That the instructions
are not a model for future cases is not a reason to require a new
trial when the record as a whole shows that the jury must have
understood what issues it was supposed to decide and what verdict
to return based on its determination of those issues.").

Finally, Relators argue that Defendants' counsel elicited
testimony from certain witnesses that contradicted the Court's prior
ruling on what constituted the "usual and customary price."  In
response, Defendants have accurately quoted these witnesses'
testimony regarding "usual and customary prices."  (d/e 575, p. 20-
21 n.16).  In each case, the witnesses were testifying about their
understanding of or belief regarding the usual and customary price
at the time the claims were submitted.  This was proper testimony
for the jury's consideration, where the Court had not decided the
issue of scienter and the jury was therefore tasked with determining

whether "Defendants *knew* claims were false or fraudulent when presented for payment[.]" (d/e 556).  *See, e.g., U.S. ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) (Merely "[t]ripping up on a regulatory complexity does not entail a *knowingly* false representation" (emphasis added)).

Moreover, the testimony to which Relators object was not presented in isolation.  *See Alloy Intern. Co.*, 635 F.2d at 1226-27 (Court should "consider all that the jury heard"); *Susan Wakeen Doll Co.*, 272 F.3d at 452 (Court should "consider[ ] the instructions as a whole, along with all of the evidence and arguments"); *Guzman*, 689 F.3d at 745, *quoting Gile v. United Airlines, Inc.*, 213 F.3d 365, 365 (7th Cir. 2000) ("[W]e ask, in light of other instructions, the evidence, and the arguments advanced by the parties, whether the 'correct message [was conveyed] to the jury reasonably well'…"). Rather, Relators' counsel referenced the falsity determination when questioning these same witnesses, and both Relators' and Defendants' closing statements reiterated the Court's instruction that the issue of falsity was not for the jury to decide—including Defendants' counsel's explicit explanation that there had been an "earlier determination in this trial" that "SuperValu should have

submitted their price matches as usual and customary." (d/e 575, p. 17-19).

And again, Relators were not prejudiced by the introduction of this testimony, where the jury clearly did not credit these witnesses' understanding of what they believed constituted the "usual and customary prices" and found *against* Defendants on the issue of knowledge.

For these reasons, Relators' Rule 59 Motion must be denied.

## II.    Defendants' Renewed Motion for Judgment as a Matter of Law is Denied

In Defendants' Motion (d/e 571), Defendants renew their request that the Court enter judgment as a matter of law as to the issue of scienter.  Defendants argue that Relators presented no evidence from which a reasonable jury could conclude that SuperValu had the requisite culpable mental state.

### A.    Applicable Standards Under Rule 50

A renewed motion for judgment as a matter of law should only be granted where, in viewing the evidence in the light most favorable to the non-moving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.  *Murray*

*v. Chi. Transit Auth.*, 252 F.3d 880, 886 (7th Cir. 2001). In making that decision, the Court draws all reasonable inferences in favor of the prevailing party. *See Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012).

The Court cannot weigh evidence or make credibility determinations. *Id.* The Court must "leave the judgment undisturbed unless the moving party can show that 'no rational jury could have brought in a verdict against [it].'" *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007) (quotation omitted). In ruling on the renewed motion, the Court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

A motion for judgment as a matter of law that is denied by the Court during trial must be renewed pursuant to Federal Rule of Civil Procedure 50(b) to preserve issues or grounds for appellate review. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006). However, in the instant case, although the jury found against Defendants on the issue of scienter, Defendants were, ultimately, the prevailing party. Therefore, Defendants were not required to renew their Rule 50 motion to preserve arguments on

appeal.  *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 n.3 (7th Cir. 2012) ("It would waste time and resources to require a party to move for judgment as a matter of law under Rule 50(b)…if that party has obtained a jury verdict in its favor.").  However, Defendants do so in this case out of an abundance of caution.

### B.    Defendants' Rule 50 Motion is Denied because Legally sufficient evidence supports the verdict.

Defendants argue they are entitled to judgment as a matter of law because, at trial, Relators presented no evidence from which a reasonable jury could conclude that Defendants had a culpable mental state.  In support of this argument, Defendants point to: the consistency of testimony by SuperValu employees that they did not believe SuperValu's price matching program affected its usual and customary price, as well as certain testimony regarding industry practices that could corroborate that belief.

In response, Relators argue the jury had sufficient evidence to find Defendants had the requisite scienter to prove Relators' claim.  This Court agrees.  The jury heard testimony from SuperValu executives regarding their understanding of price matching and what effects, if any, price matching had on usual and customary pricing.

Each of the SuperValu executive witnesses testified that there was a history of price matching before 2001 at SuperValu and that they believed price matching had no impacts on usual and customary pricing. However, this testimony was undercut by documentary evidence provided by the Relators.

This documentary evidence presented at trial included emails from the executive team at SuperValu that characterized its approach to price matching as "stealthy." SuperValue executives acknowledged that treating the price matching as "routine" would "affect the integrity of our U&C [*i.e.,* usual and customary] price – a slippery slope, as true U&C price is a claim submission requirement for all Medicaid and private commercial Managed Care and PBM agreements." (d/e 573, p. 14-15). Further evidence included reminders sent to SuperValu from pharmacy benefits managers that usual and customary prices must include "all applicable discounts," including "competitor's matched price." *Id.*

As indicated above, it is not the role of this Court to make credibility determinations or to weigh the evidence. *Thorne v. Member Select Ins. Co.*, 882 F.3d 642, 543 (7th Cir. 2018). Rather, the jury

is tasked with making credibility determinations and is not bound to believe any witnesses' testimony in whole, in part, or at all.

The Court must "leave the judgment undisturbed unless the moving party can show that 'no rational jury could have brought in a verdict against [it].'" *Hossack,* 492 F.3d at 859. The jury need not have credited the SuperValu executives' testimony, and a rational jury could find for Relators on the issue of scienter based upon the foregoing documentary evidence. Therefore, Defendants' renewed Rule 50 motion must be denied.

## CONCLUSION

For the foregoing reasons, Relators' Motion to Amend Judgment and Grant a New Trial (d/e 568) and Defendants' Motion for Judgment as a Matter of Law (d/e 571) are each DENIED. The Court will rule on Defendants' Motion for Costs (d/e 572) by separate Order.

**IT IS SO ORDERED.**
**ENTERED: October 31, 2025.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**